Rafey S. Balabanian (SBN 315962)
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

*Interim Lead Counsel*

**[Additional Counsel Listed on Signature Page]**

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| **IN RE: APPLE INC. APP STORE SIMULATED CASINO-STYLE GAMES LITIGATION** | Case No. 5:21-md-02985-EJD |
| | **PLAINTIFFS' MASTER COMPLAINT** |
| | **CLASS ACTION** |
| | **JURY DEMAND** |

Plaintiffs Robert Alldis, Cheree Bibbs, Michael Helsel, Teresa Larsen, Karen Workman, Janice Hill, Vickie Payton, Ernestine Thompson, Rebecca Vincent, Jennifer Andrews, Amy Hoven, Lue Stephens, Frankie Killings-Larkin, Mary Lancaster, Juliana Wisher, Jennifer Hoose, Sean McCloskey, Joshua McDonald, Deborah Steese, John Viglietti, Kai Griffin, Sheri Miller, Connie Zilbert, Ben Kramer, Ashley Honeysuckle, Frank Custodero, Saundra Rogers, and Sheera Harris, individually and on behalf of the proposed classes, bring this Class Action Complaint against Defendant Apple Inc. ("Defendant" or "Apple") seeking restitution, damages, injunctive relief, and other appropriate relief from Apple's ongoing participation in an illegal internet gambling enterprise. Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences, and on information and belief derived from investigation of counsel, and review of public documents as to all other matters.

**INTRODUCTION**

1.      Over the last decade, the world's leading slot machine makers—companies like International Game Technology, Scientific Games Corporation, and Aristocrat Leisure—have teamed up with American technology companies to develop a new product line: social casinos.

2.      Social casinos are apps—playable from smartphones, tablets, and internet browsers—that make the "authentic Vegas-style[1]" experience of slot machine gambling available to consumers anywhere and anytime. *See* Figure 1 (Screenshot of DoubleDown Casino Gameplay). By moving their casino games directly onto the phones, tablets, and computers of players, and by leveraging an innocuous-sounding "free-to-play" model,[2] social casino companies, along with Apple, Facebook, and Google (the "Platforms"), have found a way to smuggle slot machines into the homes of consumers nationwide, twenty-four hours a day and three-hundred-sixty-five days a year.

3.      Just like Las Vegas slot machines, social casinos allow users to purchase virtual "chips" in exchange for real money and then gamble those chips at slot machines games in hopes of winning still more chips to keep gambling. In DoubleDown Casino, for example, players purchase "chip packages" costing up to $499.99. *See* Figure 2 (Screenshot of "Popular" Chip Packages in DoubleDown Casino). But unlike Las Vegas slots, social casinos do not allow players to cash out their chips. Instead, purchased chips and won chips alike can be used only for more slot machine "spinning."

---

[1]      Form F-1/A Doubledown Interactive Co., Ltd. at 87, https://sec.report/Document/0001193125-20-183157/.
[2]      This term is a misnomer. It refers to a business model by which the initial download of the game is free, but companies reap huge profits by selling "in-game" items (known generally as "in-app purchases").

1

**Figure 1**                    **Figure 2**

 

4.      Like Las Vegas slots, social casinos are extraordinarily profitable and highly

addictive. Social casinos are so lucrative because they mix the addictive aspects of traditional

slot machines with the power of the Platforms, including Defendant Apple, to leverage big data

and social network pressures to identify, target, and exploit consumers prone to addictive

behaviors.[3]

5.      Simply put, the social casino apps do not, and cannot, operate and profit at such a

high level from these illegal games on their own. Their business of targeting, retaining, and

collecting losses from addicted gamblers is inextricably entwined with the Platforms. Not only

do the Platforms retain full control over allowing social casinos into their stores, and their

distribution and promotion therein, but they also share directly in a substantial portion of the

gamblers' losses, which are collected and controlled by the Platforms themselves.

6.      Because the Platforms are the centers for distribution and payment, social casinos

gain a critical partner to retain high-spending users and collect player data, a trustworthy

marketplace to conduct payment transactions, and the technological means to update their apps

with targeted new content designed to keep addicted players spending money.

---

[3]      *See, e.g.*, *How social casinos leverage Facebook user data to target vulnerable gamblers*,
PBS NEWS HOUR, youtube.com/watch?v=FFtkFLNJZfM.

7.     Last year alone, consumers purchased and gambled away an estimated *$6 billion* in social casino virtual chips.[4]

8.     By utilizing Apple for promotion, distribution, and payment processing, the social casinos entered into a mutually beneficial business partnership. In exchange for promoting and distributing the casino games, providing them valuable data and insight about their players, and collecting money from consumers, Apple (and the other Platforms) take a *30 percent* commission off of every wager, earning them billions in revenue. By comparison, the "house" at a traditional casino only takes 1 to 15 percent, while also taking on significant risk of loss in its operation. Apple's 30 percent commission, on the other hand, is guaranteed for its ability to act as a casino "host" and bankroll.

9.     The result (and intent) of this dangerous partnership is that consumers become addicted to social casino apps, maxing out their credit cards with purchases amounting to tens or even hundreds of thousands of dollars. Consumers addicted to social casinos suffer a variety of non-financial damages ranging from depression to divorce to attempted suicide.

10.     These devastating consequences are not hypothetical or hyperbole: below are excerpts of sworn testimony from individuals describing their experiences with social casinos:

- "There is no way to escape. . . . I actually was able to stop playing DoubleDown once, but I relapsed. DoubleDown has affected my life in so many ways. . . . Overall, I believe that I have spent well over $220,000 playing DoubleDown. . . . My husband and I dreamed of paying off our house and retiring at age 60. My addiction to DoubleDown likely ruined that plan. *The financial consequences have caused a lot of strain in our relationship. When I got hooked on DoubleDown again, I lied to my husband about the total amount I had spent because I was afraid he would divorce me if he were to find out the real amount.* He found out anyway, and when he did, he contacted a divorce attorney to start the process of separation. Luckily for me, he decided to give me another chance. I am so thankful for his patience with me, but I feel terrible that I have put him through all this." Exhibit 1, Declaration of Ben Kramer ¶¶ 3-4, 7 (emphasis added).

---

[4]     Devin O'Connor, *SciPlay Net Income Skyrockets 127 Percent, as Social Gaming Embraced by Americans Sheltered at Home*, Casino.org (May 13, 2020), https://www.casino.org/news/sciplay-net-income-skyrockets-127-percent-as-social-gaming-embraced.

- "It is no exaggeration to say that social casinos consume my life. . . . *I have missed out on outings with friends, family vacations, and even holidays because I was playing social casinos.* I have even missed out on special milestones in my son's life. I feel terrible about it. The financial toll has been devastating to me and my family. Overall, I believe that I have spent more than $30,000 in social casinos. . . . *I had great credit before I started playing social casinos, but not anymore. My budget is so tight, and my addiction so strong, that I have delayed several medical appointments and procedures so I can spend the money in social casinos instead. We've even turned to people we know to borrow money to make ends meet, and our dream of buying a home appears unrealistic now.* I have a lot of guilt over my addiction to social casinos and the amount of time and money I have lost in them. I have trouble talking about it because *the guilt is so bad that it makes me physically ill when I think about how much money I've spent. I also have frequent insomnia from constantly worrying about how to pay our bills and make ends meet* because of the strain social casinos have put on my finances. Exhibit 2, Declaration of Ashley Honeysuckle ¶¶ 2, 5-8 (emphasis added).

12.    Unsurprisingly, social casinos are illegal under many states' gambling laws.

13.    As the Ninth Circuit held in *Kater v. Churchill Downs Inc.*, 886 F.3d 784, 785 (9th Cir. 2018):

> In this appeal, we consider whether the virtual game platform "Big Fish Casino" constitutes illegal gambling under Washington law. Defendant–Appellee Churchill Downs, the game's owner and operator, has made millions of dollars off of Big Fish Casino. However, despite collecting millions in revenue, Churchill Downs, like Captain Renault in *Casablanca*, purports to be shocked—shocked!—to find that Big Fish Casino could constitute illegal gambling. We are not. We therefore reverse the district court and hold that because Big Fish Casino's virtual chips are a "thing of value," Big Fish Casino constitutes illegal gambling under Washington law.

14.    As an instructive example, DoubleDown Casino is illegal both in Washington and here in California (where the Platforms, including Defendant Apple, host it and collect their 30% commission). This year, consumers will purchase approximately $400 million worth of virtual casino chips in DoubleDown Casino. That $400 million will be divided up approximately as follows: $240 million to DoubleDown; $40 million to International Game Technology ("IGT") (a multinational slot machine manufacturer that licenses slot machine game IP to DoubleDown); and—as particularly relevant here—the remaining $120 million to Apple and the other Platforms (for hosting the app, driving vulnerable consumers to it, and processing the payments for those consumers' virtual chip purchases).

15.     In other words, despite knowing that DoubleDown Casino is illegal, Apple and the other Platforms continue to maintain a major (30%) financial interest by hosting the game, driving customers to it, and acting as the bank.

16.     As such, DoubleDown, Apple, and the other Platforms are all liable as co-conspirators to an illegal gambling enterprise. Moreover, DoubleDown Casino is just one of more than fifty social casino apps (the "Illegal Slots") that the Platforms illegally host, promote, and profit from.

17.     Consequently, Apple and the other Platforms—alongside the Illegal Slot companies—are liable as co-conspirators to an illegal gambling conspiracy.

18.     Defendant Apple, for its part, is a direct participant in an informal association and enterprise of individuals and entities with the explicit purpose of knowingly devising and operating an online gambling scheme to exploit consumers and reap billions in profits (the "Social Casino Enterprise").

19.     This ongoing Enterprise necessarily promotes the success of each of its members: Social casino operators need Platforms like Apple, Google, and Facebook, to access consumers, host their games, and process payments. The Platforms, for their part, need developers like DoubleDown to publish profit-driven and addictive applications on their platforms to generate massive revenue streams.

20.     Through this case, Plaintiffs seek to force Apple to stop participating in, and to return to consumers the money it has illegally profited from, the Social Casino Enterprise.

21.     Plaintiffs, on behalf of the putative Classes, bring claims for damages and for injunctive relief under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO"); California's Unfair Competition Law, Business and Professions Code § 17200, *et seq.* ("UCL"); state gambling laws; state consumer protection statutes; and unjust enrichment.

## **PARTIES**

22.     Plaintiff Robert Alldis is a natural person and a citizen of the State of California.

23.     Plaintiff Cheree Bibbs is a natural person and a citizen of the State of Alabama.

24.     Plaintiff Michael Helsel is a natural person and a citizen of the State of Alabama.

25.     Plaintiff Teresa Larsen is a natural person and a citizen of the State of Louisiana.

26.     Plaintiff Karen Workman is a natural person and a citizen of the State of Connecticut.

27.     Plaintiff Janice Hill is a natural person and a citizen of the State of Connecticut.

28.     Plaintiff Vickie Payton is a natural person and a citizen of the State of Georgia.

29.     Plaintiff Ernestine Thompson is a natural person and a citizen of the State of Illinois.

30.     Plaintiff Rebecca Vincent is a natural person and a citizen of the State of Indiana.

31.     Plaintiff Jennifer Andrews is a natural person and a citizen of the State of Minnesota.

32.     Plaintiff Amy Hoven is a natural person and a citizen of the State of Minnesota.

33.     Plaintiff Lue Stephens is a natural person and a citizen of the State of Mississippi.

34.     Plaintiff Frankie Killings-Larkin is a natural person and a citizen of the State of Mississippi.

35.     Plaintiff Mary Lancaster is a natural person and a citizen of the State of Missouri.

36.     Plaintiff Juliana Wisher is a natural person and a citizen of the State of New Mexico.

37.     Plaintiff Jennifer Hoose is a natural person and a citizen of the State of New York.

38.     Plaintiff Sean McCloskey is a natural person and a citizen of the State of Ohio.

39.     Plaintiff Joshua McDonald is a natural person and a citizen of the State of Oregon.

40.     Plaintiff Deborah Steese is a natural person and a citizen of the State of South Carolina.

41.     Plaintiff John Viglietti is a natural person and a citizen of the State of Tennessee.

42.     Plaintiff Kai Griffin is a natural person and a citizen of the State of Tennessee.

43.     Plaintiff Sheri Miller is a natural person and a citizen of the State of Tennessee.

44.     Plaintiff Connie Zilbert is a natural person and a citizen of the State of

Washington.

45.     Plaintiff Ben Kramer is a natural person and a citizen of the State of Washington.

46.     Plaintiff Ashley Honeysuckle is a natural person and a citizen of the State of Washington.

47.     Plaintiff Frank Custodero is a natural person and a citizen of the State of Florida.

48.     Plaintiff Saundra Rogers is a natural person and a citizen of the State of California.

49.     Plaintiff Sheera Harris is a natural person and a citizen of the State of Ohio.

50.     Defendant Apple Inc. is a corporation existing under the laws of the State of California with its principal place of business located at 1 Infinite Loop, Cupertino, California 95014. Apple regularly conducts and transacts business in this District, as well as throughout the United States. Apple manufactures, markets, and sells the iPhone and iPad, among other electronic devices, and owns and operates the Apple App Store, which comes preinstalled on every Apple device.

## JURISDICTION AND VENUE

51.     Federal subject-matter jurisdiction exists under 28 U.S.C. § 1332(d)(2) because (a) at least one member of the proposed classes is a citizen of a state different from Defendant, (b) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (c) none of the exceptions under that subsection apply to this action.

52.     Federal subject-matter jurisdiction also exists under 28 U.S.C. § 1331 because Plaintiffs allege violations of 18 U.S.C. § 1962(c)-(d).

53.     The Court has personal jurisdiction over Defendant because Defendant is headquartered in this District and Defendant's alleged wrongful conduct occurred in and emanated from this District.

54.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiffs' claims occurred in and emanated from this District.

## GENERAL ALLEGATIONS

**I.      Apple Promotes, Offers, Supports, and Profits From Illegal Slot Machines**

55.     Players can access the Illegal Slots through mobile apps downloaded from the Apple App Store and can play at any time of day or night. The doors to these mobile casinos never close.

56.     The Illegal Slots apps each contain multiple games. For example, the DoubleDown Casino app contains over 200 total titles: 186 slot titles, 21 card game titles, and 1 bingo title.[5] The Illegal Slots derive substantially all of their revenue from their slot titles.

57.     Many of the Illegal Slots feature the same games—sporting the same graphics and music—as can be found on an electronic slot machine in a brick-and-mortar casino. For instance, International Game Technology's well-known slot game "Cleopatra" can be found both in physical casinos and through Apple's DoubleDown Casino app.[6]

58.     The Illegal Slots are designed to mimic the electronic slot machines found in brick-and-mortar casinos, including many of the features designed to maximize time-on-device and money spent. For example, the Illegal Slots offer multiline betting—allowing players to wager and win on multiple pay lines—which tends to keep people playing and spending for longer.[7]

59.     There is no skill involved in the slot machine games offered at the Illegal Slots. Players can only place wagers (using virtual chips), and then press a button to "spin" the slot machine. It is impossible for players to affect the outcome of any spins.

60.     Within the Illegal Slots, players are typically given an initial allotment of virtual chips for free. Players use those chips to play the animated slot machines, choosing the amount they wager on each spin. Virtual chips are won and lost based on the outcome of those spins.

61.     Once a player loses their initial allotment of free chips, the Illegal Slots typically alert the player that he or she has insufficient funds to continue playing that slot game. Many of

---

[5]     Form F-1/A DoubleDown Interactive Co., Ltd. at 82, https://sec.report/Document/0001193125-20-183157/.

[6]     *Id*. at 4 ("We have exclusive access to hundreds of highly recognizable, branded land-based slot titles through our partnership with IGT which enables us to deliver an authentic casino floor experience to our players.").

[7]     *See* Natasha Dow Schüll, *Addiction By Design: Machine Gambling in Las Vegas* (Princeton Univ. Press 2012).

the Illegal Slot games have minimum bet requirements, such that a player cannot continue playing that game if their chip balance falls too low.

62.     At this point, players have three options: (i) stop playing, (ii) wait for some period of time before receiving more free chips from the Illegal Slot; or (iii) purchase more chips to keep playing—often with just a single click. To keep playing the same game immediately, players navigate to an electronic store and purchase chip packages.

63.     Apple operates as the payment processor for all in-app purchases of virtual chips in the Illegal Slots. Apple collects the money players spend on virtual chips, takes a cut for itself, and remits the rest to the Illegal Slots.[8]

64.     Purchased chips extend gameplay in the Illegal Slots because they allow players to place wagers on more spins of the slot machines.

65.     Virtual chips cannot be used outside of any individual Illegal Slots app. The chips can only be used to (1) place wagers on slot machine spins, (2) place wagers on the few card game or bingo titles in the Illegal Slots app, or (3) give a "gift" of virtual chips to another account in the app. Substantially all virtual chips are used on slot machine spins.

66.     Players typically run out of virtual chips quickly—within a day or two.[9]

67.     Notably, while any legitimately operated slot machine must randomize its results, social casinos do not fully randomize their results. Instead, social casinos tailor "wins" and "losses" in such a way as to maximize addiction (and, in turn, revenues). As the CEO of DoubleDown Casino once explained, "[o]ur games aren't built to be bulletproof like you'd need to be if you're a real gambling company. We can do things to make our games more [fun] that if you were an operator in Vegas you'd go to jail for, because *we change the odds just for fun*."[10]

---

[8]     *Apple Developer Program License Agreement*, Schedule 2 § 3.4, *available at* https://developer.apple.com/support/downloads/terms/schedules/Schedule-2-and-3-20211021-English.pdf.

[9]     Form F-1/A DoubleDown Interactive Co., Ltd. at 72, https://sec.report/Document/0001193125-20-183157/ ("Th[e] timing difference [between virtual currency purchase and consumption] is relatively short.").

[10]    *Gambling giant IGT buying Double Down for $500M, moving into Facebook games*, GEEK WIRE (Jan. 12, 2012), https://www.geekwire.com/2012/gambling-giant-igt-buying-doubledown-500m-moving-facebook-games/ [emphasis added].

68.     Developers of social casino games, such as Scientific Games, hold patents for "dynamic paytables" in interactive games. Paytables—coded into the Illegal Slot apps—set the payout for each possible game event. In other words, they determine how many chips players receive for various spin outcomes. Use of a dynamic paytable means that the payout for any given game event can change over the course of a game or over the course of a player's use of the app.

69.     As Scientific Games explained in their patent application, "[t]he slot machine's dynamic paytable is designed to take advantage of the observation that players are more apt to play gaming machines for longer periods of time if the payout is increased as the player continues to play the game. Other slot machines change the paytable based on the amount wagered by the player."[11]

70.     On information and belief, many Illegal Slots utilize dynamic paytables. In these games, players are cheated out of a legitimately randomized slot machine experience.

71.     Rather, the games adjust the potential payouts in order to maximize revenue—changing the gameplay and the odds in order to manipulate players into playing longer and spending more.

## II.     Apple Promotes, Hosts, and Facilitates At Least Fifty Illegal Social Casinos

72.     The Platforms, including Defendant Apple, have directly assisted in creating and operating the unregulated market of virtual casino games from the outset of the industry.

73.     Before gaining access to these social media platforms, the Illegal Slots used methods like loyalty cards to track data on how much gamblers spent, how frequently they played, or how often they bet. The Platform partnerships upgraded their business model to an in-app payment system and provided additional user data which skyrocketed revenue by providing them with access to a whole new market of consumers.

74.     The Illegal Slots rely on Platforms, like Defendant Apple, to make their games

---

[11]     United States Patent, *Dynamic Paytable for Interactive Games*, No. US 7,628,691 B2 (Dec. 8, 2009).

available to players and to collect revenue.[12] The Illegal Slots are *only* available to play via third-party Platforms, including on an app downloaded from the Apple App Store, on an app downloaded from Google Play, or on Facebook (online or mobile app).

75.     The core marketing for the Illegal Slots is accomplished in concert with the Platforms, and their systems are inextricably linked. Here, for example, is how one social casino maker described their partnership with the Platforms in a public securities filing:

> Our games are distributed through several main platform providers, including Apple, Facebook, Google, and Amazon, which also provide us valuable information and data, such as the rankings of our games. **Substantially all of our revenue is generated by players using those platforms.** Consequently, our expansion and prospects depend on our continued relationships with these providers[.]
> ….
>
> We focus our marketing efforts on acquiring new players and retaining existing players. We acquire players both organically and through paid channels. Our paid marketing includes performance marketing and dynamic media buying on Facebook, Google, and other channels such as mobile ad networks. Underlying our paid marketing efforts are our data analytics that allow us to estimate the expected value of a player and adjust our user acquisition spend to a targeted payback period. Our broad capabilities in promotions allow us to tailor promotional activity around new releases, execute differentiated multi-channel campaigns, and reach players with preferred creative content.
> ….
>
> Our player retention marketing includes advertising on Facebook as well as outreach through email, push notifications, and social media posts on channels such as Facebook, Instagram, and Pinterest. Our data and analytics also inform our retention marketing efforts. Campaigns are specially designed for each channel based upon player preferences for dimensions such as time of day and creative content. We consistently monitor marketing results and return on investment, replacing ineffective marketing tactics to optimize and improve channel performance.
> ….
>
> We employ a rigorous, data-driven approach to player lifecycle management from user acquisition to ongoing engagement and monetization. We use internally-developed analytic tools to segment and target players and to optimize user acquisition spend across multiple channels.
> ….
>
> We continuously gather and analyze detailed customer play behavior and assess this data in relation to our judgments used for revenue recognition.[13]

---

[12]     Form F-1/A DoubleDown Interactive Co., Ltd. at 16, https://sec.report/Document/0001193125-20-183157/.

[13]     *Id.* at 16, 72, 85, 91.

76.     By partnering with the Illegal Slots in marketing, distribution, and payment processing, Defendant Apple entered into a mutually beneficial business partnership with the Illegal Slots. In exchange for pushing and distributing the social casino apps and collecting money from consumers, Apple and the other Platforms take a 30 percent commission off of every in-app purchase, earning them billions in revenue.[14]

77.     Apple's profits increasingly rely on revenue from its "Services" business segment, which includes revenue from the App Store.

**A.    The Illegal Slots**

78.     Each of the following fifty Illegal Slots allows players to gamble on online slot machines, even in states where such gambling is unlawful.[15]

**Figure 4 – The Illegal Slots**

| # | Game Title | Apple App Store URL |
|---|---|---|
| 1 | Slotomania Vegas Casino Slots | https://apps.apple.com/US/app/id447553564?l=en |
| 2 | Jackpot Party - Casino Slots | https://apps.apple.com/US/app/id575980917?l=en |
| 3 | Cashman Casino Las Vegas Slots | https://apps.apple.com/US/app/id1123582513?l=en |
| 4 | DoubleDown - Casino Slots Game | https://apps.apple.com/US/app/id485126024?l=en |
| 5 | CashFrenzy - Slots Casino | https://apps.apple.com/US/app/id1404165333?l=en |
| 6 | House of Fun: Casino Slots 777 | https://apps.apple.com/US/app/id586634331?l=en |
| 7 | Huuuge Casino Slots Vegas 777 | https://apps.apple.com/US/app/id1028362533?l=en |
| 8 | Heart of Vegas Casino Slots | https://apps.apple.com/US/app/id785537179?l=en |
| 9 | Lightning Link Casino Slots | https://apps.apple.com/US/app/id1243005112?l=en |
| 10 | POP! Slots Live Vegas Casino | https://apps.apple.com/US/app/id1065980436?l=en |
| 11 | DoubleU Casino: Vegas Slots | https://apps.apple.com/US/app/id642727743?l=en |
| 12 | Caesars Casino: Vegas Slots | https://apps.apple.com/US/app/id603097018?l=en |
| 13 | Lotsa Slots - Vegas Casino | https://apps.apple.com/US/app/id1356045010?l=en |
| 14 | myVEGAS Slots - Casino Slots | https://apps.apple.com/US/app/id714508224?l=en |
| 15 | Gold Fish Casino Slots Games | https://apps.apple.com/US/app/id806393795?l=en |
| 16 | Wizard of Oz: Casino Slots | https://apps.apple.com/US/app/id916869395?l=en |
| 17 | Quick Hit Slots - Casino Games | https://apps.apple.com/US/app/id945621521?l=en |

---

[14]     *Apple Developer Program License Agreement*, Schedule 2 § 3.4, *available at* https://developer.apple.com/support/downloads/terms/schedules/Schedule-2-and-3-20211021-English.pdf.

[15]     For the Court's convenience, an iPad containing Apple-based versions of the Illegal Slots will be lodged with the Court as Exhibit 3. Upon request from Apple's appearing counsel, a copy of the iPad will be produced to Apple.

| 18 | Cash Tornado Slots - Casino | https://apps.apple.com/US/app/id1480805172?l=en |
| 19 | Billionaire Casino Slots 777 | https://apps.apple.com/US/app/id1098617974?l=en |
| 20 | Game of Thrones Slots Casino | https://apps.apple.com/US/app/id1369317521?l=en |
| 21 | Hit it Rich! Lucky Vegas Slot | https://apps.apple.com/US/app/id694876905?l=en |
| 22 | my KONAMI - Real Vegas Slots | https://apps.apple.com/US/app/id1040172229?l=en |
| 23 | Jackpot World - Casino Slots | https://apps.apple.com/US/app/id1356980152?l=en |
| 24 | Scatter Slots - Slot Machines | https://apps.apple.com/US/app/id944158857?l=en |
| 25 | Double Win Slots Casino Game | https://apps.apple.com/US/app/id1382108510?l=en |
| 26 | 88 Fortunes Slots Casino Games | https://apps.apple.com/US/app/id1091301948?l=en |
| 27 | Wynn Slots - Las Vegas Casino | https://apps.apple.com/US/app/id1323336775?l=en |
| 28 | Willy Wonka Slots Vegas Casino | https://apps.apple.com/US/app/id1074470421?l=en |
| 29 | Vegas Live Slots Casino | https://apps.apple.com/US/app/id1304885184?l=en |
| 30 | MONOPOLY Slots - Casino Games | https://apps.apple.com/US/app/id1215145992?l=en |
| 31 | Classic Casino Slots Games | https://apps.apple.com/US/app/id1116870834?l=en |
| 32 | GSN Casino: Slot Machine Games | https://apps.apple.com/US/app/id469231420?l=en |
| 33 | Rock N' Cash Casino Slots | https://apps.apple.com/US/app/id1143409775?l=en |
| 34 | Slot Machines 777 - Slots Era | https://apps.apple.com/US/app/id1133138987?l=en |
| 35 | Wild Classic Slots Casino | https://apps.apple.com/US/app/id1135852485?l=en |
| 36 | Club Vegas Slots: Casino Games | https://apps.apple.com/US/app/id1201054588?l=en |
| 37 | Ignite Classic Slots | https://apps.apple.com/US/app/id1256307081?l=en |
| 38 | Slots - Classic Casino | https://apps.apple.com/US/app/id994102781?l=en |
| 39 | Cash Mania - Casino Slots | https://apps.apple.com/US/app/id1518723506?l=en |
| 40 | Hot Shot Casino - Slots Games | https://apps.apple.com/US/app/id986110430?l=en |
| 41 | Double Hit Casino: Vegas Slots | https://apps.apple.com/US/app/id1016431735?l=en |
| 42 | Huge Win Slots! Casino Games | https://apps.apple.com/US/app/id1247414258?l=en |
| 43 | Winning Slots Las Vegas Casino | https://apps.apple.com/US/app/id1330550298?l=en |
| 44 | High 5 Casino: Home of Slots | https://apps.apple.com/US/app/id673354210?l=en |
| 45 | Tycoon Casino - Vegas Slots | https://apps.apple.com/US/app/id1437618231?l=en |
| 46 | Casino Games - Infinity Slots | https://apps.apple.com/US/app/id950710606?l=en |
| 47 | Slots DoubleDown Fort Knox | https://apps.apple.com/US/app/id1334300759?l=en |
| 48 | Golden Casino – Vegas Slots | https://apps.apple.com/US/app/id1216780424?l=en |
| 49 | Jackpotjoy Slots New 777 Games | https://apps.apple.com/US/app/id1355023074?l=en |
| 50 | Show Me Vegas Slots Casino App | https://apps.apple.com/US/app/id1172073178?l=en |

79. Most or all of the Illegal Slots are also hosted and promoted by the other Platform members of the Social Casino Enterprise, Google and Facebook.

**B. Apple's Facilitation, Promotion, and Control Over the Illegal Slots**

80. Apple, for its part, routinely facilitates the success of social casinos by counseling

the app developers through the app launch process and providing them with resources and

business tools necessary to maximize their success on the Apple App Store.

81.     Apple's operating system for Mac computers, the iPhone smartphone, and the iPad tablet—known as iOS—is a rigidly controlled closed system.

82.     Prior to being published in the Apple App Store, developers must submit their app for review. In this process, Apple examines whether the app violates any company policies and demands that apps comply with all relevant laws within the jurisdiction where the app is available. Apps may be, and often are, removed at Apple's discretion for violating its policies and can be audited at any time.[16]

83.     Apple closely monitors its gambling liability by responding to the changing market landscape when it deems necessary. Apple likewise heavily regulates advertising in its system that involves gambling, stating "Gaming, gambling, and lotteries can be tricky to manage and tend to be one of the most regulated offerings on the App Store. Only include this functionality if you've fully vetted your legal obligations everywhere you make your app available and are prepared for extra time during the review process."[17]

84.     Apple's App Store categorizes the Illegal Slots as "Casino" games (distinct from "Arcade" games and "Card" games).

85.     Apple also rates the Illegal Slots as "17+" indicating that the games are not appropriate for minors. In August 2019, Apple announced that "to help make the App Store safe for kids, apps that feature Frequent/Intense Simulated Gambling will be rated 17+ in all countries and regions."[18]

86.     Apple is thus keenly aware of the illegal, unfair, and deceptive nature of the Illegal Slots.

87.     Apple also helps the Illegal Slots target consumers and maximize revenue. For

---

[16]     *App Review*, Apple Developer, https://developer.apple.com/app-store/review/.

[17]     *App Store Review Guidelines*, Apple.com, https://developer.apple.com/app-store/review/guidelines/#other-business-model-issues.

[18]     *Upcoming Changes for 17+ Age Ratings and App Availability*, Apple Developer, https://developer.apple.com/news/?id=08192019a.

instance, Apple provides marketing guidance, tools, promotional offers, and more to app developers (like the developers of the Illegal Slots) to help drive users' discovery of apps and in-app purchases.[19]

88.     Apple also selects apps to feature on the App Store.[20] Featured placement increases app installs.

89.     Apple encourages app developers to incorporate Apple's "latest innovative Apple technologies" into their apps "to create useful and engaging experiences." For example, Apple urges developers to "[a]llow your users to . . . quickly purchase items within your app with Apple Pay, sign in to your app and website with their Apple ID, get things done with just their voice using Siri, and much more."[21]

90.     Apple has publicly acknowledged its active participation in the creation of app content, stating that the commissions its charges on all App Store sales reflect the value of the "tools and software for the development, testing and distribution of developers' apps and digital content" that it provides. Defendant Apple Inc.'s Opposition to Epic Games, Inc.'s Motion for a Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue at 4, *Epic Games, Inc. v. Apple Inc.*, No. 4:20-cv-05640-YGR (N.D. Cal., filed Aug. 21, 2020) (ECF No. 36). And it admits that it "invests significant resources" to make developers' content meets its standards by engaging in "rigorous, human-assisted review" of "every iOS app." Letter from Douglas G. Vetter, Vice President & Associate General Counsel, Apple Inc., to Canon Pence, General Counsel, Epic Games, Inc., at 4, *Epic Games*, No. 3:20-cv-05640-YGR (ECF No. 37-5).

91.     The Illegal Slot companies and Apple monitor the game activity and use the collected data to increase user spending. This access to data is critical for the developers: Since all payment processing occurs through third-party platforms, the Illegal Slot companies have limited access to personal user data unless players login through Apple or otherwise sign up for

---

[19]     *Promoting your apps*, Apple Developer, https://developer.apple.com/app-store/promote/.

[20]     *Getting Featured on the App Store*, Apple Developer, https://developer.apple.com/app-store/getting-featured/.

[21]     *Apple Developer Program*, Apple Developer, https://developer.apple.com/programs/.

1   loyalty programs.[22]

2   92.   Because the Illegal Slots depend on the spending of a small, targeted audience,

3   the Illegal Slot companies and Platforms work together to target and exploit high-spending users,

4   or "whales," as Illegal Slot companies like DoubleDown refer to their top spenders.[23]

5   93.   The data that the Illegal Slot companies and the Platforms collect on monetization

6   necessarily contributes to the structure and success of the Social Casino Enterprise.

7   94.   Apple allows Illegal Slot companies to target high spending users and activate

8   non-spending users. Apple aids in the design and direction of targeted advertising, both on and

9   within its App Store and other related Apple platforms, all aimed at driving new customers to the

10  Illegal Slots and retaining current gamblers

11  95.   Additionally, because the Illegal Slots are required to use Apple's payment

12  system to process all in-game purchases, Apple collects a 30 percent service fee off of every

13  transaction.

14  96.   Because Apple acts as the "bank" for the Illegal Slots, the Platforms are entirely

15  aware that some consumers spend *hundreds of thousands of dollars* on the Illegal Slots.

16  97.   At all relevant times, Apple and the Platforms have known of the unlawful nature

17  of the Illegal Slots and nonetheless have subjected the general public to the unlawful, predatory,

18  and addictive games in order to maximize profits at the expense of the public's health and

19  welfare.

20  98.   Furthermore, on information and belief, in the wake of the *Kater* decision, the

21  Platforms did not remove social casinos from their offerings but instead conferred with each

22  other and decided to each continue to offer illegal social casino games. This decision was

23  consistent with the Platforms' long history of entering into highly illegal agreements with each

24

25

26  ---

    [22]   Form F-1/A Doubledown Interactive Co., Ltd. at 21,
27  https://sec.report/Document/0001193125-20-183157/.

    [23]   *The Journey From a Single-App to a Multi-App Company*,
28  https://youtu.be/PY8gh8M6T20?t=1260 (Joe Sigrist, DoubleDown General Manager: "We track
    our whales").

1    other as long as it is highly lucrative to do so.[24]

2          99.     Despite having the ability to do so, Apple has not taken steps to limit access to the

3    Illegal Slots, such as by geo-restricting games such that they can only be played in certain states.

4    Apple regularly geo-restricts other gambling games where players can "cash out."

5          100.    If Apple ever discovers an illegal or fraudulent transaction in breach of its

6    Apple's terms or policies, it has the ability to deny developers from redeeming the proceeds in its

7    active balance.

8          101.    Unfortunately, with the Illegal Slots, Apple used their developer tools to take

9    advantage of users with severe gambling problems.

10         102.    As a result, Apple has unlawfully made billions of dollars on the backs of

11   consumers.

12   **III.    Players Are Harmed By the Illegal Slots Hosted by Defendant**

13         103.    Millions of consumers access Illegal Slots through Apple, and at least thousands

14   have paid money to Apple to purchase virtual chips for gambling on the Illegal Slots.

15         104.    These players have been injured by Apple's conduct because they have lost

16   money as a result of Apple's hosting, promoting, and facilitating of illegal gambling and Apple's

17   participation in unfair and unscrupulous business practices.

18         105.    Many players have lost substantial sums of money to Apple and the Social Casino

19   Enterprise. Players have maxed out credit cards, spent money they could not afford, and fallen

20   behind on bills because they cannot stop spending money on Illegal Slots. Some players' injuries

21   amount to tens or even hundreds of thousands of dollars.

22         106.    Many players feel addicted to the Illegal Slots—they try to stop, knowing that

23   they are losing money and that they are playing too much, but they can't. As long as Apple

24   continues to offer and promote Illegal Slots and continues to facilitate the sale of virtual chips,

25   the victimization of these players (and the accompanying harms) will persist.

26   ─────────────────────────

27   [24]      *See, e.g.*, *Exclusive: Apple, Google to pay $324 million to settle conspiracy lawsuit*,
     available at https://www.reuters.com/article/us-apple-google-lawsuit-exclusive/exclusive-apple-
     google-to-pay-324-million-to-settle-conspiracy-lawsuit-idUSBREA3N28Z20140425; *Behind a*

28   *Secret Deal Between Google and Faceb*ook, available at
     https://www.nytimes.com/2021/01/17/technology/google-facebook-ad-deal-antitrust.html.

107.    Players addicted to Illegal Slots also suffer serious non-economic damages, ranging from depression to divorce to attempted suicide.

108.    Many of these harms are irreparable. After-the-fact money damages cannot fix injuries like strained marriages, unsought medical treatments, skipped meals, and anxiety and self-loathing caused by Apple's and the Social Casino Enterprise's continued unlawful activity.

## FACTS SPECIFIC TO NAMED PLAINTIFFS

### I.    Ben Kramer

109.    Plaintiff Ben Kramer, 53, is a resident and citizen of Redmond, Washington. Mr. Kramer started playing DoubleDown Casino in approximately 2013 after discovering the game in the Apple App Store. Since he began playing DoubleDown Casino, he has regularly made purchases in the game through the Apple App Store. Mr. Kramer believes that he has spent approximately $220,000 in DoubleDown Casino, and estimates that he plays the game approximately 48 hours each week. Mr. Kramer's addiction to social casinos has taken a significant toll on his life. He has twice used the equity in his home to pay off massive, high-interest credit card debt amassed from his spending in the games, which increased his mortgage payment and set back his schedule for paying off his house by years. This spending and debt caused enormous strain in his marriage and he believes the financial stresses caused by DoubleDown Casino have likely made his and his husband's plan to retire by age 60 impossible.

### II.    Ashley Honeysuckle

110.    Plaintiff Ashley Honeysuckle, 36, is a resident and citizen of Gig Harbor, Washington. Ms. Honeysuckle started playing social casinos in approximately 2017 after seeing an ad on Facebook. She regularly plays and makes purchases in Lotsa Slots and Jackpot Party Casino through the Apple App Store. She believes she has made thousands of dollars in purchases as a result of Facebook ads offering promotions on virtual coins.

111.    Social casinos have significantly impacted Ms. Honeysuckle's finances. To date, she estimates that she has spent more than $30,000 on virtual coins. Her addiction to social casinos has caused her to fall behind on rent, car payments, and household bills. Her bank account is frequently overdrawn, which has resulted in overdraft fees. Her credit cards have been

maxed out, and some have been sent to collections, resulting in calls and letters from creditors. Her spending on social casinos has devastated her credit and put a heavy strain on her monthly budget. She has even delayed medical appointments and procedures in order to afford more virtual coins in social casinos and has been forced to borrow money from others to make ends meet. Because of her spending on social casinos, Ms. Honeysuckle and her spouse feel that they are unable to buy a home.

112.     In addition to these financial impacts, social casinos have consumed Ms. Honeysuckle's life. She estimates that she plays social casinos approximately 20 hours each week and has missed out on outings with friends, holidays, family vacations, and special memories with her son because of her addiction. She struggles with severe guilt over her social casino spending, to the point that she can become physically ill when she thinks about the amount of money she has lost playing the games. She suffers from insomnia due to the financial strain from social casinos and experiences frequent anxiety.

### III.   Cheree Bibbs

113.     Plaintiff Cheree Bibbs, 52, is a resident and citizen of Bessemer, Alabama. Ms. Bibbs plays and has paid money to DoubleDown Casino, Jackpot Party, and Slotomania through the Apple App Store. She began playing social casinos approximately 5 years ago. Ms. Bibbs estimates that she has spent approximately $15,000 in social casinos to date, and estimates that she plays the games as much as 40 hours each week.

### IV.   Robert Alldis

114.     Plaintiff Robert Alldis, 34, is a resident and citizen of San Diego, California. Mr. Alldis plays and has paid money on Lightning Link Casino through the Apple App Store. He started playing social casinos in approximately 2020 after seeing ads for the games on social media. Mr. Aldiss estimates that he plays social casinos approximately once per week, and estimates that he has spent approximately $1,000 to date playing the games.

### V.   Michael Helsel

115.     Plaintiff Michael Helsel, 59, is a resident and citizen of Loxley, Alabama. Mr. Helsel currently plays Double U Casino through the Apple App Store and believes he has played

Big Fish Casino, Cashman Casino, DoubleDown Casino, Heart of Vegas, Hit it Rich! Lucky Vegas Casino Slots, and Jackpot Party in the past. Mr. Helsel started playing social casinos in approximately 2016 after seeing advertisements on Facebook. Since then, social casinos have had a significant impact on his life. He estimates that he plays social casinos between 7 to 10 hours per week on average, and estimates that he has lost approximately $1,000 to $1,500 on social casinos to date.

## VI. Teresa Larsen

116.    Plaintiff Teresa Larsen, 62, is a resident and citizen of Baton Rouge, Louisiana. Ms. Larsen resided in Alabama prior to November 2020, and during her Alabama residency, she played Jackpot Party, DoubleDown Casino, and Goldfish Casino Slots through the Apple App Store. She started playing social casinos in approximately 2017. Ms. Larsen believes she plays social casinos for 15 to 20 hours each week on average, and estimates that she has spent approximately $2,000 in total playing social casinos.

## VII. Karen Workman

117.    Plaintiff Karen Workman, 57, is a resident and citizen of Norwich, Connecticut. Ms. Workman believes that over time she has played well over a dozen social casino games, including Billionaire Casino Slots 777, Caesars Slots, Cash Frenzy, Double U Casino, DoubleDown Casino, Lightning Link Casino, Zynga Slots, and Slots DoubleDown Fort Knox— all through the Apple App Store. She believes she started playing social casinos in approximately December 2016. Ms. Workman estimates that she plays social casinos for, on average, 40 to 50 hours per week, and estimates that she has spent approximately $25,000 to date playing social casinos.

## VIII. Janice Hill

118.    Plaintiff Janice Hill, 56, is a resident and citizen of Hartford, Connecticut. Ms. Hill plays Cash Frenzy, Club Vegas 2021, and Jackpot Party through the Apple App Store. She started playing social casinos in approximately 2018 after seeing advertisements while playing other games in the Apple App Store. Ms. Hill estimates that she plays social casinos at least 10 hours each week, and believes she has spent more than $1,000 to date playing social casinos.

## IX.    Vickie Payton

119.    Plaintiff Vickie Payton, 56, is a resident and citizen of Union City, Georgia. Ms. Payton played Big Fish Casino, Cashman Casino, and DoubleDown Casino through the Apple App Store until approximately September 2021. She started playing social casinos in approximately 2016 after seeing advertisements on Facebook. Up until the time she was able to stop playing social casinos, Ms. Payton believes she played social casinos approximately 24 hours each week, and estimates that she lost approximately $2,000.

## X.    Ernestine Thompson

120.    Plaintiff Ernestine Thompson, 52, is a resident and citizen of Chicago, Illinois. Ms. Thompson plays Cashman Casino, DoubleDown Casino, Jackpot Party, and Slotomania through the Apple App Store. She started playing social casinos in approximately 2015, and she believes she currently plays social casinos approximately 3 to 4 hours each week. Ms. Thompson estimates that she has spent thousands of dollars playing social casinos.

## XI.    Rebecca Vincent

121.    Plaintiff Rebecca Vincent, 66, is a resident and citizen of Owensburg, Indiana. Ms. Vincent started playing DoubleDown Casino in approximately 2018. She plays and purchases virtual coins in DoubleDown Casino through the Apple App Store. She estimates that she plays DoubleDown Casino more than 25 hours each week, and estimates she has lost more than $4,000 to date.

## XII.    Jennifer Andrews

122.    Plaintiff Jennifer Andrews, 54, is a resident and citizen of Sauk Rapids, Minnesota. Ms. Andrews started playing social casinos in approximately 2011 after seeing an advertisement on Facebook, and believes that over time she has played Caesars Slots, Cash Frenzy, Cashman Casino, Casino Jackpot Slots - Infinity Slots, Double U Casino; Heart of Vegas; Goldfish Casino Slots, Hit it Rich! Lucky Vegas Casino Slots, Jackpot Party, Jackpot Slot Machines - Slots Era Vegas Casino, Lotsa Slots, Monopoly Slots, myVEGAS Slots, Slotomania, Scatter Slots, Willy Wonka Slots, Wizard of Oz Slots, and Quick Hit Casino Games. She currently plays and makes purchases in DoubleDown Casino through the Apple App Store.

Ms. Andrews believes that she plays social casinos for approximately 20 hours per week on average, and estimates she has spent approximately $80,000 playing social casinos.

## XIII.   Amy Hoven

123.     Plaintiff Amy Hoven, 53, is a resident and citizen of Rochester, Minnesota. Ms. Hoven currently plays Game of Thrones Slots and Wizard of Oz Slots through the Apple App Store. She started playing social casinos in approximately October. Ms. Hoven believes that she plays social casinos for approximately 20 to 30 hours per week on average, and estimates that she has spent more than $25,000 to date playing social casinos.

## XIV.   Lue Stephens

124.     Plaintiff Lue Stephens, 62, is a resident and citizen of Aberdeen, Mississippi. Ms. Stephens currently plays Big Fish Casino and myVEGAS Slots through the Apple App Store. She started playing social casinos in approximately 2013. Ms. Stephens believes she plays social casinos approximately 48 hours per week on average, and she estimates that she has spent approximately $22,000 to date playing social casinos.

## XV.   Frankie Killings-Larkin

125.     Plaintiff Frankie Killings-Larkin, 52, is a resident and citizen of Toomsuba, Mississippi. Ms. Killings-Larkin played and made purchases in DoubleDown Casino through the Apple App Store. She started playing social casinos in approximately 2017. Ms. Killings-Larkin believes she used to play social casinos for, on average, 25 hours per week. She estimates that she has spent approximately $30,000 in the games to date.

## XVI.   Mary Lancaster

126.     Plaintiff Mary Lancaster, 73, is a resident and citizen of St. Charles, Missouri. Ms. Lancaster currently plays and spends money on Double U Casino, Pop Slots, Slots ERA, and Vegas Slots through the Apple App Store. She started playing social casinos in approximately 2018. Ms. Lancaster believes she plays social casinos for approximately 30 hours per week on average, and she estimates that she has spent approximately $4,000 playing social casino apps to date.

## XVII.  Juliana Wisher

127.    Plaintiff Juliana Wisher, 65, is a resident and citizen of Albuquerque, New Mexico. Ms. Wisher has played and made purchases in DoubleDown Casino, Hit it Rich! Lucky Vegas Casino Slots, Quick Hit Casino Games, Slotomania, and Wizard of Oz Slots through the Apple App Store. She estimates she started playing social casinos more than a decade ago. Ms. Wisher believes that she has played social casinos for approximately 35 hours per week on average, and estimates that she has spent approximately $40,000 to $50,000 playing social casinos to date.

## XVIII. Jennifer Hoose

128.    Plaintiff Jennifer Hoose, 44, is a resident and citizen of Howes Cave, New York. Ms. Hoose believes she has played and spent money on Cash Frenzy, Jackpot Party, Pop Slots, Quick Hit Casino Games, and Slotomania through the Apple App Store in the past, and she currently plays and makes purchases in DoubleDown Casino, Cashman Casino, Show me Vegas, and Lighting Link Casino Slots through the Apple App Store. She started playing social casinos in approximately 2015 after seeing ads in the Apple App Store and on Facebook. She believes she plays social casinos for between 14 and 24 hours per week, and estimates that she has lost approximately $200 to $300 to date.

## XIX.  Sean McCloskey

129.    Plaintiff Sean McCloskey, 44, is a resident and citizen of Huber Heights, Ohio. Mr. McCloskey started playing social casinos in July 2019 after seeing advertisements that appeared in other games he played through the Apple App Store. He has made purchases in Billionaire Casino Slots 777, Cash Frenzy, and Coin Master through the Apple App Store. He estimates that he plays social casinos approximately 20 hours each week, and estimates that he has spent approximately $800 to date in social casinos.

## XX.  Joshua McDonald

130.    Plaintiff Joshua McDonald, 32, is a resident and citizen of Portland, Oregon. Mr. McDonald began playing social casinos in approximately 2018 after seeing an ad on Facebook. He believes he has made purchases in My-KONAMI Real Vegas Slots, Pop Slots, myVEGAS

Slots, Jackpot World, Cash Frenzy, and Double U Casino through the Apple App Store. Mr. McDonald believes he made a number of these purchases after seeing offers for promotional bundles of virtual coins at discounted prices outside the game in the Apple App Store. He estimates that he plays social casinos for approximately 25 hours each week, and estimates that he has spent approximately $2,000 to $3,000 on social casinos to date.

## XXI.   Deborah Steese

131.    Plaintiff Deborah Steese, 52, is a resident and citizen of Cross, South Carolina. She started playing social casinos in approximately 2011 after seeing ads for the games while browsing Facebook. Since believes that, over time, she has played and made purchases in DoubleDown Casino, Heart of Vegas, Jackpot Party, Lightning Link Casino, My-KONAMI Real Vegas Slots, and Quick Hit Casino Games through the Apple App Store. She believes she plays social casinos approximately 3 hours each day and estimates that she has spent more than $1,000 in social casinos to date. Ms. Steese made a number of these purchases after seeing ads outside the games that appeared in both the Apple App Store and Google Play Store when she logged into those platforms.

## XXII.  John Viglietti

132.    Plaintiff John Viglietti, 41, is a resident and citizen of Oakland, Tennessee. Mr. Viglietti started playing social casinos in approximately 2015 after seeing ads in other games he played through the Apple App Store. He believes that, over time, he has played and made purchases in Lightning Link Casino, Cashman Casino, Heart of Vegas, and Jackpot Party through the Apple App Store. Before he stopped playing the games, he believes he spent approximately 4 hours per day playing social casinos, and estimates that he spent approximately $500 across the four games he played. He estimates that approximately half of his purchases were made after he saw promotional offers for virtual coins within the games.

## XXIII. Kai Griffin

133.    Plaintiff Kai Griffin, 51, is a resident and citizen of Thompson's Station, Tennessee. Mr. Griffin started playing social casinos in approximately 2013 after seeing ads on Facebook. He believes that he has played and made purchases in 88 Fortunes Casino, Cashman

Casino, DoubleDown Casino, Monopoly Slots, Quick Hit Casino Games, Slotomania, and Heart of Vegas, all through the Apple App Store. To date, he estimates that has spent between approximately $15,000 to $18,000 in social casinos, and estimates that he plays the games approximately 21 hours per week. He believes that a number of his purchases were made as a result of promotional offers for virtual coins he saw within the games and outside the games, while on Facebook.

## XXIV. Sheri Miller

134.    Plaintiff Sheri Miller, 72, is a resident and citizen of Jefferson City, Tennessee. Ms. Miller believes she started playing DoubleDown Casino more than a decade ago after seeing an ad on Facebook. She regularly plays and makes purchases in the game through the Apple App Store. She believes she has spent between approximately $50,000 and $75,000 in the game to date, and she estimates that she plays DoubleDown approximately 25 hours per week.

## XXV.  Connie Zilbert

135.    Plaintiff Connie Zilbert, 67, is a resident and citizen of Deer Park, Washington. She began playing social casinos in approximately 2011 after seeing ads that appeared in her Facebook news feed. She believes that, over time, she has played and made purchases in Casino Slots DoubleDown Fort Knox, DoubleDown Casino, Heart of Vegas, and Slotomania through the Apple App Store. She estimates that she has spent approximately $50,000 across the various games she plays, and estimates that she plays approximately 24 hours per week. She believes a large portion of her purchases were made as a result of constant ads both in the games and outside the games on Facebook.

## XXVI. Frank Custodero

136.    Plaintiff Frank Custodero, 65, is a resident and citizen of Parrish, Florida. Mr. Custodero started playing social casinos in approximately 2018. He has made purchases in Billionaire Casino Slots 777, Classic Casino Slot Games, Jackpot Slot Machines – Slots Era Vegas Casino, Lotsa Slots, and Quick Hit Casino Games through the Apple App Store. He believes he has spent approximately $4,000 in social casinos to date, and estimates that he played the games around 12 hours per week on average.

1

**XXVII.**      **Saundra Rogers**

2      137.      Plaintiff Saundra Rogers, 53, is a resident and citizen of Livermore, California.

3  Ms. Rogers plays and makes purchases in DoubleDown Casino through the Apple App Store.

4  She began playing DoubleDown in 2014. Ms. Rogers estimates that she has spent a total of

5  $6,900 in DoubleDown Casino, and she estimates that she spends 10 hour per week on average

6  playing the game.

7  **XXVIII.**      **Sheera Harris**

8      138.      Plaintiff Sheera Harris, 53, is a resident and citizen of Steubenville, Ohio. Ms.

9  Harris plays and believes she has made purchases in Cashman Casino, Jackpot Mania, Lightning

10  Link Casino, and My-KONAMI Real Vegas Slots through the Apple App Store. She estimates

11  she began playing social casinos in 2020 and estimates that she has spent more than $100 in

12  social casinos to date. She estimates that she plays the games around 1 to 3 hours per day on

13  average.

14                        <u>**CLASS ALLEGATIONS**</u>

15      139.      **Class Definitions**: Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(2)

16  and (b)(3) on behalf of themselves and Classes of similarly situated individuals, defined and

17  represented by Class Representatives as follows:

18            a.   <u>California Class</u>: All persons in California who have lost money to any Illegal

19                  Slots through the Apple platform. The California Class is represented by Class

20                  Representatives Robert Alldis and Saundra Rogers.

21            b.   <u>Washington Class</u>: All persons in Washington who have lost money to any Illegal

22                  Slots through the Apple platform. The Washington Class is represented by Class

23                  Representatives Connie Zilbert, Ben Kramer, and Ashley Honeysuckle.

24            c.   <u>Alabama Class</u>: All persons in Alabama who have lost money to any Illegal Slots

25                  through the Apple platform. The Alabama Class is represented by Class

26                  Representatives Cheree Bibbs, Michael Helsel, and Teresa Larsen.

27

28

d.  Connecticut Class: All persons in Connecticut who have lost money to any Illegal Slots through the Apple platform. The Connecticut Class is represented by Class Representatives Karen Workman and Janice Hill.

e.  Georgia Class: All persons in Georgia who have lost money to any Illegal Slots through the Apple platform. The Georgia Class is represented by Class Representative Vickie Payton.

f.  Illinois Class: All persons in Illinois who have lost money to any Illegal Slots through the Apple platform. The Illinois Class is represented by Class Representative Ernestine Thompson.

g.  Indiana Class: All persons in Indiana who have lost money to any Illegal Slots through the Apple platform. The Indiana Class is represented by Class Representative Rebecca Vincent.

h.  Minnesota Class: All persons in Minnesota who have lost money to any Illegal Slots through the Apple platform. The Minnesota Class is represented by Class Representatives Jennifer Andrews and Amy Hoven.

i.  Mississippi Class: All persons in Mississippi who have lost money to any Illegal Slots through the Apple platform. The Mississippi Class is represented by Class Representatives Lue Stephens and Frankie Killings-Larkin.

j.  Missouri Class: All persons in Missouri who have lost money to any Illegal Slots through the Apple platform. The Missouri Class is represented by Class Representative Mary Lancaster.

k.  New Mexico Class: All persons in New Mexico who have lost money to any Illegal Slots through the Apple platform. The New Mexico Class is represented by Class Representative Juliana Wisher.

l.  New York Class: All persons in New York who have lost money to any Illegal Slots through the Apple platform. The New York Class is represented by Class Representative Jennifer Hoose.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

m. <u>Ohio Class</u>: All persons in Ohio who have lost money to any Illegal Slots through the Apple platform. The Ohio Class is represented by Class Representatives Sean McCloskey and Sheera Harris.

n. <u>Oregon Class</u>: All persons in Oregon who have lost money to any Illegal Slots through the Apple platform. The Oregon Class is represented by Class Representative Joshua McDonald.

o. <u>South Carolina Class</u>: All persons in South Carolina who have lost money to any Illegal Slots through the Apple platform. The South Carolina Class is represented by Class Representative Deborah Steese.

p. <u>Tennessee Class</u>: All persons in Tennessee who have lost money to any Illegal Slots through the Apple platform. The Tennessee Class is represented by Class Representatives John Viglietti, Kai Griffin, and Sheri Miller.

q. <u>Nationwide Class</u>: All persons in the United States who have lost money to any Illegal Slots through the Apple platform. The Nationwide Class is represented by Class Representatives Robert Alldis, Cheree Bibbs, Michael Helsel, Teresa Larsen, Karen Workman, Janice Hill, Vickie Payton, Ernestine Thompson, Rebecca Vincent, Jennifer Andrews, Amy Hoven, Lue Stephens, Frankie Killings-Larkin, Mary Lancaster, Juliana Wisher, Jennifer Hoose, Sean McCloskey, Joshua McDonald, Deborah Steese, John Viglietti, Kai Griffin, Sheri Miller, Connie Zilbert, Ben Kramer, Ashley Honeysuckle, Frank Custodero, Saundra Rogers, and Sheera Harris.

140.    The following people are excluded from any of the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise

released; (5) Plaintiffs' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

141.    **Numerosity**: On information and belief, tens of thousands of consumers fall into the definition of each Class. Members of the Classes can be identified through Defendant's records, discovery, and other third-party sources.

142.    **Commonality and Predominance**: There are many questions of law and fact common to Plaintiffs' and the Classes' claims, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

A.    Whether the Illegal Slots are illegal under the relevant state gambling laws;

B.    Whether Apple, under relevant state gambling laws, is liable for managing, possessing, controlling, and/or profiting from the Illegal Slots;

C.    Whether Apple's participation in operating the Illegal Slots constitutes an unfair and/or unlawful business practice under relevant state consumer protection statutes;

D.    Whether Apple should be enjoined from further participation in the Social Casino Enterprise;

E.    Whether Apple is a participant in the Social Casino Enterprise; and

F.    Whether Apple has committed illegal predicate acts under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.*

143.    **Typicality**: Plaintiffs' claims are typical of the claims of other members of the Classes in that Plaintiffs and the members of the Classes sustained damages arising out of Defendant's wrongful conduct.

144.    **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Classes and have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs' claims are representative of the claims of the other members of the Classes, as Plaintiffs and each member of the Classes lost money playing the Illegal Slots. Plaintiffs also have no interests antagonistic to those of the Classes, and

1    Defendant has no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to

2    vigorously prosecuting this action on behalf of the Classes and have the financial resources to do

3    so. Neither Plaintiffs nor their counsel have any interest adverse to the Classes.

4        145.    **Policies Generally Applicable to the Classes**: This class action is appropriate for

5    certification because Defendant has acted or refused to act on grounds generally applicable to the

6    Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure

7    compatible standards of conduct toward the members of the Classes and making final injunctive

8    relief appropriate with respect to the Classes as a whole. Defendant's policies that Plaintiffs

9    challenge apply and affect members of the Classes uniformly, and Plaintiffs' challenge of these

10   policies hinges on Defendant's conduct with respect to the Classes as a whole, not on facts or

11   law applicable only to Plaintiffs. The factual and legal bases of Defendant's liability to Plaintiffs

12   and to the other members of the Classes are the same.

13       146.    **Superiority**: This case is also appropriate for certification because class

14   proceedings are superior to all other available methods for the fair and efficient adjudication of

15   this controversy. The harm suffered by the individual members of the Classes is likely to have

16   been relatively small compared to the burden and expense of prosecuting individual actions to

17   redress Defendant's wrongful conduct. Absent a class action, it would be difficult for the

18   individual members of the Classes to obtain effective relief from Defendant. Even if members of

19   the Classes themselves could sustain such individual litigation, it would not be preferable to a

20   class action because individual litigation would increase the delay and expense to all parties and

21   the Court and require duplicative consideration of the legal and factual issues presented. By

22   contrast, a class action presents far fewer management difficulties and provides the benefits of

23   single adjudication, economy of scale, and comprehensive supervision by a single Court.

24   Economies of time, effort, and expense will be fostered and uniformity of decisions will be

25   ensured.

26       147.    Plaintiffs reserve the right to revise each of the foregoing allegations based on

27   facts learned through additional investigation and in discovery.

28

**CAUSES OF ACTION**

**CLAIMS BROUGHT ON BEHALF OF THE STATE CLASSES**

**COUNT I**
**Cal. Bus. and Prof. Code § 17200, *et seq.* ("UCL")**
**Unlawful and Unfair Business Practices**
**(Restitution and Injunctive Relief)**
**(Plaintiffs Robert Alldis and Saundra Rogers, On Behalf of the California Class)**

148.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

149.    Plaintiffs are "person[s]" within the meaning of Cal. Bus. & Prof. Code § 17201 because they are natural persons.

150.    Plaintiffs have standing under the UCL because they suffered injury in fact and have lost money or property as a result of Apple's unlawful and unfair conduct.

151.    By hosting and facilitating the Illegal Slots, Apple engaged in unfair competition within the meaning of Cal. Bus. & Prof. Code § 17200 by committing unlawful, unfair, and fraudulent business acts and practices.

152.    Slot machines have long been outlawed in California.

153.    California law recognizes that a device can be an illegal slot machine without offering users the opportunity to win money.

154.    In fact, if a gaming machine has the look and feel of a slot machine, accepts real money for gameplay, and rewards a winning spin with an "additional chance or right to use the slot machine or device," the device is an illegal slot machine.

155.    Consequently, social casinos, as described herein, are illegal slot machines under California law.

156.    California gambling law is, on this point, consistent with the laws of many other states—including Washington. In *Kater*, for example, the Ninth Circuit held that social casinos are illegal under Washington law because, while users cannot win money, social casino chips are "things of value" because they can be purchased for money, are awarded as prizes in social casino slot machines, and then can be used to allow players to keep spinning social casino slot machines.

157.    California aggressively regulates all forms of gambling. One reason it does so is to prevent consumers from being cheated by professional gambling operations.

158.    Because social casinos have previously operated as if they were not subject to gambling regulations, they do not comply with any of the regulations that govern the operation of slot machines.

159.    Notably, while any legitimately operated slot machine must randomize its results, social casinos do not randomize their results. Instead, social casinos tailor "wins" and "losses" in such a way as to maximize addiction (and, in turn, revenues).

160.    In other words, social casinos cheat players out of a legitimately randomized slot machine experience. Not only can players never actually win money, but their financial losses are maximized by deceptive gameplay tweaks that would never be allowed in a legitimate (*i.e.*, licensed and regulated) slot machine.

161.    The Illegal Slots are illegal slot machines as defined by Cal. Penal Code § 330b(d) because, among other reasons, when a player purchases and wagers virtual casino chips in the Illegal Slots, a winning spin affords the player an "additional chance or right to use" the Illegal Slots. Pursuant to Cal. Penal Code § 330b(a), Defendant Apple, among other violative conduct, manufactures, repairs, owns, stores, possesses, sells, rents, leases, lets on shares, lends and gives away, transports, and exposes for sale or lease, the Illegal Slots. Apple also offers to repair, sells, rents, leases, lets on shares, lends and gives away, permit the operations, placement, maintenance, and keeping of, in places, rooms, spaces, and buildings owned, leased, or occupied, managed, or controlled by Apple, the Illegal Slots.

162.    The Illegal Slots are illegal slot machines as defined by Cal. Penal Code § 330.1 because, among other reasons, when a player purchases and wagers virtual casino chips in the Illegal Slots, a winning spin affords the player an "additional chance or right to use" the Illegal Slots. Pursuant to Cal. Penal Code § 330.1(a), Defendant Apple, among other violative conduct, manufactures, owns, stores, keeps, possesses, sells, rents, leases, lets on shares, lends and gives away, transports, and exposes for sale and lease, the Illegal Slots. Apple also offers to sell, rent, lease, let on shares, lends and gives away and permits the operation of and permits to be placed,

maintained, used, or kept in rooms, spaces, and building owned, leased, or occupied by Apple or under Apple's management and control, the Illegal Slots.

163.    The Illegal Slots are also illegal lotteries as defined by Cal. Penal Code § 319. Section 319 defines a lottery as any "any scheme for the disposal or distribution of property by chance, among persons who have paid or promised to pay any valuable consideration for the chance of obtaining such property." Thus, the elements of an illegal lottery under Section 319 are a prize (or "property"), distribution by chance, and consideration.

164.    The Illegal Slots satisfy all three elements because players pay valuable consideration in the form of real money to purchase virtual casino chips, use those chips to try to win prizes in the form of additional free plays, and are awarded these prizes based on chance outcomes.

165.    California law recognizes that the duty of the operator of a game of chance to permit the winner to play further games for free is an obligation arising from contract, and the right of the winning player to continue to play for free is personal property.

166.    Apple's hosting and facilitating of the Illegal Slots constitutes an unfair and unscrupulous business practice because—among other reasons—Apple and the Illegal Slots work together to target and exploit vulnerable and addicted players; to deceptively tweak gameplay in order to maximize time-on-device and revenue; and to operate their online slot machines outside the bounds of licensing, regulation, and tax policy.

167.    California's Unfair Competition Law ("UCL"), Bus. and Prof. Code § 17203, specifically authorizes this Court to issue injunctive relief to enjoin ongoing acts of unfair competition and unlawful conduct.

168.    Under the UCL, unfair competition encompasses any unlawful act, including acts made unlawful under the penal code and acts made unlawful by federal law.

169.    The UCL authorizes this Court to award restitution to the California Class and to enjoin Apple's ongoing violations of Sections 330b and 330.1 of the California Penal Code, as well as violations of the federal RICO law.

170.    No plain, adequate, and complete remedy for Defendant's conduct exists at law. Consequently, the California Class is entitled to an equitable remedy under the UCL.

171.    Plaintiffs Robert Alldis and Saundra Rogers, on behalf of themselves and the California Class, seek an order from the Court awarding restitution to the California Class in an amount to be determined at trial and enjoining Apple from further participation in the Social Casino Enterprise.

**COUNT II**
**Unjust Enrichment**
**(Plaintiffs Robert Alldis and Saundra Rogers, On Behalf of the California Class)**

172.    Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

173.    Plaintiffs bring this claim on behalf of themselves and the California Class under the common law of unjust enrichment.

174.    As a result of its unlawful conduct described above, Apple has been and will continue to be unjustly enriched to the detriment of Plaintiffs and California Class Members by virtue of their purchase of virtual coins from Apple to wager in social casinos through the Apple App Store.

175.    Apple has profited immensely by providing marketing guidance, tools, and other assistance to the developers of social casinos and retaining a percentage of the money spent by consumers in social casinos.

176.     These profits were obtained from illegal gambling in connection with Apple's operation of social casinos.

177.    These profits were a benefit conferred upon Apple by California Class Members when purchasing coins to wager in social casinos.

178.    Accordingly, because Apple will be unjustly enriched if it is allowed to retain the illegal profits from social casinos, Plaintiffs and each California Class Member are entitled to recover the amount by which Apple was unjustly enriched at their expense.

**COUNT III**
**Ala. Code § 8-1-150(a)**
**Civil Remedy Statute for Recovery of Gambling Losses**
**(Plaintiffs Cheree Bibbs, Michael Helsel, and Teresa Larsen, On Behalf of the Alabama Class)**

179.    Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

180.    Plaintiffs bring this claim on behalf of themselves and an Alabama Class under Alabama's Civil Remedy Statute for Recovery of Gambling Losses, Ala. Code § 8-1-150(a), which was enacted to effectuate the State's public policy against gambling.

181.    Ala. Code § 8-1-150(a) provides: "Any person who has paid any money or delivered any thing of value lost upon any game or wager may recover such money, thing, or its value by an action commenced within six months from the time of such payment or delivery."

182.    Accordingly, Ala. Code § 8-1-150(a) prohibits a person or entity from profiting from gambling activity and provides for the recovery of money paid and lost due to such gambling activity.

183.    By purchasing coins from Apple to wager on social casinos, Plaintiffs and each member of the Alabama Class paid money or gambled and lost money within the meaning of Ala. Code § 8-1-150(a).

184.    Apple has profited and continues to profit from each payment made by Alabama Class Members to purchase virtual coins, and therefore is in violation of Ala. Code § 8-1-150(a).

185.    Apple's active participation in the operation of social casinos increases its winnings from illegal gambling. The Platform (1) provides marketing guidance, tools, targeted promotional offers and more to help drive discovery and increased purchases within social casinos; (2) contributes to the creation and development of social casinos by providing technology, training, and other tools that allow developers of social casinos to operate these casinos on Apple's gaming platform; and (3) offers and distributes social casinos through the App Store and facilitates all in-app purchases for social casinos in exchange for a significant percentage of the money paid and lost by Plaintiffs and Alabama Class Members to gamble in social casinos.

186.     Plaintiffs and Alabama Class Members are therefore entitled to recover from Apple the amounts they lost when gambling in social casinos through the App Store.

**COUNT IV**
**Ala. Code § 8-19-1, *et seq.***
**Alabama Deceptive Trade Practices Act**
**(Plaintiffs Cheree Bibbs, Michael Helsel, and Teresa Larsen, On Behalf of the Alabama Class)**

187.     Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

188.     Plaintiffs bring this action on behalf of themselves and the Alabama State Class against Apple.

189.     Apple, Plaintiffs, and Alabama Class members are "persons" within the meaning of Ala. Code § 8-19-3(5).

190.     Plaintiffs and Alabama Class members are "consumers" within the meaning of Ala. Code § 8-19-3(2).

191.     Virtual coins and tokens used to play social casinos are "goods" within the meaning of Ala. Code. § 8-19-3(3).

192.     Apple is and was engaged in "trade or commerce" within the meaning of Ala. Code § 8-19-3(8).

193.     The Alabama Deceptive Trade Practices Act ("Alabama DTPA") prohibits "deceptive acts or practices in the conduct of any trade or commerce[.]" Ala. Code §  8-19-5.

194.     The Alabama DTPA makes unlawful "engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." *Id*. § 8-19-5(27).

195.     Social casinos are illegal gambling games because they are online games at which players wager things of value (virtual coins or tokens purchased with real-world money) and by an element of chance (*e.g.*, by spinning an online slot machine) are able to obtain additional entertainment and extend gameplay (by winning additional coins or tokens). In the course of its business, Apple profits from illegal gambling in connection with its operation of social casinos,

for which Plaintiffs and Alabama Class members purchased virtual coins and tokens. This constitutes an unconscionable act or practice and thus is in violation of the Alabama DTPA.

196.    Plaintiffs and Alabama Class members purchased virtual coins or tokens for personal, family, or household purposes and suffered ascertainable loss and actual damages as a direct and proximate result of Apple's unconscionable acts.

197.    Apple's violations present a continuing risk to Plaintiffs and Alabama Class members, as well as to the general public. Apple's unlawful acts and practices complained of herein affect the public interest.

198.    Pursuant to Ala. Code § 8-19-10, Plaintiffs and Alabama Class members seek an order enjoining Apple's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Alabama DTPA.

<u>**COUNT V**</u>
**Unjust Enrichment**
**(Plaintiffs Cheree Bibbs, Michael Helsel, and Teresa Larsen, On Behalf of the Alabama Class)**

199.    Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

200.    Plaintiffs bring this claim on behalf of themselves and the Alabama Class under the common law of unjust enrichment.

201.    As a result of its unlawful conduct described above, Apple has been and will continue to be unjustly enriched to the detriment of Plaintiffs and Alabama Class Members by virtue of their purchase of virtual coins from Apple to wager in social casinos through the Apple App Store.

202.    Apple has profited immensely by providing marketing guidance, tools, and other assistance to the developers of social casinos and retaining a percentage of the money spent by consumers in social casinos.

203.    These profits were obtained from illegal gambling in connection with Apple's operation of social casinos.

204.    These profits were a benefit conferred upon Apple by Alabama Class Members when purchasing coins to wager in social casinos.

205.    Accordingly, because Apple will be unjustly enriched if it is allowed to retain the illegal profits from social casinos, Plaintiffs and each Alabama Class Member are entitled to recover the amount by which Apple was unjustly enriched at their expense.

**COUNT VI**
**Conn. Gen. Stat. Ann. § 52-554**
**Civil Remedy Statute for Recovery of Gambling Losses**
**(Plaintiffs Karen Workman and Janice Hill, On Behalf of the Connecticut Class)**

206.    Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

207.    Plaintiffs bring this claim on behalf of themselves and the Connecticut Class under Connecticut's Civil Remedy Statute for Recovery of Gambling Losses, Conn. Gen. Stat. Ann. § 52-554, which was enacted to effectuate the State's public policy against gambling.

208.    Conn. Gen. Stat. Ann. § 52-554 provides: "Any person who, by playing at any game, or betting on the sides or hands of such as play at any game, excluding any game permitted under chapter 226 or any activity not prohibited under the provisions of sections 53-278a to 53-278g, inclusive, loses the sum or value of one dollar in the whole and pays or delivers the same or any part thereof, may, within three months next following, recover from the winner the money or the value of the goods so lost and paid or delivered, with costs of suit in a civil action, without setting forth the special matter in his complaint."

209.    Accordingly, Conn. Gen. Stat. Ann. § 52-554 prohibits a person or entity from profiting from gambling activity and provides for the recovery of money paid and lost due to such gambling activity.

210.    By purchasing coins from Apple to wager on social casinos, Plaintiffs and each member of the Connecticut Class illegally gambled and lost money within the meaning of Conn. Gen. Stat. Ann. § 52-554.

211.    Apple has profited and continues to profit from each payment made by Connecticut Class Members to purchase virtual coins, and therefore is the "winner" of each transaction, in violation of Conn. Gen. Stat. Ann. § 52-554.

212.    Apple's active participation in the operation of social casinos increases its winnings from illegal gambling. The Platform (1) provides marketing guidance, tools, targeted promotional offers and more to help drive discovery and increased purchases within social casinos; (2) contributes to the creation and development of social casinos by providing technology, training, and other tools that allow developers of social casinos to operate these casinos on Apple's gaming platform; and (3) offers and distributes social casinos through the App Store and facilitates all in-app purchases for social casinos in exchange for a significant percentage of the money paid and lost by Plaintiffs and Connecticut Class Members to gamble in social casinos.

213.    Plaintiffs and Connecticut Class Members are therefore entitled to recover from Apple the amounts they lost when gambling in social casinos through the App Store, in addition to costs of suit.

### COUNT VII
**Conn. Gen. Stat. Ann. § 42-110a, *et seq.***
**Connecticut Unlawful Trade Practices Act**
**(Plaintiffs Karen Workman and Janice Hill, On Behalf of the Connecticut Class)**

214.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

215.    Plaintiffs bring this action on behalf of themselves and the Connecticut Class against Apple.

216.    Apple, Plaintiffs, and Connecticut Class members are "persons" within the meaning of Conn. Gen. Stat. Ann. § 42-110a(3).

217.    Apple is and was engaged in "trade" or "commerce" within the meaning of Conn. Gen. Stat. Ann. § 42-110a(4).

218.     The Connecticut Unfair Trade Practices Act ("Connecticut UTPA") prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. Ann. § 42-110b(a).

219.     Social casinos are illegal gambling games because they are online games at which players wager things of value (virtual coins or tokens purchased with real-world money) and by an element of chance (*e.g.*, by spinning an online slot machine) are able to obtain additional entertainment and extend gameplay (by winning additional coins or tokens). In the course of its business, Apple profits from illegal gambling in connection with its operation of social casinos, for which Plaintiffs and Connecticut Class members purchased virtual coins and tokens. This practice offends public policy as it has been established by § Conn. Gen. Stat. 52-554 and common law.

220.     Plaintiffs and Connecticut Class members purchased virtual coins or tokens for personal, family, or household purposes suffered ascertainable loss and actual damages as a direct and proximate result of Apple's unfair and deceptive acts.

221.     Apple's violations present a continuing risk to Plaintiffs and Connecticut Class members, as well as to the general public. Apple's unlawful acts and practices complained of herein affect the public interest.

222.     Pursuant to Conn. Gen. Stat. Ann. § 42-110g, Plaintiffs and Connecticut Class members seek an order enjoining Apple's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Connecticut UTPA.

## COUNT VIII
### Unjust Enrichment
### (Plaintiffs Karen Workman and Janice Hill, On Behalf of the Connecticut Class)

223.     Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

224.     Plaintiffs bring this claim on behalf of themselves and the Connecticut Class under the common law of unjust enrichment.

225.     As a result of its unlawful conduct described above, Apple has been and will continue to be unjustly enriched to the detriment of Plaintiffs and Connecticut Class Members by

virtue of their purchase of virtual coins from Apple to wager in social casinos through the Apple App Store.

226.    Apple has profited immensely by providing marketing guidance, tools, and other assistance to the developers of social casinos and retaining a percentage of the money spent by consumers in social casinos.

227.     These profits were obtained from illegal gambling in connection with Apple's operation of social casinos.

228.    These profits were a benefit conferred upon Apple by Connecticut Class Members when purchasing coins to wager in social casinos.

229.    Accordingly, because Apple will be unjustly enriched if it is allowed to retain the illegal profits from social casinos, Plaintiffs and each Connecticut Class Member are entitled to recover the amount by which Apple was unjustly enriched at their expense.

## COUNT IX
### Ga. Code Ann. § 13-8-3
### Civil Remedy Statute for Recovery of Gambling Losses
### (Plaintiff Vickie Payton, On Behalf of the Georgia Class)

230.    Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

231.    Plaintiff brings this claim on behalf of herself and the Georgia Class under Georgia's Civil Remedy Statute for Recovery of Gambling Losses, Ga. Code. Ann. § 13-8-3, which was enacted to effectuate the State's public policy against gambling.

232.    Ga. Code. Ann. § 13-8-3 provides: "Money paid or property delivered upon a gambling consideration may be recovered from the winner by the loser by institution of an action for the same within six months after the loss and, after the expiration of that time, by institution of an action by any person, at any time within four years, for the joint use of himself and the educational fund of the county."

233.    Accordingly, Ga. Code. Ann. § 13-8-3 prohibits a person or entity from profiting from gambling activity and provides for the recovery of money paid and lost due to such gambling activity.

234.    By purchasing coins from Apple to wager on social casinos, Plaintiff and each member of the Georgia Class gambled and lost money within the meaning of Ga. Code. Ann. § 13-8-3.

235.    Apple has profited and continues to profit from each payment made by Georgia Class Members to purchase virtual coins, and therefore is the "winner" of each transaction, in violation of Ga. Code. Ann. § 13-8-3.

236.    Apple's active participation in the operation of social casinos increases its winnings from illegal gambling. The Platform (1) provides marketing guidance, tools, targeted promotional offers and more to help drive discovery and increased purchases within social casinos; (2) contributes to the creation and development of social casinos by providing technology, training, and other tools that allow developers of social casinos to operate these casinos on Apple's gaming platform; and (3) offers and distributes social casinos through the App Store and facilitates all in-app purchases for social casinos in exchange for a significant percentage of the money paid and lost by Plaintiff and Georgia Class Members to gamble in social casinos.

237.    Plaintiff and Georgia Class Members are therefore entitled to recover from Apple the amounts they lost when gambling in social casinos through the App Store.

## COUNT X
### Ga. Code Ann. § 10-1-390, *et seq.*
### Georgia Fair Business Practices Act
### (Plaintiff Vickie Payton, On Behalf of the Georgia Class)

238.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

239.    Plaintiff brings this action on behalf of herself and the Georgia Class against Apple.

240.    Apple, Plaintiff, and Georgia Class members are "persons" within the meaning of Ga. Code. Ann. § 10-1-392(a)(24).

241.    Plaintiff and Georgia Class members are "consumers" within the meaning of Ga. Code. Ann. § 10-1-392(a)(6).

242.     Apple is and was engaged in "trade" and "commerce" within the meaning of Ga. Code. Ann. § 10-1-392(a)(28).

243.     The Georgia Fair Business Practices Act ("Georgia FBPA") prohibits "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce[.]" Ga. Code Ann. § 10-1-393(a).

244.     Social casinos are illegal gambling games because they are online games at which players wager things of value (virtual coins or tokens purchased with real-world money) and by an element of chance (*e.g.*, by spinning an online slot machine) are able to obtain additional entertainment and extend gameplay (by winning additional coins or tokens). In the course of its business, Apple profits from illegal gambling in connection with its operation of social casinos, for which Plaintiff and Georgia Class members purchased virtual coins and tokens. This constitutes an unfair act or practice in violation of the Georgia FBPA.

245.     Plaintiff and Georgia Class members purchased virtual coins or tokens for personal, family, or household purposes and suffered ascertainable loss and actual damages as a direct and proximate result of Apple's conduct.

246.     Apple's violations present a continuing risk to Plaintiff and Georgia Class members, as well as to the general public. Apple's unlawful acts and practices complained of herein affect the public interest.

247.     Pursuant to Ga. Code. Ann. § 10-1-399, Plaintiff and the Georgia Class seek an order enjoining Apple's unfair and/or deceptive acts or practices, and awarding any other just and proper relief available under the Georgia FBPA.

## COUNT XI
### Unjust Enrichment
### (Plaintiff Vickie Payton, On Behalf of the Georgia Class)

248.     Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

249.     Plaintiff brings this claim on behalf of herself and the Georgia Class under the common law of unjust enrichment.

250.     As a result of its unlawful conduct described above, Apple has been and will continue to be unjustly enriched to the detriment of Plaintiff and Georgia Class Members by virtue of their purchase of virtual coins from Apple to wager in social casinos through the Apple App Store.

251.     Apple has profited immensely by providing marketing guidance, tools, and other assistance to the developers of social casinos and retaining a percentage of the money spent by consumers in social casinos.

252.     These profits were obtained from illegal gambling in connection with Apple's operation of social casinos.

253.     These profits were a benefit conferred upon Apple by Georgia Class Members when purchasing coins to wager in social casinos.

254.     Accordingly, because Apple will be unjustly enriched if it is allowed to retain the illegal profits from social casinos, Plaintiff and each Georgia Class Member are entitled to recover the amount by which Apple was unjustly enriched at their expense.

## COUNT XII
### 720 Ill. Comp. Stat. Ann. 5/28-8
### Civil Remedy Statute for Recovery of Gambling Losses
### (Plaintiff Ernestine Thompson, On Behalf of the Illinois Class)

255.     Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

256.     Plaintiff brings this claim on behalf of herself and the Illinois Class under Illinois' Civil Remedy Statute for Recovery of Gambling Losses, 720 Ill. Comp. Stat. Ann. 5/28-8, which was enacted to effectuate the State's public policy against gambling.

257.     720 Ill. Comp. Stat. Ann. 5/28-8 provides: "Any person who by gambling shall lose to any other person, any sum of money or thing of value, amounting to the sum of $50 or more and shall pay or deliver the same or any part thereof, may sue for and recover the money or other thing of value, so lost and paid or delivered, in a civil action against the winner thereof, with costs, in the circuit court. No person who accepts from another person for transmission, and transmits, either in his own name or in the name of such other person, any order for any

transaction to be made upon, or who executes any order given to him by another person, or who executes any transaction for his own account on, any regular board of trade or commercial, commodity or stock exchange, shall, under any circumstances, be deemed a 'winner' of any moneys lost by such other person in or through any such transactions."

258.    Accordingly, 720 Ill. Comp. Stat. Ann. 5/28-8 prohibits a person or entity from profiting from gambling activity and provides for the recovery of money paid and lost due to such gambling activity.

259.    By purchasing coins from Apple to wager on social casinos, Plaintiff and each member of the Illinois Class gambled and lost money within the meaning of 720 Ill. Comp. Stat. Ann. 5/28-8.

260.    Apple has profited and continues to profit from each payment made by Illinois Class Members to purchase virtual coins, and is the "winner" of each transaction, in violation of 720 Ill. Comp. Stat. Ann. 5/28-8.

261.    Apple's active participation in the operation of social casinos increases its winnings from illegal gambling. The Platform (1) provides marketing guidance, tools, targeted promotional offers and more to help drive discovery and increased purchases within social casinos; (2) contributes to the creation and development of social casinos by providing technology, training, and other tools that allow developers of social casinos to operate these casinos on Apple's gaming platform; and (3) offers and distributes social casinos through the App Store and facilitates all in-app purchases for social casinos in exchange for a significant percentage of the money paid and lost by Plaintiff and Illinois Class Members to gamble in social casinos.

262.    Plaintiff and Illinois Class Members are therefore entitled to recover from Apple the amounts they lost when gambling in social casinos through the App Store, in addition to costs of suit.

**COUNT XIII**
**815 ILCS 505/1, *et seq.***
**Illinois Consumer Fraud and Deceptive Business Practices Act**
**(Plaintiff Ernestine Thompson, On Behalf of the Illinois Class)**

PLAINTIFFS' MASTER COMPLAINT          46          Case No. 5:21-md-02985-EJD

263.     Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

264.     Plaintiff brings this action on behalf of herself and the Illinois Class against Apple.

265.     Apple, Plaintiff, and Illinois Class members are "persons" within the meaning of 815 ILCS 505/1(c).

266.     Plaintiff and Illinois Class members are "consumers" within the meaning of 815 ILCS 505/1(e).

267.     Virtual coins and tokens are "merchandise" within the meaning of 815 ILCS 505/1(b).

268.     Apple is and was engaged in "trade" and "commerce" within the meaning of 815 ILCS 505/1(f).

269.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFDBPA") prohibits "[U]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act" [815 ILCS 510/2], approved August 5, 1965, in the conduct of any trade or commerce[.]" 815 ILCS 505/2.

270.     Social casinos are illegal gambling games because they are online games at which players wager things of value (virtual coins or tokens purchased with real-world money) and by an element of chance (*e.g.*, by spinning an online slot machine) are able to obtain additional entertainment and extend gameplay (by winning additional coins or tokens). In the course of its business, Apple profits from illegal gambling in connection with its operation of social casinos, for which Plaintiff and Illinois Class members purchased virtual coins and tokens. This offends public policy because it violates 720 Ill. Comp. Stat. Ann. 5/28-8. Apple intended that Plaintiff rely on its unfair practices with regard to social casinos as outlined above. This constitutes an

unfair or deceptive act or practice, and thus violates the Illinois Consumer Fraud and Deceptive Business Practices Act.

271.     Plaintiff and Illinois Class members purchased virtual coins or tokens for personal, family, or household purposes and suffered ascertainable loss and actual damages as a direct and proximate result of Apple's conduct.

272.     Apple's violations present a continuing risk to Plaintiff and Illinois Class members, as well as to the general public. Apple's unlawful acts and practices complained of herein affect the public interest.

273.     Pursuant to 815 ILCS 505/10a, Plaintiff and Illinois Class members seek an order enjoining Apple's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Illinois CFDBPA.

### COUNT XIV
**Unjust Enrichment**
**(Plaintiff Ernestine Thompson, On Behalf of the Illinois Class)**

274.     Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

275.     Plaintiff brings this claim on behalf of herself and the Illinois Class under the common law of unjust enrichment.

276.     As a result of its unlawful conduct described above, Apple has been and will continue to be unjustly enriched to the detriment of Plaintiff and Illinois Class Members by virtue of their purchase of virtual coins from Apple to wager in social casinos through the Apple App Store.

277.     Apple has profited immensely by providing marketing guidance, tools, and other assistance to the developers of social casinos and retaining a percentage of the money spent by consumers in social casinos.

278.      These profits were obtained from illegal gambling in connection with Apple's operation of social casinos.

279.     These profits were a benefit conferred upon Apple by Illinois Class Members when purchasing coins to wager in social casinos.

280.     Accordingly, because Apple will be unjustly enriched if it is allowed to retain the illegal profits from social casinos, Plaintiff and each Illinois Class Member are entitled to recover the amount by which Apple was unjustly enriched at their expense.

**COUNT XV**
**Ind. Code Ann. § 34-16-1-2**
**Civil Remedy Statute for Recovery of Gambling Losses**
**(Plaintiff Rebecca Vincent, On Behalf of the Indiana Class)**

281.     Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

282.     Plaintiff brings this claim on behalf of herself and the Indiana Class under Indiana's Civil Remedy Statute for Recovery of Gambling Losses, Ind. Code Ann. § 34-16-1-2, which was enacted to effectuate the State's public policy against gambling.

283.     Ind. Code Ann. § 34-16-1-2 provides: "If a person, by betting on a game or on the hands or sides of persons playing a game: (1) loses any money or other property; and (2) delivers any part of the money or other property; the person may bring a civil action, within one hundred eighty (180) days, to recover the money or other property so lost and delivered."

284.     Accordingly, Ind. Code Ann. § 34-16-1-2 prohibits a person or entity from profiting from gambling activity and provides for the recovery of money paid and lost due to such gambling activity.

285.     By purchasing coins from Apple to wager on social casinos, Plaintiff and each member of the Indiana Class gambled and lost money within the meaning of Ind. Code Ann. § 34-16-1-2.

286.     Apple has profited and continues to profit from each payment made by Indiana Class Members to purchase virtual coins, and therefore is in violation of Ind. Code Ann. § 34-16-1-2.

287.     Apple's active participation in the operation of social casinos increases its winnings from illegal gambling. The Platform (1) provides marketing guidance, tools, targeted promotional offers and more to help drive discovery and increased purchases within social casinos; (2) contributes to the creation and development of social casinos by providing

technology, training, and other tools that allow developers of social casinos to operate these casinos on Apple's gaming platform; and (3) offers and distributes social casinos through the App Store and facilitates all in-app purchases for social casinos in exchange for a significant percentage of the money paid and lost by Plaintiff and Indiana Class Members to gamble in social casinos.

288.    Plaintiff and Indiana Class Members are therefore entitled to recover from Apple the amounts they lost when gambling in social casinos through the App Store.

## COUNT XVI
### Unjust Enrichment
### (Plaintiff Rebecca Vincent, On Behalf of the Indiana Class)

289.    Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

290.    Plaintiff brings this claim on behalf of herself and the Indiana Class under the common law of unjust enrichment.

291.    As a result of its unlawful conduct described above, Apple has been and will continue to be unjustly enriched to the detriment of Plaintiff and Indiana Class Members by virtue of their purchase of virtual coins from Apple to wager in social casinos through the Apple App Store.

292.    Apple has profited immensely by providing marketing guidance, tools, and other assistance to the developers of social casinos and retaining a percentage of the money spent by consumers in social casinos.

293.    These profits were obtained from illegal gambling in connection with Apple's operation of social casinos.

294.    These profits were a benefit conferred upon Apple by Indiana Class Members when purchasing coins to wager in social casinos.

295.    Accordingly, because Apple will be unjustly enriched if it is allowed to retain the illegal profits from social casinos, Plaintiff and each Indiana Class Member are entitled to recover the amount by which Apple was unjustly enriched at their expense.

**COUNT XVII**
**Minn. Stat. Ann. § 541.20**
**Civil Remedy Statute for Recovery of Gambling Losses**
**(Plaintiffs Jennifer Andrews and Amy Hoven, On Behalf of the Minnesota Class)**

296.  Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

297.  Plaintiffs bring this claim on behalf of themselves and the Minnesota Class under Minnesota's Civil Remedy Statute for Recovery of Gambling Losses, Minn. Stat. Ann. § 541.20 (referred to in this Count as the "Statute"), which was enacted to effectuate the State's public policy against gambling.

298.  The Statute provides: "Every person who, by playing at cards, dice, or other game, or by betting on the hands or sides of such as are gambling, shall lose to any person so playing or betting any sum of money or any goods, and pays or delivers the same, or any part thereof, to the winner, may sue for and recover such money by a civil action, before any court of competent jurisdiction."

299.  Accordingly, the Statute prohibits a person or entity from profiting from gambling activity and provides for the recovery of money paid and lost due to such gambling activity.

300.  By purchasing coins from Apple to wager on social casinos, Plaintiffs and each member of the Minnesota Class gambled and lost money within the meaning of the Statute.

301.  Apple has profited and continues to profit from each payment made by Minnesota Class Members to purchase virtual coins, and therefore is the "winner" of each transaction, in violation of the statute.

302.  Apple's active participation in the operation of social casinos increases its winnings from illegal gambling. The Platform (1) provides marketing guidance, tools, targeted promotional offers and more to help drive discovery and increased purchases within social casinos; (2) contributes to the creation and development of social casinos by providing technology, training, and other tools that allow developers of social casinos to operate these casinos on Apple's gaming platform; and (3) offers and distributes social casinos through the App Store and facilitates all in-app purchases for social casinos in exchange for a significant

percentage of the money paid and lost by Plaintiffs and Minnesota Class Members to gamble in social casinos.

303.   Plaintiffs and Minnesota Class Members are therefore entitled to recover from Apple the amounts they lost when gambling in social casinos through the App Store, in addition to costs of suit.

## COUNT XVIII
### Unjust Enrichment
### (Plaintiffs Jennifer Andrews and Amy Hoven, On Behalf of the Minnesota Class)

304.   Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

305.   Plaintiffs bring this claim on behalf of themselves and the Minnesota Class under the common law of unjust enrichment.

306.   As a result of its unlawful conduct described above, Apple has been and will continue to be unjustly enriched to the detriment of Plaintiffs and Minnesota Class Members by virtue of their purchase of virtual coins from Apple to wager in social casinos through the Apple App Store.

307.   Apple has profited immensely by providing marketing guidance, tools, and other assistance to the developers of social casinos and retaining a percentage of the money spent by consumers in social casinos.

308.   These profits were obtained from illegal gambling in connection with Apple's operation of social casinos.

309.   These profits were a benefit conferred upon Apple by Minnesota Class Members when purchasing coins to wager in social casinos.

310.   Accordingly, because Apple will be unjustly enriched if it is allowed to retain the illegal profits from social casinos, Plaintiffs and each Minnesota Class Member are entitled to recover the amount by which Apple was unjustly enriched at their expense.

## COUNT XIX
### Miss. Code Ann. § 87-1-5
### Civil Remedy Statute for Recovery of Gambling Losses
### (Plaintiffs Lue Stephens and Frankie Killings-Larkin, On Behalf of the Mississippi Class)

311.    Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

312.    Plaintiffs bring this claim on behalf of themselves and the Mississippi Class under Mississippi's Civil Remedy Statute for Recovery of Gambling Losses, Miss. Code Ann. § 87-1-5 (referred to in this Count as the "Statute"), which was enacted to effectuate the State's public policy against gambling.

313.    The Statute provides: "If any person, by playing at any game whatever, or by betting on the sides or hands of such as do play at any game, or by betting on any horse race or cockfight, or at any other sport or pastime, or by any wager whatever, shall lose any money, property, or other valuable thing, real or personal, and shall pay or deliver the same or any part thereof, the person so losing and paying or delivering the same, or his wife or children, may sue for and recover such money, property, or other valuable thing so lost and paid or delivered, or any part thereof, from the person knowingly receiving the same, with costs."

314.    Accordingly, the Statute prohibits a person or entity from profiting from gambling activity and provides for the recovery of money paid and lost due to such gambling activity.

315.    By purchasing coins from Apple to wager on social casinos, Plaintiffs and each member of the Mississippi Class gambled and lost money within the meaning of the Statute.

316.    Apple has profited and continues to profit from each payment made by Mississippi Class Members to purchase virtual coins, and therefore is the "person knowingly receiving" in each transaction, in violation of the statute.

317.    Apple's active participation in the operation of social casinos increases its winnings from illegal gambling. The Platform (1) provides marketing guidance, tools, targeted promotional offers and more to help drive discovery and increased purchases within social casinos; (2) contributes to the creation and development of social casinos by providing technology, training, and other tools that allow developers of social casinos to operate these casinos on Apple's gaming platform; and (3) offers and distributes social casinos through the App Store and facilitates all in-app purchases for social casinos in exchange for a significant

percentage of the money paid and lost by Plaintiffs and Mississippi Class Members to gamble in social casinos.

318.    Plaintiffs and Mississippi Class Members are therefore entitled to recover from Apple the amounts they lost when gambling in social casinos through the App Store, in addition to costs of suit.

## COUNT XX
### Unjust Enrichment
### (Plaintiffs Lue Stephens and Frankie Killings-Larkin, On Behalf of the Mississippi Class)

319.    Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

320.    Plaintiffs bring this claim on behalf of themselves and the Mississippi Class under the common law of unjust enrichment.

321.    As a result of its unlawful conduct described above, Apple has been and will continue to be unjustly enriched to the detriment of Plaintiffs and Mississippi Class Members by virtue of their purchase of virtual coins from Apple to wager in social casinos through the Apple App Store.

322.    Apple has profited immensely by providing marketing guidance, tools, and other assistance to the developers of social casinos and retaining a percentage of the money spent by consumers in social casinos.

323.     These profits were obtained from illegal gambling in connection with Apple's operation of social casinos.

324.    These profits were a benefit conferred upon Apple by Mississippi Class Members when purchasing coins to wager in social casinos.

325.    Accordingly, because Apple will be unjustly enriched if it is allowed to retain the illegal profits from social casinos, Plaintiffs and each Mississippi Class Member are entitled to recover the amount by which Apple was unjustly enriched at their expense.

## COUNT XXI
### Mo. Ann. Stat. § 434.030
### Civil Remedy Statute for Recovery of Gambling Losses
### (Plaintiff Mary Lancaster, On Behalf of the Missouri Class)

326.     Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

327.     Plaintiff brings this claim on behalf of herself and the Missouri Class under Missouri's Civil Remedy Statute for Recovery of Gambling Losses, Mo. Ann. Stat. § 434.030 (referred to in this Count as the "Statute"), which was enacted to effectuate the State's public policy against gambling.

328.     The Statute provides: "Any person who shall lose any money or property at any game, gambling device or by any bet or wager whatever, may recover the same by a civil action."

329.     Accordingly, the Statute prohibits a person or entity from profiting from gambling activity and provides for the recovery of money paid and lost due to such gambling activity.

330.     By purchasing coins from Apple to wager on social casinos, Plaintiff and each member of the Missouri Class gambled and lost money within the meaning of the Statute.

331.     Apple has profited and continues to profit from each payment made by Missouri Class Members to purchase virtual coins, and therefore is subject to "recover[y]" for each transaction, in violation of the Statute.

332.     Apple's active participation in the operation of social casinos increases its winnings from illegal gambling. The Platform (1) provides marketing guidance, tools, targeted promotional offers and more to help drive discovery and increased purchases within social casinos; (2) contributes to the creation and development of social casinos by providing technology, training, and other tools that allow developers of social casinos to operate these casinos on Apple's gaming platform; and (3) offers and distributes social casinos through the App Store and facilitates all in-app purchases for social casinos in exchange for a significant percentage of the money paid and lost by Plaintiff and Missouri Class Members to gamble in social casinos.

333.     Plaintiff and Missouri Class Members are therefore entitled to recover from Apple the amounts they lost when gambling in social casinos through the App Store, in addition to costs of suit.

**COUNT XXII**
**Mo. Ann. Stat. § 407.020(1)**
**Unfair Acts and Practices in the Conduct of Trade or Commerce**
**(Plaintiff Mary Lancaster, On Behalf of the Missouri Class)**

334.    Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

335.    Plaintiff brings this action on behalf of herself and the Missouri Class against Apple.

336.    Missouri's Consumer Protection Act prohibits that "[a]ny deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." Mo. Ann. Stat. § 407.020(1) (referred to in this count as the "Statute").

337.    Under the Statute, an unfair or deceptive practice includes one which is unlawful.

338.    Apple, Plaintiff, and Missouri Class members are "persons" within the meaning of Mo. Ann. Stat. §§ 407.020(1) and 407.025.

339.    As set forth herein, Apple violated Missouri's Civil Remedy Statute for Recovery of Gambling Losses.

340.    Apple's unlawful and otherwise unfair or deceptive acts and practices occurred in the conduct of trade or commerce. Indeed, Apple is responsible for making social casinos available to the public in trade and commerce.

341.    Apple's acts and practices were and are injurious to the public interest because Apple continuously advertises, solicits, and enables the general public in Missouri and throughout the United States to play unlawful and otherwise unfair or deceptive social casinos, all while profiting from such conduct.

342.    Such acts and practices are part of a pattern or generalized course of conduct on the part of Apple that contradicts the express public policy of Missouri.

343.    As a result of Apple's conduct, Plaintiff and Missouri Class Members were injured in their business or property—i.e., economic injury—in that they lost money wagering on unlawful and otherwise unfair or deceptive games of chance.

344.     Apple's unlawful and otherwise unfair or deceptive conduct proximately caused Plaintiff's and Missouri Class Members' injuries because, but for the challenged conduct, Plaintiff and Missouri Class Members would not have lost money wagering on illegal games of chance, which was a direct, foreseeable, and planned consequence of Apple's conduct.

345.     Plaintiff, on her own behalf and on behalf of the Missouri Class, seeks to recover, as permitted by law, actual damages and multiple damages, together with the costs of suit, including reasonable attorneys' fees.

**COUNT XXIII**
**Unjust Enrichment**
**(Plaintiff Mary Lancaster, On Behalf of the Missouri Class)**

346.     Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

347.     Plaintiff brings this claim on behalf of herself and the Missouri Class under the common law of unjust enrichment.

348.     As a result of its unlawful conduct described above, Apple has been and will continue to be unjustly enriched to the detriment of Plaintiff and Missouri Class Members by virtue of their purchase of virtual coins from Apple to wager in social casinos through the Apple App Store.

349.     Apple has profited immensely by providing marketing guidance, tools, and other assistance to the developers of social casinos and retaining a percentage of the money spent by consumers in social casinos.

350.     These profits were obtained from illegal gambling in connection with Apple's operation of social casinos.

351.     These profits were a benefit conferred upon Apple by Missouri Class Members when purchasing coins to wager in social casinos.

352.     Accordingly, because Apple will be unjustly enriched if it is allowed to retain the illegal profits from social casinos, Plaintiff and each Missouri Class Member are entitled to recover the amount by which Apple was unjustly enriched at their expense.

**COUNT XXIV**
**N.M. Stat. Ann. § 44-5-1**
**Civil Remedy Statute for Recovery of Gambling Losses**
**(Plaintiff Juliana Wisher, On Behalf of the New Mexico Class)**

353.     Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

354.     Plaintiff brings this claim on behalf of herself and the New Mexico Class under New Mexico's Civil Remedy Statute for Recovery of Gambling Losses, N.M. Stat. Ann. § 44-5-1 (referred to in this Count as the "Statute"), which was enacted to effectuate the State's public policy against gambling.

355.     The Statute provides: "Any person who shall lose any money or property at any game at cards, or at any gambling device, may recover the same by action of debt, if money; if property, by action of trover, replevin or detinue."

356.     Accordingly, the Statute prohibits a person or entity from profiting from gambling activity and provides for the recovery of money paid and lost due to such gambling activity.

357.     By purchasing coins from Apple to wager on social casinos, Plaintiff and each member of the New Mexico Class gambled and lost money within the meaning of the statute.

358.     Apple has profited and continues to profit from each payment made by New Mexico Class Members to purchase virtual coins, and therefore is subject to "recover[y]" for each transaction, in violation of the statute.

359.     Apple's active participation in the operation of social casinos increases its winnings from illegal gambling. The Platform (1) provides marketing guidance, tools, targeted promotional offers and more to help drive discovery and increased purchases within social casinos; (2) contributes to the creation and development of social casinos by providing technology, training, and other tools that allow developers of social casinos to operate these casinos on Apple's gaming platform; and (3) offers and distributes social casinos through the App Store and facilitates all in-app purchases for social casinos in exchange for a significant percentage of the money paid and lost by Plaintiff and New Mexico Class Members to gamble in social casinos.

360.     Plaintiff and New Mexico Class Members are therefore entitled to recover from Apple the amounts they lost when gambling in social casinos through the App Store, in addition to costs of suit.

### COUNT XXV
**N.M. Stat. Ann. § 57-12-3**
**Unfair Acts and Practices in the Conduct of Trade or Commerce**
**(Plaintiff Juliana Wisher, On Behalf of the New Mexico Class)**

361.     Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

362.     New Mexico's Consumer Protection Act prohibits "[u]nfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce." N.M. Stat. Ann. § 57-12-3 (referred to in this count as the "Statute").

363.     Under the Statute, an unfair or deceptive act or practice includes one which is unlawful.

364.     Apple, Plaintiff, and New Mexico Class members are "persons" within the meaning of N.M. Stat. Ann. §§ 57-12-3 and 57-12-10.

365.     As set forth herein, Apple violated New Mexico's Civil Remedy Statute for Recovery of Gambling Losses.

366.     Apple's unlawful and otherwise unfair or deceptive acts and practices occurred in the conduct of trade or commerce. Indeed, Apple is responsible for making social casinos available to the public in trade and commerce.

367.     Apple's acts and practices were and are injurious to the public interest because Apple continuously advertises, solicits, and enables the general public in New Mexico and throughout the United States to play unlawful and otherwise unfair or deceptive social casinos, all while profiting from such conduct.

368.     Such acts and practices are part of a pattern or generalized course of conduct on the part of Apple that contradicts the express public policy of New Mexico.

369.     As a result of Apple's conduct, Plaintiff and New Mexico Class Members were injured in their business or property—i.e., economic injury—in that they lost money wagering on unlawful and otherwise unfair or deceptive games of chance.

370.     Apple's unlawful and otherwise unfair or deceptive conduct proximately caused Plaintiff's and New Mexico Class Members' injuries because, but for the challenged conduct, Plaintiff and New Mexico Class Members would not have lost money wagering on illegal games of chance, which was a direct, foreseeable, and planned consequence of Apple's conduct.

371.     Plaintiff, on her own behalf and on behalf of the Class, seeks to recover, as permitted by law, actual damages and multiple damages, together with the costs of suit, including reasonable attorneys' fees.

**COUNT XXVI**
**Unjust Enrichment**
**(Plaintiff Juliana Wisher, On Behalf of the New Mexico Class)**

372.     Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

373.     Plaintiff brings this claim on behalf of herself and the New Mexico Class under the common law of unjust enrichment.

374.     As a result of its unlawful conduct described above, Apple has been and will continue to be unjustly enriched to the detriment of Plaintiff and New Mexico Class Members by virtue of their purchase of virtual coins from Apple to wager in social casinos through the Apple App Store.

375.     Apple has profited immensely by providing marketing guidance, tools, and other assistance to the developers of social casinos and retaining a percentage of the money spent by consumers in social casinos.

376.      These profits were obtained from illegal gambling in connection with Apple's operation of social casinos.

377.     These profits were a benefit conferred upon Apple by New Mexico Class Members when purchasing coins to wager in social casinos.

378.     Accordingly, because Apple will be unjustly enriched if it is allowed to retain the illegal profits from social casinos, Plaintiff and each New Mexico Class Member are entitled to recover the amount by which Apple was unjustly enriched at their expense.

**COUNT XXVII**
**N.Y. Gen. Oblig. Law §§ 5-419 & 5-421**
**Civil Remedy Statute for Recovery of Gambling Losses**
**(Plaintiff Jennifer Hoose, On Behalf of the New York Class)**

379.     Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

380.     Plaintiff brings this claim on behalf of herself and the New York Class under New York's Civil Remedy Statute for Recovery of Gambling Losses, N.Y. Gen. Oblig. Law §§ 5-419 & 5-421 (referred to in this Count as the "Statute"), which was enacted to effectuate the State's public policy against gambling.

381.     The Statute provides: "Any person who shall pay, deliver or deposit any money, property or thing in action, upon the event of any wager or bet prohibited, may sue for and recover the same of the winner or person to whom the same shall be paid or delivered, and of the stakeholder or other person in whose hands shall be deposited any such wager, bet or stake, or any part thereof, whether the same shall have been paid over by such stakeholder or not, and whether any such wager be lost or not." The statute further provides: "Every person who shall, by playing at any game, or by betting on the sides or hands of such as do play, lose at any time or sitting, the sum or value of twenty-five dollars or upwards, and shall pay or deliver the same or any part thereof, may, within three calendar months after such payment or delivery, sue for and recover the money or value of the things so lost and paid or delivered, from the winner thereof."

382.     Accordingly, the Statute prohibits a person or entity from profiting from gambling activity and provides for the recovery of money paid and lost due to such gambling activity.

383.     By purchasing coins from Apple to wager on social casinos, Plaintiff and each member of the New York Class gambled and lost money within the meaning of the Statute.

384.     Apple has profited and continues to profit from each payment made by New York Class Members to purchase virtual coins, and therefore is the "winner" (and/or "person to whom the same shall be paid or delivered") of each transaction, in violation of the Statute.

385.     Apple's active participation in the operation of social casinos increases its winnings from illegal gambling. The Platform (1) provides marketing guidance, tools, targeted promotional offers and more to help drive discovery and increased purchases within social casinos; (2) contributes to the creation and development of social casinos by providing technology, training, and other tools that allow developers of social casinos to operate these casinos on Apple's gaming platform; and (3) offers and distributes social casinos through the App Store and facilitates all in-app purchases for social casinos in exchange for a significant percentage of the money paid and lost by Plaintiff and New York Class Members to gamble in social casinos.

386.     Plaintiff and New York Class Members are therefore entitled to recover from Apple the amounts they lost when gambling in social casinos through the App Store, in addition to costs of suit.

### COUNT XXVIII
#### Unjust Enrichment
#### (Plaintiff Jennifer Hoose, On Behalf of the New York Class)

387.     Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

388.     Plaintiff brings this claim on behalf of herself and the New York Class under the common law of unjust enrichment.

389.     As a result of its unlawful conduct described above, Apple has been and will continue to be unjustly enriched to the detriment of Plaintiff and New York Class Members by virtue of their purchase of virtual coins from Apple to wager in social casinos through the Apple App Store.

390.     Apple has profited immensely by providing marketing guidance, tools, and other assistance to the developers of social casinos and retaining a percentage of the money spent by consumers in social casinos.

391.     These profits were obtained from illegal gambling in connection with Apple's operation of social casinos.

392.     These profits were a benefit conferred upon Apple by New York Class Members when purchasing coins to wager in social casinos.

393.     Accordingly, because Apple will be unjustly enriched if it is allowed to retain the illegal profits from social casinos, Plaintiff and each New York Class Member are entitled to recover the amount by which Apple was unjustly enriched at their expense.

**COUNT XXIX**
**Ohio Rev. Code § 3763.02**
**Civil Remedy Statute for Recovery of Gambling Losses**
**(Plaintiffs Sean McCloskey and Sheera Harris, On Behalf of the Ohio Class)**

394.     Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

395.     Plaintiffs bring this claim on behalf of themselves and the Ohio Class under Ohio's Civil Remedy Statute for Recovery of Gambling Losses, Ohio Rev. Code § 3763.02, which was enacted to effectuate the State's public policy against gambling.

396.     Section 3763.02 provides: "If a person, by playing a game, or by a wager, loses to another, money or other thing of value, and pays or delivers it or a part thereof, to the winner thereof, such person losing and paying or delivering, within six months after such loss and payment or delivery, may sue for and recover such money or thing of value or part thereof, from the winner thereof, with costs of suit."

397.     Accordingly, Section 3763.02 prohibits a person or entity from profiting from gambling activity and provides for the recovery of money paid and lost due to such gambling activity.

398.     By purchasing coins from Apple to wager on social casinos, Plaintiffs and each member of the Ohio Class gambled and lost money within the meaning of Section 3763.02.

399.     Apple has profited and continues to profit from each payment made by Ohio Class Members to purchase virtual coins, and therefore is the "winner" of each transaction, in violation of Section 3763.02.

400.     Apple's active participation in the operation of social casinos increases its winnings from illegal gambling. The Platform (1) provides marketing guidance, tools, targeted promotional offers and more to help drive discovery and increased purchases within social casinos; (2) contributes to the creation and development of social casinos by providing technology, training, and other tools that allow developers of social casinos to operate these casinos on Apple's gaming platform; and (3) offers and distributes social casinos through the App Store and facilitates all in-app purchases for social casinos in exchange for a significant percentage of the money paid and lost by Plaintiffs and Ohio Class Members to gamble in social casinos.

401.     Plaintiffs and Ohio Class Members are therefore entitled to recover from Apple the amounts they lost when gambling in social casinos through the App Store, in addition to costs of suit.

## COUNT XXX
### Unjust Enrichment
### (Plaintiffs Sean McCloskey and Sheera Harris, On Behalf of the Ohio Class)

402.     Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

403.     Plaintiffs bring this claim on behalf of themselves and the Ohio Class under the common law of unjust enrichment.

404.     As a result of its unlawful conduct described above, Apple has been and will continue to be unjustly enriched to the detriment of Plaintiffs and Ohio Class Members by virtue of their purchase of virtual coins from Apple to wager in social casinos through the Apple App Store.

405.     Apple has profited immensely by providing marketing guidance, tools, and other assistance to the developers of social casinos and retaining a percentage of the money spent by consumers in social casinos.

406.     These profits were obtained from illegal gambling in connection with Apple's operation of social casinos.

407. These profits were a benefit conferred upon Apple by Ohio Class Members when purchasing coins to wager in social casinos.

408. Accordingly, because Apple will be unjustly enriched if it is allowed to retain the illegal profits from social casinos, Plaintiffs and each Ohio Class Member are entitled to recover the amount by which Apple was unjustly enriched at their expense.

**COUNT XXXI**
**Or. Rev. Stat. § 30.740**
**Civil Remedy Statute for Recovery of Gambling Losses**
**(Plaintiff Joshua McDonald, On Behalf of the Oregon Class)**

409. Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

410. Plaintiff brings this claim on behalf of himself and the Oregon Class under Oregon's Civil Remedy Statute for Recovery of Gambling Losses, Or. Rev. Stat. § 30.740, which was enacted to effectuate the State's public policy against gambling.

411. Section 30.740 provides: "All persons losing money or anything of value at or on any unlawful game described in ORS 167.117[,] … 167.122[,] … and 167.127 … shall have a cause of action to recover from the dealer winning the same, or proprietor for whose benefit such game was played or dealt, or such money or thing of value won, twice the amount of the money or double the value of the thing so lost."

412. Accordingly, Section 30.740 prohibits a person or entity from profiting from gambling activity and provides for the recovery of money paid and lost due to such gambling activity.

413. ORS 167.117(7) defines "gambling" as any time a person "stakes or risks something of value upon the outcome of a contest of chance or a future contingent event not under the control or influence of the person, upon an agreement or understanding that the person or someone else will receive something of value in the event of a certain outcome."

414. Players of social casinos risk something of value (virtual coins purchased with real money) upon the outcome of a future contingent event (the results of the social casinos) not under the players' control or influence, upon the understanding that players will receive

something of value (additional coins allowing them to continue playing the game for free) in the event of a certain outcome.

415.    Thus, by purchasing coins from Apple to wager on social casinos, Plaintiff and each member of the Oregon Class gambled and lost money in illegal gambling transactions within the meaning of Section 30.740.

416.    Apple has profited and continues to profit from each payment made by Oregon Class Members to purchase virtual coins, and therefore is both the "dealer winning" the same and a proprietor for whose benefit social casinos were played, in violation of Section 30.740.

417.    Apple's active participation in the operation of social casinos increases its winnings from illegal gambling. The Platform (1) provides marketing guidance, tools, targeted promotional offers and more to help drive discovery and increased purchases within social casinos; (2) contributes to the creation and development of social casinos by providing technology, training, and other tools that allow developers of social casinos to operate these casinos on Apple's gaming platform; and (3) offers and distributes social casinos through the App Store and facilitates all in-app purchases for social casinos in exchange for a significant percentage of the money paid and lost by Plaintiff and Oregon Class Members to gamble in social casinos.

418.    Plaintiff and Oregon Class Members are therefore entitled to recover from Apple double the amounts they lost when gambling in social casinos through the App Store.

**COUNT XXXII**
**Unjust Enrichment**
**(Plaintiff Joshua McDonald, On Behalf of the Oregon Class)**

419.    Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

420.    Plaintiff brings this claim on behalf of himself and the Oregon Class under the common law of unjust enrichment.

421.    As a result of its unlawful conduct described above, Apple has been and will continue to be unjustly enriched to the detriment of Plaintiff and Oregon Class Members by

virtue of their purchase of virtual coins from Apple to wager in social casinos through the Apple App Store.

422.    Apple has profited immensely by providing marketing guidance, tools, and other assistance to the developers of social casinos and retaining a percentage of the money spent by consumers in social casinos.

423.    These profits were obtained from illegal gambling in connection with Apple's operation of social casinos.

424.    These profits were a benefit conferred upon Apple by Oregon Class Members when purchasing coins to wager in social casinos.

425.    Accordingly, because Apple will be unjustly enriched if it is allowed to retain the illegal profits from social casinos, Plaintiff and each Oregon Class Member are entitled to recover the amount by which Apple was unjustly enriched at their expense.

**COUNT XXXIII**
**S.C. Code § 32-1-10**
**Civil Remedy Statute for Recovery of Gambling Losses**
**(Plaintiff Deborah Steese, On Behalf of the South Carolina Class)**

426.    Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

427.    Plaintiff brings this claim on behalf of herself and the South Carolina Class under South Carolina's Civil Remedy Statute for Recovery of Gambling Losses, S.C. Code § 32-1-10, which was enacted to effectuate the State's public policy against gambling.

428.    Section 32-1-10 provides: "Any person who shall at any time or sitting, by playing at cards, dice table or any other game whatsoever or by betting on the sides or hands of such as do play at any of the games aforesaid, lose to any person or persons so playing or betting, in the whole, the sum or value of fifty dollars and shall pay or deliver such sum or value or any part thereof shall be at liberty, within three months then next ensuing, to sue for and recover the money or goods so lost and paid or delivered or any part thereof from the respective winner or winners thereof, with costs of suit …."

429.     Accordingly, Section 32-1-10 prohibits a person or entity from profiting from gambling activity and provides for the recovery of money paid and lost due to such gambling activity.

430.     By purchasing coins from Apple to wager on social casinos, Plaintiff and each member of the South Carolina Class gambled and lost money within the meaning of Section 32-1-10.

431.     Apple has profited and continues to profit from each payment made by South Carolina Class Members to purchase virtual coins, and therefore is the "winner" of each transaction, in violation of Section 32-1-10.

432.     Apple's active participation in the operation of social casinos increases its winnings from illegal gambling. The Platform (1) provides marketing guidance, tools, targeted promotional offers and more to help drive discovery and increased purchases within social casinos; (2) contributes to the creation and development of social casinos by providing technology, training, and other tools that allow developers of social casinos to operate these casinos on Apple's gaming platform; and (3) offers and distributes social casinos through the App Store and facilitates all in-app purchases for social casinos in exchange for a significant percentage of the money paid and lost by Plaintiff and South Carolina Class Members to gamble in social casinos.

433.     Plaintiff and South Carolina Class Members are therefore entitled to recover from Apple the amounts they lost when gambling in social casinos through the App Store, in addition to costs of suit.

## COUNT XXXIV
### Unjust Enrichment
### (Plaintiff Deborah Steese, On Behalf of the South Carolina Class)

434.     Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

435.     Plaintiff brings this claim on behalf of herself and the South Carolina Class under the common law of unjust enrichment.

436.     As a result of its unlawful conduct described above, Apple has been and will continue to be unjustly enriched to the detriment of Plaintiff and South Carolina Class Members by virtue of their purchase of virtual coins from Apple to wager in social casinos through the Apple App Store.

437.     Apple has profited immensely by providing marketing guidance, tools, and other assistance to the developers of social casinos and retaining a percentage of the money spent by consumers in social casinos.

438.     These profits were obtained from illegal gambling in connection with Apple's operation of social casinos.

439.     These profits were a benefit conferred upon Apple by South Carolina Class Members when purchasing coins to wager in social casinos.

440.     Accordingly, because Apple will be unjustly enriched if it is allowed to retain the illegal profits from social casinos, Plaintiff and each South Carolina Class Member are entitled to recover the amount by which Apple was unjustly enriched at their expense.

## COUNT XXXV
### Tenn. Code § 28-3-106
### Civil Remedy Statute for Recovery of Gambling Losses
**(Plaintiffs John Viglietti, Kai Griffin, and Sheri Miller, On Behalf of the Tennessee Class)**

441.     Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

442.     Plaintiffs bring this claim on behalf of themselves and the Tennessee Class under Tennessee's Civil Remedy Statute for Recovery of Gambling Losses, Tenn. Code § 28-3-106, which was enacted to effectuate the State's public policy against gambling.

443.     Section 28-3-106 provides that "the loser" of "any kind of gambling or betting" may bring an action "to recover money or goods lost" within 90 days after paying or delivering the lost money or goods.

444.     Accordingly, Section 28-3-106 prohibits a person or entity from profiting from gambling activity and provides for the recovery of money paid and lost due to such gambling activity.

445.   By purchasing coins from Apple to wager on social casinos, Plaintiffs and each member of the Tennessee Class gambled and lost money within the meaning of Section 28-3-106.

446.   Apple has profited and continues to profit from each payment made by Class Members to purchase virtual coins, and therefore is in violation of Section 28-3-106.

447.   Apple's active participation in the operation of social casinos increases its winnings from illegal gambling. The Platform (1) provides marketing guidance, tools, targeted promotional offers and more to help drive discovery and increased purchases within social casinos; (2) contributes to the creation and development of social casinos by providing technology, training, and other tools that allow developers of social casinos to operate these casinos on Apple's gaming platform; and (3) offers and distributes social casinos through the App Store and facilitates all in-app purchases for social casinos in exchange for a significant percentage of the money paid and lost by Plaintiffs and Tennessee Class Members to gamble in social casinos.

448.   Plaintiffs and Tennessee Class Members are therefore entitled to recover from Apple the amounts they lost when gambling in social casinos through the App Store.

## COUNT XXXVI
### Unjust Enrichment
**(Plaintiffs John Viglietti, Kai Griffin, and Sheri Miller, On Behalf of the Tennessee Class)**

449.   Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

450.   Plaintiffs bring this claim on behalf of themselves and the Tennessee Class under the common law of unjust enrichment.

451.   As a result of its unlawful conduct described above, Apple has been and will continue to be unjustly enriched to the detriment of Plaintiffs and Tennessee Class Members by virtue of their purchase of virtual coins from Apple to wager in social casinos through the Apple App Store.

452.     Apple has profited immensely by providing marketing guidance, tools, and other assistance to the developers of social casinos and retaining a percentage of the money spent by consumers in social casinos.

453.     These profits were obtained from illegal gambling in connection with Apple's operation of social casinos.

454.     These profits were a benefit conferred upon Apple by Tennessee Class Members when purchasing coins to wager in social casinos.

455.     Accordingly, because Apple will be unjustly enriched if it is allowed to retain the illegal profits from social casinos, Plaintiffs and each Tennessee Class Member are entitled to recover the amount by which Apple was unjustly enriched at their expense.

**COUNT XXXVII**
**Wash. Rev. Code § 4.24.070**
**Civil Remedy Statute for Recovery of Gambling Losses**
**(Plaintiffs Connie Zilbert, Ben Kramer, and Ashley Honeysuckle, On Behalf of the Washington Class)**

456.     Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

457.     Plaintiffs bring this claim on behalf of themselves and the Washington Class under Washington's Civil Remedy Statute for Recovery of Gambling Losses, Wash. Rev. Code § 4.24.070, which was enacted to effectuate the State's public policy against gambling.

458.     Section 4.24.070 provides: "All persons losing money or anything of value at or on any illegal gambling games shall have a cause of action to recover from the dealer or player winning, or from the proprietor for whose benefit such game was played or dealt, or such money or things of value won, the amount of the money or the value of the thing so lost."

459.     Accordingly, Section 4.24.070 prohibits a person or entity from profiting from gambling activity and provides for the recovery of money paid and lost due to such gambling activity.

460.     By purchasing coins from Apple to wager on social casinos, Plaintiffs and each member of the Washington Class gambled and lost money within the meaning of Section 4.24.070.

461.     "Gambling," defined by RCW § 9.46.0237, "means staking or risking something of value upon the outcome of a contest of chance or a future contingent event not under the person's control or influence."

462.     Virtual coins and tokens used to play social casinos are "thing[s] of value" under RCW § 9.46.0285.

463.     Social casinos are illegal gambling games because they are online games at which players wager things of value (the chips) and by an element of chance (e.g., by spinning an online slot machine) are able to obtain additional entertainment and extend gameplay (by winning additional chips).

464.     Apple has profited and continues to profit from each payment made by Washington Class Members to purchase virtual coins, and therefore is both the "dealer winning" the same and a proprietor for whose benefit social casinos were played, in violation of Section 4.24.070.

465.     Apple's active participation in the operation of social casinos increases its winnings from illegal gambling. The Platform (1) provides marketing guidance, tools, targeted promotional offers and more to help drive discovery and increased purchases within social casinos; (2) contributes to the creation and development of social casinos by providing technology, training, and other tools that allow developers of social casinos to operate these casinos on Apple's gaming platform; and (3) offers and distributes social casinos through the App Store and facilitates all in-app purchases for social casinos in exchange for a significant percentage of the money paid and lost by Plaintiffs and Washington Class Members to gamble in social casinos.

466.     Plaintiffs and Washington Class Members are therefore entitled to recover from Apple the amounts they lost when gambling in social casinos through the App Store.

**COUNT XXXVIII**
**Wash. Rev. Code § 19.86.020**
**Unfair Acts and Practices in the Conduct of Trade or Commerce**
**(Plaintiffs Connie Zilbert, Ben Kramer, and Ashley Honeysuckle, On Behalf of the Washington Class)**

467.    Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

468.    Washington's Consumer Protection Act ("CPA") prohibits any person from using "unfair methods of competition or unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW § 19.86.020.

469.    Under the CPA, an unfair or deceptive act is one which is unlawful and against public policy as declared by the legislature or judiciary.

470.    Plaintiffs and Washington Class Members are "persons" within the meaning of RCW §§ 19.86.020 and 19.86.090.

471.    Apple violated RCW § 9.46.010, *et seq.*, which declares that it is the policy of the State of Washington to, *inter alia*, "restrain all persons from seeking profit from professional gambling activities in this state," to "restrain all persons from patronizing such professional gambling activities," and to "safeguard the public against the evils induced by common gamblers and common gambling houses engaged in professional gambling." RCW § 9.46.010.

472.    Under RCW § 9.46.010, *et seq.*, unlawful "gambling" is defined as "staking or risking something of value upon the outcome of a contest of chance or a future contingent event not under the person's control or influence." RCW § 9.46.0237.

473.    Virtual coins and tokens used to play social casinos are "thing[s] of value" under RCW § 9.46.0285.

474.    Social casinos are illegal gambling games because they are online games at which players wager things of value (virtual coins or tokens purchased with real-world money) and by an element of chance (e.g., by spinning an online slot machine) are able to obtain additional entertainment and extend gameplay (by winning virtual coins or tokens).

475.    Apple operates social casinos in conjunction with the developers of those casinos and has profited immensely from its operation of unlawful games of chance, amassing hundreds of millions of dollars from illegal gambling transactions.

476.    Apple's unlawful acts and practices occurred in the conduct of trade or commerce. Indeed, Apple is responsible for making social casinos available to the public in trade and commerce.

477.    Apple's acts and practices were and are injurious to the public interest because Apple continuously advertises, solicits, and enables the general public in Washington State and throughout the United States to play unlawful social casinos, all while profiting from such conduct.

478.    This is part of a pattern or generalized course of conduct on the part of Apple that contradicts the express public policy of the State of Washington.

479.    As a result of Apple's conduct, Plaintiffs and Washington Class Members were injured in their business or property—i.e., economic injury—in that they lost money wagering on unlawful games of chance.

480.    Apple's unlawful conduct proximately caused Plaintiffs' and Washington Class Members' injuries because, but for the challenged conduct, Plaintiffs and Washington Class Members would not have lost money wagering on illegal games of chance, which was a direct, foreseeable, and planned consequence of Apple's conduct.

481.    Plaintiffs, on their own behalf and on behalf of the Washington Class, seek to recover actual damages and treble damages, together with the costs of suit, including reasonable attorneys' fees.

**COUNT XXXIX**
**Unjust Enrichment**
**(Plaintiffs Connie Zilbert, Ben Kramer, and Ashley Honeysuckle, On Behalf of the Washington Class)**

482.    Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

483.     Plaintiffs bring this claim on behalf of themselves and the Washington Class under the common law of unjust enrichment.

484.     As a result of its unlawful conduct described above, Apple has been and will continue to be unjustly enriched to the detriment of Plaintiffs and Washington Class Members by virtue of their purchase of virtual coins from Apple to wager in social casinos through the Apple App Store.

485.     Apple has profited immensely by providing marketing guidance, tools, and other assistance to the developers of social casinos and retaining a percentage of the money spent by consumers in social casinos.

486.     These profits were obtained from illegal gambling in connection with Apple's operation of social casinos.

487.     These profits were a benefit conferred upon Apple by Washington Class Members when purchasing coins to wager in social casinos.

488.     Accordingly, because Apple will be unjustly enriched if it is allowed to retain the illegal profits from social casinos, Plaintiffs and each Washington Class Member are entitled to recover the amount by which Apple was unjustly enriched at their expense.

## CLAIMS BROUGHT ON BEHALF OF THE NATIONWIDE CLASS

### COUNT XL
### 18 U.S.C. § 1962(c) (RICO)
### Racketeering Activities and Collection of Unlawful Debts
### (Damages and Injunctive Relief)
### (All Plaintiffs, On Behalf of the Nationwide Class)

489.     Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

490.     At all relevant times, Apple is and has been a "person" within the meaning of 18 U.S.C. § 1961(3), because it is capable of holding, and does hold, "a legal or beneficial interest in property."

491.     Plaintiffs are each a "person," as that term is defined in 18 U.S.C. § 1961(3), and have standing to sue as they were injured in their business and/or property as a result of the

Social Casino Enterprise's wrongful conduct described herein, including but not limited to the Enterprise's (1) unlawfully taking and receiving money from Plaintiffs and the Nationwide Class; (2) never providing Plaintiffs and members of the Nationwide Class a fair and objective chance to win—they could only lose; and (3) directly and knowingly profiting from, on information and belief, rigged and manipulated slot machines.

492. Section 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

493. 18 U.S.C. § 1961(1) defines "racketeering activity" to include, among other things, (i) any act which is indictable under Title 18, Section 1084 of the United States Code (relating to the transmission of gambling information); and (ii) any act which is indictable under Title 18, Section 1955 of the United States Code (relating to the prohibition of illegal gambling businesses).

494. Interstate gambling, including interstate internet gambling, is illegal under federal law if the gambling transaction is illegal in any states in which the transaction occurs. As relevant here, at least some portion of all alleged gambling transactions occur within California, where the alleged gambling transactions are illegal. Consequently, all alleged gambling transactions are illegal under federal law.

495. Specifically, illegal gambling is indictable under both Section 1084 and Section 1955 of Title 18 of the United States Code, as well as under California law, and is punishable by imprisonment for more than one year.

496. Therefore, the Social Enterprise is engaged in "racketeering activity."

497. 18 U.S.C. § 1961(6) defines "unlawful debt" as a debt "(A) incurred or contracted in gambling activity which was in violation of the law of the United States, a State or political subdivision thereof," and "(B) which was incurred in connection with the business of gambling in violation of the law of the United States, a State or political subdivision thereof."

498.     Because the Social Casino Enterprise collects debts incurred from a gambling activity in violation of California and other state law, described herein, its profits derived from its ownership and maintenance constitute "unlawful debt" as defined in Section 1961(6).

499.     Apple violated 18 U.S.C. § 1962(c) and § 1962(d) by participating in, facilitating, or conducting the affairs of the Social Casino Enterprise through a pattern of racketeering activity composed of indictable offenses under 18 U.S.C. § 1084, 18 U.S.C. § 1955, and California Penal Code § 319, § 330b, and § 330.1.

500.     The affiliation between the Defendant Apple, the other Platforms, and the Illegal Slot companies constitutes a conspiracy to use an enterprise for the collection of unlawful debt in violation of 18 U.S.C. § 1962(d).

### Social Casino Enterprise

501.     RICO defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

502.     Under 18 U.S.C. § 1961(4) a RICO "enterprise" may be an association-in-fact that, although it has no formal legal structure, has (i) a common purpose, (ii) relationships among those associated with the enterprise, and (iii) longevity sufficient to pursue the enterprise's purpose. *See Boyle v. United States*, 556 U.S. 938, 946 (2009).

503.     The Social Casino Enterprise is an association-in-fact composed of Apple, Google, Facebook, and the Illegal Slot companies who are engaged in and whose activities affect interstate commerce, and which have affected and damaged interstate commercial activity. This Enterprise exists separately from the otherwise legitimate businesses operations of each individual participant.

504.     The pattern of racketeering activity conducted by the members of the Social Casino Enterprise is distinct from the Social Casino Enterprise itself, as each act of racketeering is a separate offense committed by an entity while the Social Casino Enterprise itself is an association-in-fact of legal entities. The Social Casino Enterprise has an informal structure of app developers and platforms with continuing functions or responsibilities.

505.    For approximately a decade, the Social Casino Enterprise has collaborated together to target and retain high-spending users in their online gambling scheme throughout the country. At the very least, following the Ninth Circuit's March 18, 2018 holding in *Kater*, Defendant Apple and the other Platforms, on information and belief, mutually agreed to continue their Enterprise through their ongoing collection of unlawful debts, functioning as a cohesive unit with the purpose of gaining illicit gambling profits.

Structure of the Social Casino Enterprise

506.    The Social Casino Enterprise consists of dozens of Illegal Slot companies and the Platforms (Apple, Google, and Facebook). Each participant agreed to conduct and carry out the affairs and goals of the Social Casino Enterprise:

A.    The Illegal Slot companies agreed to conduct the affairs of the Social Casino Enterprise by developing, updating and operating the illegal slot machines: the "gambling devices." The Illegal Slot companies operate as the principals, forming the necessary business partnerships with Apple, Google and Facebook for the successful execution of their unlawful gambling scheme. The Illegal Slot companies fundamentally rely on the Platforms to host their games, access consumers, and collect revenue. Upon constructive notice of the unlawful nature of the virtual social gambling applications, the Illegal Slot companies agreed with all Enterprise participants to uphold their roles in the Social Casino Enterprise and to continue functioning as a single unit with the common purpose of collecting unlawful debts from online gambling activity.

B.    Apple, Google and Facebook agreed to conduct the affairs of the Social Casino Enterprise by serving as the gambling premises, hosting the virtual social gambling applications and processing all in-app transactions in exchange for a share in the gamblers' losses. Additionally, upon notice of the unlawful nature of the virtual social gambling applications, Apple, Google, and Facebook agreed with all participants to uphold their roles in the Social Casino Enterprise and to continue functioning as a single unit with the common purpose of collecting unlawful debts from online gambling activity.

507.     At all relevant times, each Social Casino Enterprise participant was aware of the conduct of the Social Casino Enterprise, was a knowing and willing participant in that conduct, and reaped profits from that conduct through in-app sales.

508.     The persons engaged in the Social Casino Enterprise are systematically linked through contractual relationships, financial ties, and continuing coordination of activities.

509.     All members of the Social Casino Enterprise coordinate and maintain their respective roles in order to enrich themselves and to further the common interests of the whole.

510.     Each Social Casino Enterprise participant participated in the operation and management of the Social Casino Enterprise by directing its affairs as described herein.

511.     The wrongful conduct of the Social Casino Enterprise has been and remains part of the Social Casino Enterprise's ongoing way of doing business and constitutes a continuing threat to the Plaintiffs' and the Nationwide Class's property. Without the repeated illegal acts and intentional coordination between all participants, the Social Casino Enterprise's scheme would not have succeeded and would not pose a threat to Plaintiffs and the Class into the future.

Pattern of Racketeering Activity

512.     The affairs of the Social Casino Enterprise were conducted in such a way to form a pattern of racketeering activity. The Social Casino Enterprise's general pattern of activity consists of designing and operating illegal internet-based slot machines and repeatedly violating public policy against gambling by:

    A.  Developing illegal slot machine games and disguising them as innocuous video game entertainment;

    B.  Distributing and operating illegal slot machine games that are, on information and belief, rigged and manipulated;

    C.  Concealing the scope and deceptive nature of their gambling applications despite knowledge of their predatory design and business model;

    D.  Providing a host platform to house unlicensed gambling activity;

    E.  Injuring the public interest by continuously advertising to and soliciting the general public to play illegal slot machines;

1      F.   Conspiring to uphold the Social Casino Enterprise; and

2      G.   Unjustly collecting unlawful debts and retaining the profits from their illegal social

3          gambling applications.

4      513.   The Social Casino Enterprise has operated as a continuous unit since at least

5  2010.

6      514.   Pursuant to and in furtherance of their fraudulent scheme, Apple committed

7  multiple predicate act violations of federal and state law as previously alleged herein.

8

**COUNT XLI**
**RICO § 1962(d)**
**Conspiracy to Engage in Racketeering Activities and Collection of Unlawful Debts**
**(Damages and Injunctive Relief)**
**(All Plaintiffs, On Behalf of the Nationwide Class)**

12      515.   Plaintiffs incorporate by reference the foregoing allegations as if fully set forth

13  herein.

14      516.   18 U.S.C. § 1962(d) states that "[i]t shall be unlawful for any person to conspire

15  to violate any of the provisions of subsection (a), (b), or (c) of this section."

16      517.   As described throughout, and in detail in Count II, even if it did not direct or

17  manage the affairs of the Social Casino Enterprise, Apple conspired to commit predicate acts in

18  violation of § 1962(c), including violations of California Penal Code §§ 330b and 330.1.

19      518.   Defendant Apple acted knowingly at all times when agreeing to conduct the

20  activities of the Social Casino Enterprise. Apple agreed to and indeed did participate in the

21  requisite pattern of racketeering activity which constitutes this RICO claim, collected unlawful

22  debts, engaged in racketeering activities, and intentionally acted in furtherance of the conspiracy

23  by conducting the pattern of racketeering and unlawful debt collection as described above.

24      519.   At the very least, Apple had notice of the illegality of the Social Casino Enterprise

25  as of the Ninth Circuit's 2018 holding in *Kater*. Apple's post-*Kater* participation in the Social

26  Casino Enterprise demonstrates its commitment to upholding and operating the structure of the

27  Social Casino Enterprise.

28

520.     As a result of Apple's conduct, Plaintiffs and Members of the Nationwide Class were deprived of money and property that they would not otherwise have lost.

521.     Under 18 U.S.C. § 1964(c), the Nationwide Class is entitled to treble their damages, plus interest, costs, and reasonable attorneys' fees.

**PRAYER FOR RELIEF**

Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court enter an Order:

a)      Certifying this case as a class action on behalf of the Classes defined above, appointing Robert Alldis, Cheree Bibbs, Michael Helsel, Teresa Larsen, Karen Workman, Janice Hill, Vickie Payton, Ernestine Thompson, Rebecca Vincent, Jennifer Andrews, Amy Hoven, Lue Stephens, Frankie Killings-Larkin, Mary Lancaster, Juliana Wisher, Jennifer Hoose, Sean McCloskey, Joshua McDonald, Deborah Steese, John Viglietti, Kai Griffin, Sheri Miller, Connie Zilbert, Ben Kramer, Ashley Honeysuckle, Frank Custodero, Saundra Rogers, and Sheera Harris as representatives of the Classes, and appointing their counsel as Class Counsel;

b)      Declaring that Defendant's conduct, as set out above, is unlawful under California's UCL, Ala. Code § 8-1-150(a), Ala. Code § 8-19-1, *et seq.*, Conn. Gen. Stat. Ann. § 52-554, Conn. Gen. Stat. Ann. § 42-110a, *et seq.*, Ga. Code Ann. § 13-8-3, Ga. Code Ann. § 10-1-390, *et seq.*, 720 Ill. Comp. Stat. Ann. 5/28-8, 815 ILCS 505/1, *et seq.*, Ind. Code Ann. § 34-16-1-2, Minn. Stat. Ann. § 541.20, Miss. Code Ann. § 87-1-5, Mo. Ann. Stat. § 434.030, Mo. Ann. Stat. § 407.020(1), Mont. Code Ann. § 23-5-131, N.M. Stat. Ann. § 44-5-1, N.M. Stat. Ann. § 57-12-3, N.Y. Gen. Oblig. Law §§ 5-419 & 5-421, Ohio Rev. Code § 3763.02, Or. Rev. Stat. § 30.740, S.C. Code § 32-1-10, Tenn. Code § 28-3-106, Wash. Rev. Code § 4.24.070, and Wash. Rev. Code § 19.86.020;

c)      Declaring that Defendant's conduct, as set out above, constitutes racketeering activities, collection of unlawful debts, and conspiracy to engage in the same;

d)      Entering judgment against Defendant Apple, in the amount of the losses suffered by Plaintiffs and each member of the Classes;

e)      Enjoining Defendant from continuing the challenged conduct;

1     f)     Awarding damages to Plaintiffs and the Class members in an amount to be

2    determined at trial, including trebling as appropriate;

3     g)     Awarding restitution to Plaintiffs and Class members in an amount to be

4    determined at trial,

5     h)     Requiring disgorgement of all of Apple's ill-gotten gains;

6     i)     Awarding reasonable attorneys' fees and expenses;

7     j)     Awarding pre- and post-judgment interest, to the extent allowable;

8     k)     Requiring injunctive and/or declaratory relief as necessary to protect the interests

9    of Plaintiffs and the Classes; and

10     l)     Awarding such other and further relief as equity and justice require, including all

11    forms of relief provided for under Plaintiffs' claims.

**JURY DEMAND**

13    Plaintiffs request a trial by jury of all claims that can be so tried.

Respectfully Submitted,

**ROBERT ALLDIS, CHEREE BIBBS, MICHAEL HELSEL, TERESA LARSEN, KAREN WORKMAN, JANICE HILL, VICKIE PAYTON, ERNESTINE THOMPSON, REBECCA VINCENT, JENNIFER ANDREWS, AMY HOVEN, LUE STEPHENS, FRANKIE KILLINGS-LARKIN, MARY LANCASTER, JULIANA WISHER, JENNIFER HOOSE, SEAN MCCLOSKEY, JOSHUA MCDONALD, DEBORAH STEESE, JOHN VIGLIETTI, KAI GRIFFIN, SHERI MILLER, CONNIE ZILBERT, BEN KRAMER, ASHLEY HONEYSUCKLE, FRANK CUSTODERO, SAUNDRA ROGERS, AND SHEERA HARRIS,** individually and on behalf of all others similarly situated,

Dated: November 22, 2021    **EDELSON PC**

By: /s/ Rafey S. Balabanian
RAFEY S. BALABANIAN (Bar No. 315962)
rbalabanian@edelson.com
TODD LOGAN (Bar No. 305912)
tlogan@edelson.com

150 California Street, 18th Floor
San Francisco, CA 94111
Tel: 415.212.9300
Fax: 415.373.9435

JAY EDELSON*
jedelson@edelson.com
THEO BENJAMIN*
tbenjamin@edelson.com
350 North LaSalle St., 14th Floor
Chicago, IL 60654
Tel: 312.589.6370
Fax: 312.589.6378

**TYCKO & ZAVAREEI LLP**

ANDREA R. GOLD*
agold@tzlegal.com
GLENN CHAPPELL*
gchappell@tzlegal.com
1828 L Street NW Suite 1000
Washington, DC 20036
Tel:    202.973.0900
Fax:    202.973.0950

HASSAN A. ZAVAREEI (Bar No. 181547)
hzavareei@tzlegal.com
1828 L Street NW Suite 1000
Washington, DC 20036
Tel:    202.973.0900
Fax:    202.973.0950

**KOPELOWITZ OSTROW FERGUSON
WEISELBERG GILBERT**

KRISTEN LAKE CARDOSO*
cardoso@kolawyers.com
1 West Las Olas Boulevard, Suite 500
Fort Lauderdale, Florida 33301
Tel: 954.525.4100
Fax: 954.525.4300

**BURSOR & FISHER. P.A.**

SARAH N. WESTCOT (Bar No. 264916)
swestcot@bursor.com
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Tel: 305.330.5512

**TOUSLEY BRAIN STEPHENS, PLLC**

CECILY C. SHIEL*
cshiel@tousley.com
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101
Tel:    206.682.8600
Fax:    206.682.2992

**DOVEL & LUNER, LLP**

CHRISTIN CHO (Bar No. 238173)
christin@dovel.com
201 Santa Monica Blvd, Suite 600
Santa Monica, CA 90401
Tel:    310.656.7077
Fax:    310.656.7069

**DAVIS & NORRIS, LLP**

JOHN E. NORRIS*
jnorris@davisnorris.com
2154 Highland Avenue South
Birmingham, AL 35205
Tel:    205.930.9900
Fax:    205.930.9989

**STEYER LOWENTHAL BOODROOKAS
ALVAREZ & SMITH LLP**

JILL M. MANNING (State Bar No. 178849)
235 Pine Street, 15th Floor
San Francisco, CA 94104
Tel: (415) 421-3400
Fax: (415) 421-2234

**PEARSON, SIMON & WARSHAW, LLP**

MELISSA S. WEINER*
mweiner@pswlaw.com
800 LaSalle Avenue, Suite 2150
Minneapolis, MN 55402
Telephone: (612) 389-0600
Facsimile: (612) 389-0610

*pro hac vice* admitted and/or forthcoming