JOHN SAMUEL GIBSON (Bar No. 140647)
john.gibson@us.dlapiper.com
**DLA PIPER LLP (US)**
2000 Avenue of the Stars, Suite 400 North Tower
Los Angeles, CA 90067-4704
Tel:    310.595.3039
Fax:    310.595.3339

BROOKE KILLIAN KIM (Bar No. 239298)
brooke.kim@us.dlapiper.com
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
Tel:    619.699.3439
Fax:    619.764.6739

*Attorneys for Defendant Apple Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE

| | |
|---|---|
| IN RE: APPLE INC. APP STORE SIMULATED CASINO-STYLE GAMES LITIGATION | Case No. 5:21-md-02985-EJD<br><br>**APPLE INC.'S NOTICE OF MOTION AND RULE 12(B)(6) MOTION TO DISMISS BASED ON IMMUNITY PURSUANT TO SECTION 230 OF THE COMMUNICATIONS DECENCY ACT**<br><br>Date:      August 4, 2022<br>Time:     9:00 a.m.<br>Judge:    Hon. Edward J. Davila<br>Room:    Courtroom 4—5th Floor |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 4, 2022, at 9:00 a.m. or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Edward J. Davila, United States District Judge, Northern District of California, located at 280 South 1st Street, San Jose, CA 95113, Courtroom 4, 5th floor, Defendant Apple Inc. ("Apple") will, and hereby does, move for an order dismissing Plaintiffs' Master Complaint ("Complaint") under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Apple's Motion to Dismiss is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently-filed Request for Judicial Notice ("RJN"), all pleadings

1   and papers on file in this matter, and upon such other matters as may be presented to the Court at

2   the time of the hearing or otherwise.

3          For the reasons set forth in the accompanying Memorandum of Points and Authorities,

4   Apple respectfully requests that the Court issue an order (1) granting Apple's Motion, (2) granting

5   Apple's Request for Judicial Notice, and (3) dismissing the Complaint and this action in their

6   entirety with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state

7   any claim upon which relief may be granted.

8                    **STATEMENT OF ISSUE TO BE DECIDED (LR 7-4(a)(3))**

9          Whether Section 230 of the Communications Decency Act, 47 U.S.C. § 230 (2018),

10  immunizes Apple, as a matter of law, from Plaintiffs' claims in their entirety.

11                              **RESERVATION OF RIGHTS**

12          Apple brings this Motion without waiver or limitation of its right to compel arbitration of

13  Plaintiffs' claims or to bring any other motion under Federal Rules of Civil Procedure 8, 9, and

14  12. The parties have agreed to defer motions on other pleadings issues until after the Court rules

15  on the instant Motion. ECF Nos. 90, 91. Furthermore, the Complaint omits the information

16  necessary for Apple to determine whether some or all of Plaintiffs have agreed to arbitrate their

17  claims, including any details regarding Plaintiffs' alleged transactions. Accordingly, Apple

18  respectfully reserves its right to compel individual arbitration of Plaintiffs' claims if and when

19  the necessary information is provided, and/or to bring any other pleading-based motion.

20  Dated:  April 8, 2022                    Respectfully submitted,

21                                          **DLA PIPER LLP (US)**

22                                          By:   */s/ John Samuel Gibson*

23                                                John Samuel Gibson

24                                          *Attorneys for Defendant Apple Inc.*

25

26

27

28

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ................................................................................................................. 1

RELEVANT ALLEGATIONS .............................................................................................. 3

PLEADING STANDARD ...................................................................................................... 5

SECTION 230 LEGAL BACKGROUND ............................................................................. 6

ARGUMENT ......................................................................................................................... 7

    I.      APPLE PROVIDES AN INTERACTIVE COMPUTER SERVICE. ................... 8

    II.     PLAINTIFFS' CLAIMS ARE BASED SOLELY ON APPLE'S IMMUNE ROLE IN PUBLISHING THIRD-PARTY APPS. ................................................. 8

        A.    Each Claim in the Complaint Seeks to Treat Apple as a Publisher. ........ 9

        B.    Plaintiffs' Attempt to Plead Around Section 230 Immunity Fails as a Matter of Law. ............................................................................................ 11

        C.    The Taylor District Court Decision Does Not Expand Apple's Role Beyond Publishing the Third-Party Apps. ............................................... 16

    III.    THE APPS AT ISSUE WERE UNDISPUTEDLY DEVELOPED BY THIRD-PARTY DEVELOPERS, *NOT* APPLE. ........................................................... 18

    IV.    THE COURT SHOULD DISMISS THE COMPLAINT WITH PREJUDICE. . 18

CONCLUSION ..................................................................................................................... 20

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

CASES

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................. 5

*Barnes v. Yahoo!, Inc.*,
  570 F.3d 1096 (9th Cir. 2009) ...................................................................... passim

*Carafano v. Metrosplash.com, Inc.*,
  339 F.3d 1119 (9th Cir. 2003) ................................................................... 6, 18

*Coffee v. Google, LLC*,
  No. 20-cv-03901-BLF, 2021 WL 493387 (N.D. Cal. Feb. 10, 2021) ..................... passim

*Coffee v. Google*,
  No. 20-cv-03901-BLF, 2022 WL 94986 (N.D. Cal. Jan. 10, 2022) ........................ passim

*Epic Games, Inc. v. Apple Inc*,
  --F. Supp. 3d--, No. 4:20-cv-05640-YGR, 2021 WL 4128925 (N.D. Cal.
  Sept. 10, 2021) ....................................................................................... 1, 4, 5

*Fair Housing Council v. Roommates.com, LLC*,
  521 F.3d 1157 (9th Cir. 2008) .......................................................... 7, 9, 14, 15

*Federal Agency of News LLC v. Facebook Inc.*,
  432 F. Supp. 3d 1107 (N.D. Cal. 2020) .......................................... 7, 10, 11, 12

*Ferrando, et al. v. Zynga, Inc.*,
  No. 2:22-cv-99214, ECF No. 1 (W.D. Wash. Feb. 24, 2022) ........................... 18

*Foreman v. Bank of Am., N.A.*,
  401 F. Supp. 3d 914 (N.D. Cal. 2019) ......................................................... 18

*Free Kick Master LLC v. Apple Inc.*,
  140 F. Supp. 3d 975 (N.D. Cal. 2015) ........................................................... 8

*Fyk v. Facebook*,
  808 F. App'x 597 (9th Cir. 2020) ................................................................. 11

*Ginsberg v. Google Inc.*,
  No. 21-cv-00570-BLF, 2022 WL 504166 (N.D. Cal. Feb. 18, 2022) .................... 14

*Goddard v. Google, Inc.*,
  640 F. Supp. 2d 1193 (N.D. Cal. 2009) ......................................................... 7

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Goddard v. Google*,
   No. C 08-2738, 2008 WL 5245490 (N.D. Cal. Dec. 17, 2008) ............................ 7, 11, 12, 17

*Gonzalez v. Google, Inc.*,
   282 F. Supp. 3d 1150 (N.D. Cal. 2017) ............................................................. 15

*Hart v. Massanari*,
   266 F.3d 1155 (9th Cir. 2001) ........................................................................ 17

*Kater v. Churchill Downs Inc.*,
   886 F.3d 784 (9th Cir. 2018) ......................................................................... 19

*Kimzey v. Yelp! Inc.*,
   836 F.3d 1263 (9th Cir. 2016) .................................................................... 15, 16

*King v. Facebook, Inc.*,
   --F. Supp. 3d--, 2021 WL 5279823 (N.D. Cal. Nov. 12, 2021) ............................ 20

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) .......................................................................... 5

*La Park La Brea A LLC v. Airbnb, Inc.*,
   285 F. Supp. 3d 1097 (C.D. Cal. 2017) ........................................................ 12, 14

*Opperman v. Path, Inc.*,
   87 F. Supp. 3d 1018 (N.D. Cal. 2014) ..................................................... 12, 13, 14

*PC Drivers Headquarters, LP v. Malwarebytes Inc.*,
   371 F. Supp. 3d 652 (N.D. Cal. 2019) ............................................................. 19

*Sikhs for Justice, Inc. v. Facebook, Inc.*,
   697 F. App'x 526 (9th Cir. 2017) .................................................................... 19

*Skilstaf, Inc. v. CVS Caremark Corp.*,
   669 F.3d 1005 (9th Cir. 2012) .......................................................................... 5

*Spy Phone Labs LLC. v. Google Inc.*,
   No. 15-cv-03756-KAW, 2016 WL 6025469 (N.D. Cal. Oct. 14, 2016) ..................... 8, 13

*Taylor v. Apple, Inc.*,
   No. 20-cv-03906-RS, 2022 WL 35601 (N.D. Cal. Jan. 4, 2022) ...................... 16, 17, 19

*U.S. v. Armijo*,
   5 F.3d 1229 (9th Cir. 1993) ........................................................................... 17

STATUTES

47 U.S.C. § 230 ...................................................................................... passim

47 U.S.C. § 230(b)(1) ............................................................................... 6, 18

47 U.S.C. § 230(b)(2) ................................................................................................ 15

47 U.S.C. § 230(b)(3) ................................................................................................ 15

47 U.S.C. § 230(c)(1) ............................................................................................ 6, 18

47 U.S.C. § 230(c)(2) .................................................................................................. 6

47 U.S.C. § 230(e)(3) .................................................................................................. 6

47 U.S.C. § 230(f)(2) .................................................................................................. 8

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8 ......................................................................................................... 2

Fed. R. Civ. P. 9 ......................................................................................................... 2

Fed. R. Civ. P. 12 ....................................................................................................... 2

Fed. R. Civ. P. 12(b)(6) .............................................................................................. 5

Webster's Third New International Dictionary 1837 (Philip Babcock Gove ed.,
   1986) ..................................................................................................................... 8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Apple "fundamentally changed the cellular device market" with its "revolutionary" iPhone, launched in 2007 and powered by Apple's proprietary iOS operating system. *Epic Games, Inc. v. Apple Inc*, ("*Apple*"), --F. Supp. 3d--, No. 4:20-cv-05640-YGR, 2021 WL 4128925, at *18 (N.D. Cal. Sept. 10, 2021). Following its launch of iPhone, Apple innovated the App Store—a transaction platform that connects app developers with users through simultaneous transactions, *id.* at *63, 83, and allows apps to run directly (*i.e.*, "natively") on iOS. *Id.* at *19. The App Store has thus "enhanced the experience for iOS devices and their [users]." *Id.* at *2. The App Store also prioritizes user privacy and security, which users value. *Id.*

Plaintiffs, however, target Apple for providing the App Store innovation, claiming that Apple should be liable for content offered by, and conduct of, third-party app developers merely because Apple provides a platform for access to such apps. Specifically, Plaintiffs contend that Apple is liable because third-party developers offer games on the App Store that allegedly permit illegal gambling. Such liability for the content and conduct of others would stifle innovation.

The Communications Decency Act ("CDA") broadly immunizes Apple from Plaintiffs' claims in their entirety. Under Section 230 of the CDA, any defendant who provides an "interactive computer service" is immune from liability for any claim by which a plaintiff seeks to treat it as a publisher or speaker of information provided by another. *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100-01 (9th Cir. 2009), as amended (Sept. 28, 2009). Each element of the *Barnes* test applies here. *First*, courts have repeatedly ruled that platforms like Apple's App Store qualify as an "interactive computer service." *Second*, in each of Plaintiffs' claims, Plaintiffs allege that Apple is liable because of the *third-party* content available through the App Store—that is, third-party Apps in which users can use virtual currency to allegedly play games of chance. And *third*, as Plaintiffs concede, the Apps at issue were *not* developed by Apple. While the Complaint is

/////

/////

/////

subject to dismissal for many reasons,[1] it is squarely subject to dismissal by virtue of Apple's Section 230 immunity on a standalone basis.

In the Legal Background section below, Apple explains that the purpose of Section 230 is to promote innovation and the development of the Internet by protecting platform providers from liability for third-party content available on their platforms. In Argument Sections I through III, Apple illustrates how each of the three *Barnes* test factors is satisfied, entitling Apple to immunity—particularly since Apple indisputably does not participate in the transaction alleged to be illegal in which users purportedly spend virtual currency to play games of chance. And in Section IV, Apple clarifies that the Court should dismiss without leave to amend because Plaintiffs can never plausibly allege that Apple engaged in an illegal gambling transaction. For

---

[1] Apple reserves the right to bring any subsequent motion under Rules, 8, 9 and 12, as permitted by the Court, *see* ECF No. 91, to raise the multitude of issues that plague the Complaint, including but not limited to: (1) Plaintiffs have not sustained an injury-in-fact, and have no standing to bring the action; (2) California's public policy prevents any California court from adjudicating gambling disputes; (3) the RICO claim is barred because the Ninth Circuit does not permit recovery of gambling losses under that statute and because the predicate acts alleged fail; (4) Plaintiffs have not alleged an underlying act unlawful under the Unfair Competition Laws of the states identified; (5) Plaintiffs have not alleged conduct which constitutes illegal gambling under the loss recovery statutes of the states identified, and the claims fail for additional statute-specific reasons; (6) unjust enrichment is not a valid, independent claim and Plaintiffs cannot plausibly allege that they do not have an adequate remedy at law; (7) Plaintiffs lack standing to pursue claims based on Apps they did not use; and (8) Plaintiffs have released the claims pleaded. Even if Plaintiffs could survive Rule 12 motions, Plaintiffs face significant hurdles at class certification because, among other reasons, no plaintiff "lost" anything in its transaction with Apple, by which plaintiff exchanged real money for virtual currency.

the reasons set forth more fully in these sections, Apple requests that the Court dismiss the Complaint, in its entirety and with prejudice, as barred by Section 230 of the CDA.

## **RELEVANT ALLEGATIONS**

Plaintiffs' claims center around certain apps made available through Apple's innovative App Store, an online platform where developers offer apps for downloading onto users' Apple devices. Plaintiffs' Master Complaint ("Compl.") at ¶ 50. Apps are software programs offered for download on Apple's App Store or other platforms. Compl. at ¶ 74.

The apps at issue here are so-called "social casino" apps (the "Simulated Casino Apps"). *Id.* at ¶ 78.[2] As characterized by Plaintiffs, the Simulated Casino Apps are designed to look like traditional casino games, such as slot machines, Bingo, or craps, but function differently. *Id.* at ¶ 2. While a traditional casino game offers players the chance to win or lose real money, the Simulated Casino Apps are for entertainment purposes, meaning that no real money is ever won or lost by virtue of game play. *Id.* at ¶¶ 3, 65-66. Instead of playing with real money, players use "virtual currency" within the Simulated Casino Apps. *Id.* Virtual currency is not real-world money. It consists of points, bonuses, credits, and/or chips and may be used only within the game. *Id.* at ¶ 65. Plaintiffs do *not* allege virtual currency is unique to the Simulated Casino Apps: thousands of games available on the App Store use some form of virtual currency. *See* Compl. ¶ 63 n.8 (citing developer guidelines regarding in-app currency applicable to all apps).

The Simulated Casino Apps are typically free to download. Compl. ¶ 2, n.2 ("the initial download of the game is free"); ¶ 60 ("players are typically given an initial allotment of virtual chips for free"); ¶ 62 (players can "wait for some period of time before receiving more free chips" for gameplay). Third-party developers monetize their development efforts through a mechanism called "in-app purchases," which are transactions between the user and the developer while the

---

[2] The Complaint is impermissibly vague in that it fails to identify with any specificity which simulated casino apps form the basis of their claims. This creates additional issues with respect to the viability of Plaintiffs' claims, including but not limited to whether Plaintiffs' claims must be arbitrated pursuant to certain third-party app developers' arbitration agreements.

1    user is functioning within an app. Compl. ¶ 2, n.2. Thus, Apple does not develop any of the
2    Simulated Casino Apps that are the subject of this litigation; it merely provides the App Store,
3    where it makes them available to the public. Compl. at ¶¶ 2, 6, 19, 50, 68, 80-83.

4         The Simulated Casino Apps generally allow a substantial initial period of free play. *Id.* at
5    ¶¶ 60, 62. Thereafter, players secure additional free play opportunities, often daily, if not more
6    frequently, by watching an advertisement, playing a bonus game, or simply by the passage of
7    time. *See id.* When a player runs out of these free play opportunities, she or he has three choices:
8    purchase virtual currency to allow additional play time through an in-app purchase; wait until
9    additional free play becomes available at no charge; or stop playing the game within the
10   Simulated Casino App. *Id.* at ¶ 62.

11        Plaintiffs apparently rely on Apple's developer program license agreement to allege in
12   Paragraph 63 of the Complaint that Apple is the "payment processor" for in-app virtual chip sales.
13   But the agreement cited states no such thing; it states instead that while Apple allows the
14   download of apps by end-users, the developers "are responsible for hosting and delivering content
15   or services sold by [the developer]." RJN, Ex. 1, § 3.1, p. 14. Indeed, after a 16-day bench trial,
16   Judge Gonzalez Rogers in this District concluded that Apple's in-app purchases ("IAP") system
17   "does not itself even *process payments*—that function is performed by a third-party settlement
18   provider like Chase Bank with which Apple contracts." *Apple Inc.*, 2021 WL 4128925, at *109
19   n.620 (emphasis in original). If a player elects to use real money to purchase virtual currency, it
20   does so through IAP. *Id.*; *cf.* Compl. at ¶ 63. Apple has no involvement in the second transaction:
21   the user's choice to spend virtual currency within the Simulated Casino Apps or otherwise.

22        Once purchased, players can decide to use virtual currency for game play or can give it
23   as gifts to other players or accounts—but players may not use it outside the app and may never
24   redeem it for real money. *Id.* at ¶ 65 (players can "give a 'gift' of virtual chips to another account
25   in the app").

26        Plaintiffs admit that Apple did not develop any of the Simulated Casino Apps at issue
27   here. *Id.* at ¶¶ 2, 6, 19, 50, 68, 80-83. Third-party developers created the Apps and their content.
28   *See, e.g.*, *id.* at ¶ 19 (distinguishing between "Platforms like Apple" and "developers like

DoubleDown"); ¶ 68 (identifying "[d]evelopers of social casino games, such as Scientific Games"); ¶¶ 80-83 (explaining process by which Apple reviews and publishes apps created by developers). Apple's role is limited to innovating and providing a marketplace on which developers can offer these apps for download. *Id.*

As part of its role operating a virtual marketplace, Apple promulgates guidelines that are made available and applicable to all app developers who wish to make their apps available through the App Store, including developers of the Simulated Casino Apps. Compl. at ¶¶ 82, 83, p. 15 n.16, 17; *see also* RJN, Exs. 2, 3. The Simulated Casino Apps are subject to, and must comply with, these guidelines. But the guidelines do not apply solely to the Simulated Casino Apps and are not app- or content-specific: they provide neutral guidance to all app developers, regardless of the type of app a developer may wish to publish in the App Store.  RJN, Exs. 2, 3. This is because the focus of these generally applicable guidelines is to "address issues of safety, privacy, performance, and reliability" of *all* apps made available through the App Store. *Apple*, 2021 WL 4128925, at *25.

## PLEADING STANDARD

In deciding Rule 12(b)(6) motions to dismiss, courts apply a "plausibility standard," which is guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *First*, only complaints that state a "plausible claim for relief" may survive a motion to dismiss. *Id.* at 679. *Second*, although the Court must accept a complaint's well-pleaded allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

The Court may disregard allegations that contradict judicially noticed facts or facts contained in documents referenced in the complaint. *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016-17 n.9 (9th Cir. 2012). Additionally, if the complaint cites documents but does not attach them, the "incorporation by reference" doctrine allows the court to look beyond the pleadings without converting the 12(b)(6) motion into a motion for summary judgment. *Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005).

Applying these principles, Section 230 of the CDA immunizes Apple from Plaintiffs'

1   claims as a matter of law and requires dismissal of the Complaint with prejudice.

2                          **SECTION 230 LEGAL BACKGROUND**

3       In 1996, Congress enacted Section 230 of the CDA to immunize providers and users of

4   "interactive computer services" who publish information provided by third parties. Section

5   230(c)(2) provides:

6           No provider or user of an interactive computer service shall be
            treated as the publisher or speaker of any information provided by
7           another information content provider.

8   47 U.S.C. § 230(c)(1). That is, "[n]o cause of action may be brought and no liability may be

9   imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3).

10  A critical purpose of Section 230 is to encourage Internet innovation by protecting platform

11  innovators from liability for third-party content on the platforms they provide. 47 U.S.C.

12  § 230(b)(1) ("It is the policy of the United States . . . to promote the continued development of

13  the Internet and other interactive computer services and other interactive media.").

14      The Ninth Circuit follows a three-part test for determining the application of CDA

15  immunity. In *Barnes*, the Ninth Circuit held that Section 230 immunity applies where (1) the

16  defendant is a provider or user of an interactive computer service; (2) the plaintiff seeks to treat

17  the defendant as a publisher or speaker of information; and (3) the information was provided by

18  another information content provider. 570 F.3d at 1100-01. The critical question in assessing the

19  scope of Section 230 immunity is "whether the cause of action inherently requires the court to

20  treat the defendant as the 'publisher' or 'speaker' of content provided by another." *Id*. This is so

21  regardless of whether the claim is based on state or federal causes of action. *Id*. at 1100 n.4 (noting

22  Section 230's "protection also extends to federal law causes of action"). As the Ninth Circuit

23  explained in *Carafano v. Metrosplash.com, Inc*., "so long as a third party willingly provides the

24  essential published content, *the interactive service provider receives full immunity*[.]" 339 F.3d

25  1119, 1124 (9th Cir. 2003) (emphasis added).

26      Courts favor application of Section 230 immunity to avoid the chilling effect on

27  innovation that lawsuits based on third-party content would otherwise have: "close cases, we

28  believe, must be resolved in favor of immunity, lest we cut the heart out of section 230 by forcing

websites to face death by ten thousand duck-bites, fighting off claims that they promoted or encouraged – or at least tacitly assented to – the illegality of third parties." *Fair Housing Council v. Roommates.com, LLC*, 521 F.3d 1157, 1174 (9th Cir. 2008) (finding immunity under Section 230 for Fair Housing Act and state law claims that were based on portion of website where website provider was "not responsible, in whole or in part, for the development of th[e] content" therein); *see also Coffee v. Google, LLC*, No. 20-cv-03901-BLF, 2021 WL 493387, at *5 (N.D. Cal. Feb. 10, 2021) (dismissing unfair competition, Consumer Legal Remedies Act, and unjust enrichment claims as barred by Section 230). Courts have acknowledged repeatedly that "the CDA must be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles[.]" *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1202 (N.D. Cal. 2009) (citing *Roommates.com*, 521 F.3d at 1174)).

Consistent with this goal, the Ninth Circuit and courts in this District have further defined the contours of Section 230's broad reach. For example, in assessing CDA immunity, "[t]he fact that a website elicits online content for profit is immaterial; the only relevant inquiry is whether the interactive service provider 'creates' or 'develops' that content." *Federal Agency of News LLC v. Facebook Inc.*, 432 F. Supp. 3d 1107, 1119 (N.D. Cal. 2020) (citing *Goddard v. Google*, No. C 08-2738, 2008 WL 5245490, at *3 (N.D. Cal. Dec. 17, 2008)). Moreover, providing third parties with "neutral tools" to create content does not render the provider a developer of the content or otherwise vitiate Section 230 immunity. "[E]ven if a service provider knows that the third parties are using such tools to create illegal content," that knowledge is *insufficient* to impose liability on a publisher of content created by another. *Goddard*, 640 F. Supp. 2d at 1197-98 (citing *Roommates.com*, 521 F.3d at 1169, n.24) (noting that where a plaintiff brings a claim "based on a website operator's passive acquiescence in the misconduct of its users," the website operator generally will be immune "even if the users committed their misconduct using tools of general availability provided by the website operator"). Applying these principles here, Apple demonstrates that it is entitled to full immunity.

## ARGUMENT

Plaintiffs seek to hold Apple liable for its role in publishing third-party content on the

App Store. But as shown below, Apple is immune from the liability that Plaintiffs allege because each prong of the *Barnes* test is met: (I) Apple provides an interactive computer service; (II) Plaintiffs seek to hold Apple liable as a *publisher*, not a creator, of content; and (III) the Simulated Casino Apps at issue were developed by third-party content providers. *Barnes*, 570 F.3d at 1100-01. The Complaint should thus be dismissed.

## I.      APPLE PROVIDES AN INTERACTIVE COMPUTER SERVICE.

Courts have repeatedly held that platform providers, such as Apple, qualify as providers of an "interactive computer service," satisfying the first prong of the *Barnes* test. Section 230 defines an "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). The App Store—a virtual marketplace where third-party developers, including the developers of the Simulated Casino Apps, can distribute their content to consumers—is clearly within the definition of an "interactive computer service." *See* Compl. ¶¶ 50, 55 (alleging Apple "owns and operates the Apple App Store" from which consumers can "access" and "download" the Simulated Casino Apps). Several courts have determined that platforms for accessing and downloading apps are interactive computer services for purposes of Section 230 immunity. *See, e.g.*, *Coffee*, 2021 WL 493387, at *5 (holding allegation that Google creates and maintains a virtual online store where it makes third-party software applications available to consumers satisfied first prong of *Barnes* test); *Free Kick Master LLC v. Apple Inc.*, 140 F. Supp. 3d 975, 980-81, 983 (N.D. Cal. 2015) (finding platform for locating and downloading "apps developed, written, and branded by third parties" was an interactive service provider and collecting cases); *Spy Phone Labs LLC. v. Google Inc.*, No. 15-cv-03756-KAW, 2016 WL 6025469, at *7 (N.D. Cal. Oct. 14, 2016) (same). Accordingly, the first prong of the *Barnes* test is clearly satisfied.

## II.     PLAINTIFFS' CLAIMS ARE BASED SOLELY ON APPLE'S IMMUNE ROLE IN *PUBLISHING* THIRD-PARTY APPS.

The CDA defines "publisher" as "the reproducer of a work intended for public consumption." *Barnes*, 570 F.3d at 1102 (quoting Webster's Third New International Dictionary

1837 (Philip Babcock Gove ed., 1986)). "Publication includes 'any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online.'" *Coffee*, 2021 WL 493387, at \*6 (quoting *Roommates.com*, 521 F.3d at 1170-71).

Courts find this element satisfied where a plaintiff alleges the harm or wrong is caused by, or stems from, the defendant's role as a publisher of third-party content. For example, in *Coffee*, Judge Freeman held that claims "grounded in video game apps intended for public consumption that Google chooses to place 'on the virtual shelves of its Google Play store'" were based on Google's role as a publisher, and thus barred by Section 230. 2021 WL 493387, at \*5.

Plaintiffs' allegations establish that Apple's involvement with the Simulated Casino Apps, and its alleged role in any wrongful conduct, is limited to that of a publisher, *i.e.*, making the Simulated Casino Apps available to consumers. Plaintiffs admit that "Platforms, like Defendant Apple, . . . make [others'] games available to players"; that the Simulated Casino Apps are "*only* available to play via third-party Platforms" such as the App Store; and that app developers need platforms such as Apple "to publish" the Simulated Casino Apps to consumers. Compl. ¶¶ 19, 74 (emphasis in original).

As set forth below, Plaintiffs' claims uniformly treat Apple as a publisher of third-party content—and *not* as a content creator or developer. Ninth Circuit authority establishes that Apple's provision of neutral tools to all app developers who wish to make their apps available on the App Store does not render Apple liable for content created by another—here, the developers of each Simulated Casino App.

### A.   Each Claim in the Complaint Seeks to Treat Apple as a Publisher.

That Plaintiffs seek to hold Apple liable solely as a publisher is evident from the nature of Plaintiffs' causes of action and prayer for relief:

- Plaintiffs' claims based on state unfair competition laws seek to hold Apple liable for "hosting and facilitating" the Simulated Casino Apps, which they allege constitute "illegal slot machines" under state law. *See e.g.*, *id.* at ¶¶ 151, 155. But Plaintiffs' "hosting and facilitating" allegations simply accuse Apple of offering a platform, including neutral tools, that allow third-party developers to accept payment for

purchases of their apps or for in-app purchases—i.e., nothing more than publishing.

- In each of Plaintiffs' unjust enrichment claims and loss recovery act claims based on state law, Plaintiffs contend that Apple profited from the sale of the Simulated Casino Apps. *See e.g.*, Compl. at ¶¶ 176, 183. Yet, Apple's retention of a commission is legally insufficient to make Apple a creator or developer of any app published through the App Store. *See Coffee v. Google*, No. 20-cv-03901-BLF, 2022 WL 94986, at *6 (N.D. Cal. Jan. 10, 2022); *Federal Agency of News, LLC*, 432 F. Supp. 3d at 1119. Thus, at bottom, these claims are Plaintiffs' improper attempt to hold Apple liable for providing a platform for the download of the Simulated Casino Apps.[3]

- Each of Plaintiffs' RICO claims seeks to hold Apple liable for collecting debts incurred from alleged gambling activity in violation of California's Penal Code prohibiting gambling. *See e.g.*, Compl. at ¶¶ 498, 518. These claims stem from the same factual predicate as the unfair competition, unjust enrichment, and loss recovery causes of action—publication of Simulated Casino Apps for profit. Section 230 applies with equal force to alleged violations of state and federal law where the allegedly wrongful conduct is publication, regardless of whether Apple profited from that publication, *see* § B(1), *infra*.

- Plaintiffs also seek an injunction requiring Apple to remove the Simulated Casino Apps from the App Store (*e.g.*, Compl. Prayer for Relief ¶ e)—which is exactly the kind of publishing role that Section 230 immunizes.

In short, Apple's role as a publisher of content developed by third parties that Plaintiffs contend is unlawful is the crux of every cause of action in the Complaint. Because Plaintiffs

---

[3] Plaintiffs allege that Apple "profited immensely by providing marketing guidance, tools, and other assistance to the developers of social casinos," but in no way allege that Apple provided different neutral tools to other developers—or that they somehow render Apple a "creator" or "developer" of the content. Compl. at ¶¶ 174, 202. The allegations are thus insufficient to circumvent Section 230 immunity. *See Barnes*, 570 F.3d at 1102.

allege Apple is liable as a publisher, rather than a developer, of the Simulated Casino Apps, Plaintiffs' Complaint, in its entirety, is barred by Section 230.

### B.      Plaintiffs' Attempt to Plead Around Section 230 Immunity Fails as a Matter of Law.

In attempting to plead around Section 230, Plaintiffs cite Apple's role regarding in-app purchases, its app and App Store review guidelines, and its purported marketing and promotion of the Simulated Casino Apps. Compl. ¶¶ 14, 15, 19, 63, 76, 80-83, 87, 90, 95, 97. But Apple's alleged role in processing and retaining a commission on in-app sales of virtual currency is legally insufficient to render Apple liable for the underlying third-party content that it publishes. Plaintiffs' reliance on Apple's guidelines relevant to the app and App Store review process amounts to nothing more than providing "neutral tools" available to *all* developers—which does not transform Apple from a mere publisher of the Simulated Casino Apps to a content creator or developer. And allegations of Apple's purported "marketing" of the Simulated Casino Apps similarly fail to avoid Apple's immunity under Ninth Circuit case law, in addition to failing to state a plausible claim for relief specific to Apple. Apple addresses below each erroneous attempt to circumvent application of Section 230.

### 1.      Alleged In-App Sales of Virtual Chips Do Not Destroy Section 230 Immunity.

The fact that Apple receives a commission from developers in connection with the sale of virtual chips for use in the Simulated Casino Apps, Compl. ¶¶ 5, 8, 14, 15, 63, 76, 95, "does not somehow transform [Apple] into a content developer." *Fyk v. Facebook*, 808 F. App'x 597, 598 (9th Cir. 2020); *see also Goddard*, 2008 WL 5245490, at *4 (finding publisher immune despite allegation that platform accepted "tainted funds from fraudulent mobile content providers"). In *Fyk*, the Ninth Circuit rejected such an argument and affirmed the district court's order dismissing the plaintiff's state law claims with prejudice as barred by Section 230. Other courts' decisions are in accord, and for good reason: there is no "for-profit exception to § 230's broad grant of immunity." *Federal Agency of News LLC*, 432 F. Supp. 3d at 1119 (cleaned up).

In *Evans*, for example, a court in this District rejected what it characterized as "schemes"

to plead around Section 230 like those in the Complaint here. 2013 WL 5594717, at *1, *4. The *Evans* plaintiff alleged that defendant "maintained primary control … over revenues from the sale of the app," and received a commission from those sales of the app. *Id.* at *1. The *Evans* court concluded the allegations showed that the defendants "were working 'together' with the content developer to sell apps in a loose sense, but defendants were not jointly engaged in development of the *content*," and therefore the defendant could not be liable under Section 230. *Id.* at 4 (emphasis in original); *see also La Park La Brea A LLC v. Airbnb, Inc.*, 285 F. Supp. 3d 1097, 1104 (C.D. Cal. 2017) (holding that "collecting payments and commissions … does not make Airbnb an information content provider").

The same conclusion follows here since Apple neither creates nor develops the online content from which it allegedly profits. *Federal Agency of News LLC*, 432 F. Supp. 3d at 1119; *Coffee*, 2022 WL 94986, at *6 ("Plaintiffs' claims are barred to the extent based on Google's revenue sharing with respect to sales of virtual currency.").

### 2. Apple's Guidelines for All App Developers Are Neutral Tools That Do Not Destroy Section 230 Immunity.

Plaintiffs' allegations regarding Apple's app and App Store review guidelines for app developers and its review of apps prior to making them accessible to the public through the App Store, *see* Compl. ¶¶ 80, 82, 87, 89, 90, do not constitute "development" as required to transform Apple from a publisher of the Apps to a co-creator or co-developer. *First*, several courts have held that such allegations amount to nothing more than protected publisher activities. For example, the Court in *Opperman v. Path, Inc.* rejected reliance on allegations about Apple's review guidelines as a basis for imposing liability:

> Apple's role as an app publisher, including its promulgation of review guidelines, its review of all apps submitted to the App Store, and its enforcement of its guidelines, is fundamental "publisher" activity protected by the CDA. Plaintiffs' allegations that Apple has failed to remove offending apps from the App Store, and that it encourages consumers to download third-party apps and advertises third-party apps in order to sell its devices are similarly subject to the CDA's protections.

87 F. Supp. 3d 1018, 1044 n.12 (N.D. Cal. 2014) (cleaned up).[4]

Similarly, the *Evans* Court held that defendant was a publisher under Section 230 despite allegations tied to the defendant's purported control over the app at issue, including mandated app naming guidelines and required technical and content criteria. 2013 WL 5594717, at *4. The Court rejected each alleged example of how the defendant exerted control over the app at issue and held the defendant was entitled to Section 230 immunity because the "third party still provided the published content and defendant only provided the editorial parameters." *Id.*

Likewise, the court in *Spy Phone Labs* held that a platform provider is a publisher for Section 230 purposes even where it provided source code to developers to allow their apps to work on the platform's operating system because the source code did "not 'materially contribute' to the actions complained of in this suit[.]" 2016 WL 6025469, at *7. As a result, the court "conclude[d] that Google was acting as an interactive computer service [provider], not an information content provider." *Id.*[5]

*Second*, Apple's App Store review guidelines simply implement the "guiding principle of the App Store[:] . . . to provide a safe experience for users to get apps and an opportunity for developers to be successful." RJN, Ex. 3 at p.1. That is, they are about Apple's role solely as a publisher, and provide nothing more than Apple's "editorial parameters" for publication of third-party content. *See Evans*, 2013 WL 5594717, at *4. As discussed above, at least one court in this

---

[4] The court in *Opperman* ultimately did not conclude Apple was entitled to Section 230 immunity. However, the Court's holding was based on the plaintiffs' allegations that the content Apple created encouraged the specific complained of practices—incorporation of forbidden data harvesting functionalities. 87 F. Supp. 3d at 1044. By contrast, here, Plaintiffs cannot plausibly allege that Apple's developer guidelines encourage illegal gambling, or in any way contribute to the challenged content of the Apps.

[5] The district court did not apply Section 230 immunity because plaintiff's claims did not assert liability for third-party content. *Id.*

District has already held Apple's app review—as detailed in its guidelines—to be "fundamental publisher activity." *Opperman*, 87 F. Supp. 3d at 1044 n.12.

*Third*, Apple's generally applicable guidelines and app promotion and marketing information is available to all app developers—not just to the developers of the Simulated Casino Apps. Compl. at ¶¶ 82-83, ¶¶ 87, n.19, 88, n.20; *see also* RJN, Ex. 4, 5. Those guidelines and promotional information do not contribute to the alleged illegality of the Apps. Plaintiffs even quote in the Complaint a portion of Apple's guidelines stating that developers—not Apple—are responsible for ensuring that the content of their apps complies with the developers' legal obligations: "Gaming, gambling, and lotteries can be tricky to manage and tend to be one of the most regulated offerings on the App Store. Only include this functionality if you've fully vetted your legal obligations everywhere you make your app available . . . .")." Compl. ¶ 83; RJN Ex. 3, § 5.3, p. 24.[6]

*Finally*, Apple's guidelines are also easily distinguished from the conduct alleged in *Roommates.com*, where the defendant *required* users to engage in the discriminatory and illegal conduct at issue by using its website. 521 F.3d at 1166. No such facts are alleged here, and Plaintiffs cannot amend to plausibly include such allegations. Apple does not require developers to simulate gambling—or any other allegedly illegal conduct—to access the App Store, and requirements for apps to appear in the App Store are neutral and unrelated to the content of an app. RJN, Exs. 2, 3; Compl. ¶¶ 82-83. By merely providing a "framework" for all apps to appear in the App Store, Apple does not become an information content provider. *Airbnb, Inc.*, 285 F.

---

[6] Plaintiffs do not allege the Simulated Casino Apps violate Apple's developer guidelines, nor would such an allegation preclude immunity. *See Ginsberg v. Google Inc.*, No. 21-cv-00570-BLF, 2022 WL 504166 at *5 (N.D. Cal. Feb. 18, 2022) (holding that seeking to impose liability for failing to remove offending content from the Play store in violation of provider's developer guidelines "necessarily involves treating the liable party as a publisher of the content it failed to remove" (citing *Barnes*, 570 F. 3d at 1103)).

Supp. 3d at 1105 (concluding that Airbnb was not an information content provider because the "critical information was provided by a third party, and there is no indication that it was significantly developed or transformed by Airbnb"). This is consistent with the CDA's goal "to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services" and "to maximize user control over what information is received" through the internet. 47 U.S.C. §§ 230(b)(2), (3).

### 3. Apple's Alleged Marketing and Promotion of Third-Party Apps Do Not Destroy Section 230 Immunity.

Plaintiffs' allegations regarding Apple's purported marketing and promotion of the Apps through the App Store also do not establish a basis for liability against Apple for at least three reasons. *First*, Plaintiffs' allegations of marketing and promotion are vague, conclusory, not specific to Apple or the App Store, and not specific to the Apps. The bulk of the marketing allegations identify conduct by platforms *other than Apple's*, s*ee, e.g.*, Compl. ¶ 75, and the allegations applicable to Apple merely identify marketing and promotional efforts applicable to *all apps* available on the App Store. *Id.* ¶¶ 88, 91, 94; *see also* RJN, Exs. 4, 5.

*Second*, courts consistently have rejected the argument that marketing and promotion of third-party content is not protected by Section 230. *See Roommates.com*, 521 F.3d at 1174 (forcing websites to fight claims that they promoted or encouraged the illegality of third parties would "cut the heart out of section 230"); *Gonzalez v. Google, Inc.*, 282 F. Supp. 3d 1150, 1168 (N.D. Cal. 2017) (theory that interactive computer service provider "act[ed] as an 'information content provider' by placing targeted ads … finds no support in the case law").

*Third*, Plaintiffs do not allege they saw or relied upon alleged advertisements relating to the Apps, or that such advertisements caused them to download the Apps. Compl., *passim*.

The Ninth Circuit addressed marketing and promotion allegations in *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1270 (9th Cir. 2016). There, the Ninth Circuit rejected the contention that Yelp's republication of an allegedly defamatory review by posting advertisements and promotional links to the review transformed Yelp from a publisher to a content provider. *Id.* at 1270. The Court explained, "[j]ust as Yelp is immune from liability under the CDA for posting user-generated

1  content on its own website, Yelp *is not liable for disseminating the same content in essentially*

2  *the same format* to a search engine, as this action does not change the origin of the third-party

3  content." *Id.* (emphasis added); *see also id.* at 1271 ("Simply put, proliferation and dissemination

4  of content does not equal creation or development of content.").

5       Even if Plaintiffs could make Apple-specific marketing and promotion allegations,

6  Plaintiffs do not—and cannot—plausibly allege that Apple disseminated the Simulated Casino

7  Apps with different content or in a different format than what the developers provided to Apple

8  for publishing, as required to salvage their claims from Section 230 immunity.

9
   **C.    The *Taylor* District Court Decision Does Not Expand Apple's Role Beyond**
10      **Publishing the Third-party Apps.**

11      The Court may wish to evaluate two recent decisions in this District concerning

12  application of Section 230 to platforms providing certain third-party gaming apps that allegedly

13  contain an element of purported gambling known as a loot box. *See, e.g.*, *Coffee*, 2021 WL

14  493387, at *6; *Taylor v. Apple, Inc.*, No. 20-cv-03906-RS, 2022 WL 35601, at *1 (N.D. Cal.

15  Jan. 4, 2022). A loot box is an object purchased by a player with virtual currency where the player

16  does not know what the loot box contains until it is opened. *Coffee*, 2021 WL 493387, at *1;

17  *Taylor*, 2022 WL 35601, at *1.

18      As noted above, Judge Freeman held in *Coffee* that the conduct alleged, selling virtual

19  currency that can be used to play allegedly illegal online games, "amounts to [the platform

20  provider's] publication of third-party apps in [its] Store and provision of neutral tools and services

21  to all developers across the . . . platform. This alleged conduct falls squarely within the protection

22  of § 230 and therefore Plaintiffs' claims are barred to the extent based on [the platform provider's]

23  revenue sharing with respect to sales of virtual currency." *Coffee*, 2022 WL 94986, at *6. The

24  court noted that its "conclusion would be the same whether or not loot boxes constitute illegal

25  slot machines, as 'even if a service provider *knows* that third parties are using such tools to create

26  illegal content, *the service's provider's failure to intervene is immunized.*'"  *Id.* at *8 (quoting

27  /////

28  /////

APPLE INC.'S MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
CASE NO. 5:21-MD-02985

1  *Goddard v. Google*, No. C 08-2738 JF (PVT), 2008 WL 5245490, at *3 (N.D. Cal. Dec. 17, 2008)

2  (emphasis added). Judge Seeborg took a different view in *Taylor*.[7]

3      In *Taylor*, the district court initially held that Section 230 did not bar plaintiffs' claims

4  against Apple, which sought "to hold Apple liable for selling allegedly illegal gaming devices,

5  not for publishing or speaking information." No. 20-cv-03906-RS, ECF. No. 46 at p.7 (N.D. Cal.

6  Mar. 19, 2021). But after granting Apple's motion to dismiss on other grounds with leave to

7  amend, Judge Seeborg granted a second motion dismiss with prejudice—opining that Apple's

8  Section 230 ground for dismissal asserted against the amended complaint was thus moot. *See*

9  *Taylor v. Apple, Inc*., No. 20-CV-03906-RS, 2022 WL 35601, at *3 (N.D. Cal. Jan. 4, 2022).

10      *Taylor* does not vitiate Apple's Section 230 immunity here for four reasons. *First*, Judge

11  Seeborg noted that Section 230 may preclude liability where, as here, it is based on "listing for

12  sale games that arguably meet the definition of slot machines." *Taylor*, ECF No. 46 at p.7. *Second*,

13  *Taylor* is a district court decision that is not binding on this Court, and the court's discussion of

14  Section 230 is mere dicta since it is not part of the ultimate holding dismissing the complaint with

15  prejudice. *See Hart v. Massanari*, 266 F.3d 1155, 1174 (9th Cir. 2001); *U.S. v. Armijo*, 5 F.3d

16  1229, 1233 (9th Cir. 1993) (statements that constitute dicta are not binding). *Third*, as detailed

17  above, Apple merely makes the third-party Apps at issue here available to users on the App Store;

18  it does not participate in the allegedly illegal act of spending virtual currency to play games in

19  the Apps. *Fourth*, in any event, Apple respectfully disagrees with the *Taylor* court's refusal to

20  apply Section 230 immunity in granting Apple's first motion to dismiss and believes that it was

21  wrongly decided. Apple has conditionally cross-appealed that issue to the Ninth Circuit. *See* No.

22  ───────────────────

[7] Despite their different perspectives regarding Section 230 application, both judges dismissed

23  the complaints on grounds that included their similar view that by buying virtual currency—

24

25  whether on Apple's App Store or the Google Play store—plaintiffs "received exactly what they

26  paid for" and thus lacked standing to pursue the alleged loss of money or property under their

27  claims for relief. *Coffee v. Google, LLC*, 2022 WL 94986, at *10. *Compare Taylor*, 2022 WL

28  35601, at *2 & n.1; s*ee also* n.9, *infra*.

3:20-cv-03906-RS, ECF No. 79 (Feb. 16, 2022). The Court should thus instead consider the persuasive logic and holding of *Coffee.*

### III.   THE APPS AT ISSUE WERE UNDISPUTEDLY DEVELOPED BY THIRD-PARTY DEVELOPERS, *NOT* APPLE.

As Plaintiffs' own allegations admit, the Apps at issue were developed by third parties, not Apple—thus satisfying the third prong of the *Barnes* test. This third prong asks whether the information at issue was provided by the defendant or a third-party "information content provider." The Ninth Circuit has given "information content provider" a "relatively restrictive definition." *Carafano*, 339 F.3d at 1123. This approach is consistent with Section 230's grant of broad immunity to platforms, like Apple, that have no role in *creating* third-party content displayed on their websites. *Id.* at 1122-23; *see also* 47 U.S.C. §§ 230(b)(1), (c)(1). Plaintiffs do not allege Apple develops or developed any of the Simulated Casino Apps, nor could they. *See, e.g.*, Compl. ¶¶ 68-70 (identifying a developer as responsible for the app coding alleged to be unfair); ¶ 19 (alleging that "to *publish*" the Simulated Casino Apps, platforms like Apple "need developers") (emphasis added).[8] Accordingly, Apple satisfies the third prong of the *Barnes* test.

### IV.   THE COURT SHOULD DISMISS THE COMPLAINT WITH PREJUDICE.

Plaintiffs' unsuccessful attempts to plead around Section 230 only highlight that their claims are barred by a "question of law that amendment cannot cure," thus warranting dismissal with prejudice. *Foreman v. Bank of Am., N.A.*, 401 F. Supp. 3d 914, 924 (N.D. Cal. 2019). Because Apple plays no role in the acts Plaintiffs allege constitute gambling, Plaintiffs can never plausibly allege—as they must to defeat Section 230 immunity—that Apple did anything more than make the Simulated Casino Apps available through the App Store in its immune role as a

---

[8] Indeed, some of Plaintiffs' own counsel here have sued social casino app developers alleging *they* are responsible for the content of their apps, including some of the Simulated Casino Apps at issue here. *See, e.g.*, *Ferrando, et al. v. Zynga, Inc.*, No. 2:22-cv-99214, ECF No. 1 ¶ 3 (W.D. Wash. Feb. 24, 2022) (Zynga "is the proprietor for whose benefit the online gambling games are played because it owns the online gambling games and operates those games for its own profit").

1    publisher of the third-party created content.

2        While Plaintiffs currently allege (inaccurately) that Apple processes payment for the in-

3 app transaction through which Plaintiffs obtain virtual currency—a transaction in which Apple

4 receives the same commission it receives on all third-party app transactions, Compl. at ¶¶ 63-

5 64—Plaintiffs do not even attempt to allege that Apple has any role in the subsequent transactions

6 in which Plaintiffs spend the virtual currency to play a game of chance.[9] Moreover, as shown

7 above, there are no allegations, and there exists no binding authority, to suggest that merely

8 facilitating the sale of virtual currency constitutes illegal gambling and is unprotected by Section

9 230. Notably, the cases on which Plaintiffs rely involve liability of an app developer—not a

10 platform that had no involvement in developing the content of the apps at issue. *E.g.*, Compl. ¶ 13

11 (citing *Kater v. Churchill Downs Inc.*, 886 F.3d 784, 785 (9th Cir. 2018)).

12        As in *Coffee*, the fact that Apple is not involved in the allegedly illegal transaction—the

13 spending of virtual currency in a game of chance—is further evidence that Apple is merely a

14 publisher of content provided by another. And it is the *content* of the Apps—not Apple's role in

15 processing the sale of virtual currency—that is alleged to be illegal. *See Coffee*, 2021 WL 493387,

16 at *6. Plaintiffs' claims thus amount to nothing more than an improper attempt to hold Apple

17 liable for publishing the apps of another.

18        Because Plaintiffs cannot plead around Section 230, leave to amend would be futile. *See,*

19 *e.g.*, *Sikhs for Justice, Inc. v. Facebook, Inc.*, 697 F. App'x 526 (9th Cir. 2017) (affirming

20 dismissal with prejudice of claim barred by the CDA because leave to amend would have been

21

22 ――――――――――――
[9] For this same reason, Plaintiffs also lack standing to pursue their claims; therefore, amendment

23 would be futile. *See Coffee*, 2022 WL 94986, at *9 (granting motion to dismiss for lack of

24 standing based on no "plausible claim that Plaintiffs lost money or property as a result

25 of Google's conduct"); *Taylor*, 2022 WL 35601, at *2 (finding plaintiff lacked standing because

26 all he "purchased from Apple was virtual currency. He obtained exactly what he paid for—virtual

27 currency that he was free to use as he wished in the game.").

28

futile); *see also PC Drivers Headquarters, LP v. Malwarebytes Inc.*, 371 F. Supp. 3d 652, 668 (N.D. Cal. 2019) (denying leave to amend where proposed claim fell "within the CDA's generous coverage of immunity"); *King v. Facebook, Inc.*, --F. Supp. 3d--, 2021 WL 5279823, at *13 (N.D. Cal. Nov. 12, 2021) ("Because there is CDA immunity, it would be futile for [the plaintiff] to try to amend the claim.").  Accordingly, leave to amend should be denied.

### CONCLUSION

Apple's App Store—and the availability of a wide range of innovative games and programs on it—furthers Section 230's purpose of promoting innovation and development on the Internet. Requiring Apple to screen for and remove apps provided by third parties that Plaintiffs contend are illegal under state law would stifle innovation, defying Section 230's purpose—and its clear grant of immunity to Apple as an interactive computer services provider of the App Store for third-party-created content. Apple thus requests that the Court reject Plaintiffs' attempt to require Apple to do so by dismissing the Complaint in its entirety with prejudice.

Dated:  April 8, 2022                                   Respectfully submitted,

**DLA PIPER LLP (US)**

By:   */s/ John Samuel Gibson*
        John Samuel Gibson

*Attorneys for Defendant Apple Inc.*