JOHN SAMUEL GIBSON (Bar No. 140647)
john.gibson@us.dlapiper.com
**DLA PIPER LLP (US)**
2000 Avenue of the Stars, Suite 400 North Tower
Los Angeles, CA 90067-4704
Tel:   310.595.3039
Fax:   310.595.3339

BROOKE KILLIAN KIM (Bar No. 239298)
brooke.kim@us.dlapiper.com
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
Tel:   619.699.3439
Fax:   619.764.6739

*Attorneys for Defendant Apple Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE**

| | |
|---|---|
| IN RE: APPLE INC. APP STORE SIMULATED CASINO-STYLE GAMES LITIGATION | Case No. 5:21-md-02985-EJD<br><br>**APPLE INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS BASED ON IMMUNITY PURSUANT TO SECTION 230 OF THE COMMUNICATIONS DECENCY ACT**<br><br>Date:   August 4, 2022<br>Time:   9:00 a.m.<br>Judge:  Hon. Edward J. Davila<br>Room:   Courtroom 4—5th Floor |

# **TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 2

    I.    THE SALE OF VIRTUAL CURRENCY IS NOT TANTAMOUNT TO "BOOKING AN ILLEGAL GAMBLING TRANSACTION." ............................. 3

        A.    HomeAway.com Is Inapposite. ................................................................. 3

        B.    Section 230 Immunizes Apple Regardless of Whether It Was "Substantially Certain" That a Subsequent Illegal Transaction Would Take Place. ................................................................................................ 5

    II.    PLAINTIFFS DO NOT PLAUSIBLY ALLEGE THAT APPLE PARTICIPATES IN AN UNFAIR BUSINESS PRACTICE. .............................. 8

    III.    THE PRESENCE OF NEUTRAL TOOLS DOES NOT DESTROY APPLE'S IMMUNITY. ................................................................................................. 9

    IV.    LEAVE TO AMEND WOULD BE FUTILE. ..................................................... 10

CONCLUSION ........................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Broam v. Bogan*,
  320 F.3d 1023 (9th Cir. 2003) .............................................................................................. 6

*Carafano v. Metrosplash.com, Inc.*,
  339 F.3d 1119 (9th Cir. 2003) .............................................................................................. 6

*Coffee v. Google, LLC*,
  No. 20-cv-03901-BLF, 2021 WL 493387 (N.D. Cal. Feb. 10, 2021) ................................... 6

*Coffee v. Google, LLC*,
  No. 20-cv-03901-BLF, 2022 WL 94986 (N.D. Cal. Jan. 10, 2022) ................................. 3, 7

*Doe v. Internet Brands, Inc.*,
  824 F.3d 846 (9th Cir. 2016) ............................................................................................ 5, 9

*HomeAway.com, Inc. v. City of Santa Monica*,
  918 F.3d 676 (9th Cir. 2019) ......................................................................................... passim

*Kimzey v. Yelp! Inc.*,
  836 F.3d 1263 (9th Cir. 2016) .......................................................................................... 1, 9

*Lemmon v. Snap*,
  995 F.3d 1085 (9th Cir. 2021) .......................................................................................... 5, 9

*McQuinn v. Bank of Am., N.A.*,
  656 F. App'x 848 (9th Cir. 2016) ....................................................................................... 10

*Nunes v. Twitter, Inc.*,
  194 F. Supp. 3d 959 (N.D. Cal. 2016) .............................................................................. 5, 9

*W. Select Secs., Inc. v. San Francisco City and Cnty. Employees' Ret. Sys*,
  13 F. App'x 679 (9th Cir. 2001) ......................................................................................... 10

**OTHER AUTHORITIES**

Rule 12(b)(6) ............................................................................................................................. 6

# INTRODUCTION

Plaintiffs' case rests entirely on whether Apple has satisfied the second element of the *Barnes* test for Section 230 immunity: *i.e.*, whether Plaintiffs' claims seek to treat Apple as a publisher of the third-party Apps alleged to be illegal gambling. Try as they might, Plaintiffs cannot plausibly allege that Apple lacks immunity for the virtual currency-purchase transaction involving Apple. Instead, Plaintiffs argue that liability arises because virtual currency is "substantially certain" to be used for gambling. However, requiring Apple to monitor whether virtual currency is "substantially certain" to be used for gambling, entirely within a third-party app, demonstrates that Plaintiffs' claims seek to hold Apple liable for publishing activities.

Without basis, Plaintiffs analogize Apple's role in the currency-purchase transaction to that of a "bookie" for a subsequent transaction in which Plaintiffs allegedly used the currency to play a game of chance in a third-party developer's App. As purported support, Plaintiffs rely on their oft-repeated refrain that virtual currency is "substantially certain" to be used for gambling. But nowhere in their 84-page complaint or their 30-page opposition do Plaintiffs offer support for a legal principle that Section 230 immunity is vitiated where a platform is or should be "substantially certain" that third-party content may be illegal. To the contrary, Section 230 provides immunity specifically to protect platforms—even platforms that are allegedly substantially certain illegal conduct may be occurring—so that they are not required to monitor all third-party content. Thus, Plaintiffs' three opposition arguments that Apple acted other than as a publisher are without merit, as explained herein.

*First*, in Argument Section I, Apple responds to Plaintiffs' misapplication of the Ninth Circuit's decision in *HomeAway.com*, which holds that courts do *not* require platforms to monitor illegal transactions if doing so would impose a duty to monitor third-party content. 918 F.3d 676, 682 (9th Cir. 2019). *Second*, as shown in Section II, Plaintiffs' theory that Apple should lose immunity if it advertises or promotes the Apps on its App Store is legally indefensible as it would "cut the heart out of Section 230." The Ninth Circuit held in *Yelp!*—a case Plaintiffs' failed to address—that a platform's immunity encompasses advertising and promoting third-party content. And *third*, in Section III, Apple addresses Plaintiffs' mischaracterization of its neutral-tools

argument. Apple does not argue that its provision of neutral tools to third-party developers provides Section 230 immunity, but merely that such acts do *not destroy* such immunity.

The question before the Court is narrow: Can Apple lose its status as an immune publisher of allegedly illegal third-party content by engaging in an online transaction that is not itself illegal? Under Ninth Circuit authority, the answer is "no." The complaint should be dismissed with prejudice, as shown in Section IV.

## **ARGUMENT**

In moving to dismiss, Apple established why the three-part *Barnes* test for Section 230 immunity is met here. In response, Plaintiffs challenge only the second element of that test, *i.e.*, whether the complaint requires the Court to treat Apple as a publisher. Opp'n. at 15, n.9. Plaintiffs focus nearly exclusively on a single argument: that Apple books virtual currency transactions for a fee knowing it is "substantially certain" that Plaintiffs will use that virtual currency to gamble illegally.

But Plaintiffs' complaint undeniably treats Apple as a publisher. It alleges that Apple is liable for publishing the Apps and engaging in other traditional functions of a publisher, such as categorizing, promoting, and facilitating payment for the Apps. Apple, however, allows third party Simulated Casino App developers to publish their content in the same manner that it allows the developers of apps like Candy Crush, Minecraft, and Pokémon Go! to publish their apps. To be clear: Plaintiffs have never alleged that Apple engages in any different conduct with respect to the Apps at issue here than with any of these other popular apps. They seek to hold Apple liable only because they contend the *content* of third-party Apps violates state and federal law.

Apple has demonstrated how each claim in the complaint aims to treat Apple as a publisher of third-party content. Mot. at 9-10. In response, Plaintiffs advance three arguments: that (1) Apple is engaged in "booking illegal gambling transactions," (2) Apple directly participates in an unfair business practice; and (3) neutral tools do not immunize Apple's purported direct involvement in illegal gambling. *See* Opp'n. 7-8, 10, 16, 25, 27.

Plaintiffs fail to address the significance of the two transactions at issue: *first*, the player's decision to purchase virtual currency through Apple's IAP, and *second*, the player's decision to

allegedly gamble by using the virtual currency to extend playing time within the App. The fact that Apple has no role in the second transaction, beyond the fact that it published the App in the first place, is fatal to Plaintiffs' complaint.[1] *See Coffee v. Google, LLC*, No. 20-cv-03901-BLF, 2022 WL 94986, at *6 (N.D. Cal. Jan. 10, 2022) (rejecting application of *HomeAway.com* because the plaintiffs "seek to impose liability if Google processes *lawful* transactions for virtual currency where such currency could be used to buy Loot Boxes in third-party apps downloaded from the Play Store.") (emphasis in original). Plaintiffs' attempt to connect Apple to the second transaction by imposing upon Apple a "duty to monitor third-party content" to determine if it is substantially certain to lead to illegal gambling treats Apple as a publisher under the very precedent Plaintiffs cite. *See HomeAway.com*, 918 F.3d at 682.

## I. THE SALE OF VIRTUAL CURRENCY IS *NOT* TANTAMOUNT TO "BOOKING AN ILLEGAL GAMBLING TRANSACTION."

Plaintiffs' primary theory of liability rests on the misplaced assumption that Apple "books" illegal gambling transactions. Relying on *HomeAway.com*, Plaintiffs contend that Section 230 does not apply because Plaintiffs seek to hold Apple liable for *its own* conduct in purportedly facilitating an illegal gambling transaction. Opp'n. at 10. Plaintiffs ignore the reality of the two separate transactions at issue in this case, which distinguishes *HomeAway.com*.

### A. *HomeAway.com* Is Inapposite.

*HomeAway.com*—the linchpin of Plaintiffs' opposition—is inapposite because Plaintiffs do not, and cannot, plausibly allege that Apple engaged in an illegal gambling transaction. Plaintiffs' ridiculous bookie analogy rests on a misapplication of *HomeAway.com*. While that opinion refers to "booking unlawful transactions," it never references gambling or the type of "bookmaking" to which Plaintiffs refer. Defendant is no more of a "bookie" than a financial institution that loans an individual money, who then uses that money to gamble.

*HomeAway.com, Inc. v. City of Santa Monica* holds that a municipality does not run afoul

---

[1] Apple contends that Plaintiffs have not plausibly alleged any conduct that constitutes illegal gambling. The issue of whether the Apps are illegal under state law is not before the Court in this motion. Apple will raise that issue should the case survive Apple's pending motion.

of Section 230 immunity by prohibiting a platform from *direct engagement* in the transaction alleged to be illegal. 918 F.3d at 682. There, the City of Santa Monica enacted an ordinance prohibiting online vacation rental platforms from processing a lease of an unlicensed rental property. *Id.* at 680. After noting that the ordinance in question did not "require the Plaintiffs to monitor third-party content," the Ninth Circuit held that the ordinance did not violate Section 230 because "the only monitoring that appears necessary in order to comply with the Ordinance relates to incoming requests to complete a booking transaction—content that, while *resulting from* the third-party listings, is distinct, internal, and nonpublic." *Id.* at 682 (emphasis in original). "We look … to what the duty at issue actually requires: specifically, whether the duty would necessarily require an internet company to monitor third-party content." *Id.*

In *HomeAway.com*, the platform could determine whether it was booking a prohibited transaction by assessing the nature of the "incoming request," as opposed to monitoring the contents of the third-party App. The same is not true here. Apple would be required to monitor not just the incoming request to purchase virtual currency, but what the user does with the virtual currency on the third-party App once the currency is purchased—*i.e.*, whether it is used for activities that might constitute gambling under local laws. And while Plaintiffs suggest that Apple could avoid monitoring third party content by simply treating all "casino" Apps the same, Plaintiffs overlook the fact that the designation of what is and is not a "casino" (unlike the determination of what is an "unlicensed" property) necessarily requires monitoring of the third-party App. Without a doubt, Plaintiffs are seeking to hold Apple responsible for failing to monitor third-party content—*i.e.*, what Plaintiffs do with the virtual currency on the third-party Apps.

Plaintiffs also rely on four similar cases which provide no support. Opp'n. at 12-13 (citing *Airbnb, Inc. v. City & Cty. of San Francisco*, 217 F. Supp. 3d 1066, 1069 (N.D. Cal. 2016); *Airbnb, Inc. v. City of Boston*, 386 F. Supp. 3d 113, 122 (D. Mass. 2019); *Turo Inc. v. City of Los Angeles*, No. 2:18-cv-06055-CAS-GJSX, 2020 WL 3422262, at *7 (C.D. Cal. June 19, 2020), *rev'd on other grounds*, 847 F. App'x 442 (9th Cir. 2021); *Massachusetts Port Auth. v. Turo Inc.*, 166 N.E.3d 972, 977, 979 (2021)). Like *HomeAway.com*, each involves a municipal ordinance that prohibited an online platform from directly engaging in an illegal home or car rental

transaction. None relate to the situation presented here, where the plaintiff is seeking to circumvent Section 230 immunity by holding Apple liable for a transaction in which it was not involved.

None of Plaintiff's other cases support the conclusion that Plaintiffs have alleged Apple "books" illegal transactions or breached a duty under state or federal law.

- In *Lemmon v. Snap*, for example, parents of a child killed while driving and using a Snapchat feature sued Snap, the developer of Snapchat. 995 F.3d 1085, 1092 (9th Cir. 2021). The Ninth Circuit held that Section 230 did not bar claims based on Snap's negligent design of an app feature because the basis of the parents' suit was the design of the defendant's app, not the content created by their son. No third-party content was at issue, and the act alleged to be illegal was Snap's.

- *State Farm Fire and Casualty Company v. Amazon.com, Inc*. is similarly distinguishable because the plaintiff there was "seeking to hold Amazon liable for putting a defective product into the stream of commerce" under a strict products liability theory. 390 F. Supp. 3d 964, 973-74 (W.D. Wis. 2019). Again, the illegal act was purportedly Amazon's.

- In *Doe v. Internet Brands, Inc.* the Ninth Circuit held the plaintiff's claim was based on a duty to warn under California law that did not require the platform to monitor or remove user content. 824 F.3d 846, 851 (9th Cir. 2016) ("Jane Doe attempts to hold Internet Brands liable for failing to warn her about information it obtained from an outside source about how third parties targeted and lured victims through Model Mayhem."). The illegal conduct was that of the defendant, not the third-party.

- In *Nunes v. Twitter, Inc*., the district court held that Twitter's liability did not depend on whether "the content of the unwanted tweets is bad or good, harmful or harmless. Either way, the unwanted tweet is a nuisance" that was actionable under Telephone Consumer Protection Act and did not stem from Twitter's role as publisher. 194 F. Supp. 3d 959, 968 (N.D. Cal. 2016) ("Nunes' claim against Twitter under the TCPA does not depend on the content of any tweet, or on any assertion that Twitter is required to sift through content to make sure the content is not bad.").

Like *HomeAway.com*, these four cases stand for the proposition that a platform is liable for its own illegal conduct. But here, Apple's own conduct—facilitating in-app purchases—is not illegal. Indeed, if it were, potentially millions of apps would be in jeopardy. Because Plaintiffs cannot truthfully allege that Apple directly participated in an illegal gambling transaction, they cannot avoid Section 230 immunity under the *HomeAway.com* line of cases.

**B.      Section 230 Immunizes Apple Regardless of Whether It Was "Substantially Certain" That a Subsequent Illegal Transaction Would Take Place.**

Plaintiffs propose to create new Section 230 law, claiming Apple is liable because it was "substantially certain" that Plaintiffs would use virtual currency to engage in purportedly illegal

1  gambling on a third-party App. *See, e.g.*, Opp'n. at 7 ("Those purchases [of virtual chips] are themselves illegal transactions, since in every instance the purchased chips were substantially certain to be wagered on illegal slot machines."). While Plaintiffs suggest *HomeAway.com* supports such a test, it does no such thing. Rather, Plaintiffs propose an unprincipled and wholly unsupported extension of *HomeAway.com* in arguing that Apple could be liable for a conduct occurring on a third-party App and gambling activities to which it had *no relationship*.

Plaintiffs' expansive view of *HomeAway.com* is contrary to the intent of Section 230. Congress intended to promote innovation by releasing platforms from obligations to monitor the content and conduct of third parties. Plaintiffs' view is that granting relief in this case would not force Apple to monitor third party content because Apple should assume that an *entire category* of Apps, regardless of their particulars, is "substantially certain" to be illegal. This approach is unsupported and would stymie creativity in a host of apps available on the App Store.

As an initial matter, the words "substantially certain" do not appear anywhere in the complaint and thus cannot be relied on to oppose dismissal. *Coffee v. Google, LLC*, No. 20-cv-03901-BLF, 2021 WL 493387, at *7 (N.D. Cal. Feb. 10, 2021) (rejecting comparison to casino found only in opposition and not alleged in complaint as a basis to hold Google liable for conduct beyond its role as a publisher); *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's … papers").

Not only is Plaintiffs' unalleged "substantially certain" theory without factual or legal support, but it also undermines the purpose of Section 230 in at least three respects. *First*, the very purpose of Section 230 is to ensure platforms are not liable merely because they ought to know that content offered on their interactive internet service is illegal. Congress considered the weight of the speech interests implicated and chose to immunize service providers to avoid any such innovation-chilling effect. *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1124 (9th Cir. 2003).

*Second*, without a doubt, the net effect of eliminating immunity for platforms under these circumstances would be to force platforms to monitor third-party content. In *HomeAway.com*, the

Ninth Circuit framed the relevant inquiry foreclosing Plaintiffs' made-up standard that Apple should be required to monitor third-party content for external transactions between users and developers (Opp'n. at 21): "We look … to what the duty at issue actually requires: specifically, whether the duty would necessarily require an internet company to monitor third-party content." 918 F.3d at 682 (*citing Internet Brands*, 824 F.3d at 851, 853). Applied here, the duty Plaintiffs seek to impose would necessarily—and impermissibly—require Apple to monitor third-party content, thus illustrating why Plaintiffs' substantially certain standard finds no support in the case law.[2]

Because no platform can be "substantially certain" that third-party content is illegal without monitoring the app, Plaintiffs' proposed solution is that Apple should treat all Apps identified as "casino" Apps as if they are, in fact, illegal. But eliminating an entire category of third-party content is the very thing that Section 230 is designed to prevent. Indeed, even the step of determining whether an App should be categorized as a "casino app" requires monitoring of third-party content, which in turn, treats Apple like a publisher.

Additionally, unlike *HomeAway.com*, where a published registry identified what

---

[2] *Doe v. Roblox Corp.*, *see* ECF No. 96, buttresses Apple's position. No. 3:21-cv-03943-WHO, 2022 WL 1459568, at *1 (N.D. Cal. May 9, 2022). There, Roblox was not entitled to immunity for two reasons inapplicable here: Roblox was "essentially functioning as a seller of virtual merchandise, not a publisher of information." *Id.* at *9. Apple does not sell anything associated with the Apps at issue, it merely publishes third party content: the Apps themselves, including the in-app virtual currency. The plaintiff's claim also required Roblox only to disclose that Roblox could delete virtual items, which did not "boil down to deciding whether to exclude material that third parties seek to post online" or "require Roblox to monitor third party content[.]" *Id.* (distinguishing *Coffee* because "[t]his suit, in contrast, does not seek to tell Roblox what it can and cannot post from third parties; it seeks instead to have Roblox disclose to consumers that it has the ability to delete purchased content"). The claims at bar are markedly different and warrant dismissal as in *Coffee*.

properties were unregistered and could not be booked, no such registry exists here. Thus, Plaintiffs' proposal rests entirely on an exercise of Apple's discretion as an immune *publisher* to determine what Apps contain allegedly illegal gambling activity and whether a player's purchase of virtual currency within an App is "substantially certain" to result in allegedly illegal gambling activity or some other aspect of gameplay.

*Third*, allowing a party to circumvent Section 230 immunity on the mere allegation that a platform knew or should have known of illegal activity on its platform eviscerates Section 230's purpose of protecting platforms like Apple "not merely from ultimate liability, but from having to fight costly and protracted legal battles[.]" *Goddard*, 640 F. Supp. 2d at 1202 (citing *Roommates.com, LLC*, 521 F.3d at 1174. If a determination of Section 230 immunity requires discovery into what a publisher knew or should have known about a third-party's content or conduct, no platform will be protected from such a costly legal battle. In the words of the Ninth Circuit, it would "cut the heart out of Section 230 by forcing websites to face death by ten thousand duck-bites, fighting off claims that they promoted or encouraged—or at least tacitly assented to—the illegality of third parties." *Id.* The mere allegation of knowledge of illegal conduct certainly cannot be sufficient to survive dismissal where the *Barnes* test is otherwise satisfied.

## II.  PLAINTIFFS DO NOT PLAUSIBLY ALLEGE THAT APPLE PARTICIPATES IN AN UNFAIR BUSINESS PRACTICE.

Plaintiffs next argue that Apple's own activities in collecting and analyzing user data, and allegedly utilizing targeted advertising to drive players to the Apps are not immune from liability under Section 230. Opp'n. at 26. According to Plaintiffs, Apple directly participates in these "unfair business practices," which are distinct from Apple's role as a publisher. *Id.* at 25. Not so. As Apple explained in its motion, marketing and promotional functions, such as allegedly engaging in data tracking and targeted marketing are considered traditional roles of a publisher protected under Section 230. Mot. at 15 (citing *Roommates.com*, 521 F.3d at 1174; *Gonzalez v. Google, Inc.*, 282 F. Supp. 3d 1150, 1168 (N.D. Cal. 2017) (theory that interactive computer service provider "act[ed] as an 'information content provider' by placing targeted ads … finds no

support in the case law").)

Plaintiffs attempt an end run around this law by asserting that Apple can be liable for its marketing and promotional functions because it could satisfy its obligation not to engage in unfair business practices without reviewing or altering any third-party content. Opp'n. at 27. Not only do the cases cited by Plaintiffs, *Lemmon, Internet Brands*, and *Nunes* (discussed *supra* p. 6), not involve the marketing and promotion of third-party content, but Plaintiffs fail to address the Ninth Circuit's holding in *Kimzey v. Yelp! Inc.*, which does. There, the Ninth Circuit held that Yelp was immune under Section 230 notwithstanding Plaintiffs' allegations that Yelp engaged in promotion and advertising of third-party content. 836 F.3d 1263, 1270 (9th Cir. 2016). Promoting and advertising third-party content did not convert Yelp into something more than a publisher. *Id*. The same is true here. Worse, Plaintiffs are simply wrong: Having to refrain from marketing, promoting and collecting player data—but to do so only for Apps that are illegal—requires Apple to assess whether each App is, in fact, illegal and should be excluded from marketing activities. Determining immunity requires the Court to look to the *duty*, not the name of the claim. Here, Apple has immunity against Plaintiffs' unfair business practice claim because it would require Apple to monitor content for illegal activity and treat developers of such content differently.

### III. THE PRESENCE OF NEUTRAL TOOLS DOES NOT DESTROY APPLE'S IMMUNITY.

Plaintiffs inaccurately portray Apple as arguing that providing neutral tools immunizes its role in the allegedly wrongful conduct. But Apple actually relies on Ninth Circuit authority and decisions in this District stating that its provision of neutral tools, such as developer guidelines, App review, and its in-app purchase system for all apps, *see* Compl. ¶¶ 80-83, is fundamental publisher activity protected by Section 230.[3] To the extent Plaintiffs rely on these tools to argue Apple can be liable for its purported role in any allegedly illegal gambling operation or scheme, that argument necessarily fails. *See* Mot. at 12-15. Existing authority defies Plaintiffs'

---

[3] Plaintiffs do not object to Apple's Request for Judicial Notice of these neutral tools, ECF No. 95, nor do they contest they are just that: neutral tools of general applicability. Opp'n. at 27-29.

attempt to impose liability on a platform for its role in making third-party content available merely because a plaintiff claims the platform has knowledge of a third party's allegedly unlawful conduct. *See Roommates.com*, 521 F.3d at 1169, n.24; *Goddard*, 640 F. Supp. 2d at 1197-98.

## IV. LEAVE TO AMEND WOULD BE FUTILE.

The key factual allegations lead to one conclusion: Apple may facilitate the purchase of virtual currency but is not directly involved in the transaction Plaintiffs allege to be illegal gambling. Because the issue for the Court to decide is a legal one, *i.e.*, whether the Court should adopt Plaintiffs' "substantial certainty" argument as law, additional factual allegations are futile.

Plaintiffs make only the vague proffer that "additional facts about the social casino games and the Platforms' involvement could help the Court" determine whether the second and third prongs of the *Barnes* test are satisfied. Opp'n. at 30. Under these circumstances, leave to amend would be futile and is properly denied. *See McQuinn v. Bank of Am., N.A.*, 656 F. App'x 848, 850 (9th Cir. 2016) (holding the district court did not abuse its discretion dismissing claims without leave to amend where the plaintiff did not identify what they would allege to cure the deficiencies in their complaint); *W. Select Secs., Inc. v. San Francisco City and Cnty. Employees' Ret. Sys*, 13 F. App'x 679, 681 (9th Cir. 2001) (declining to remand with instructions to district court to permit amendment of complaint where, "[a]t no time has the plaintiff … indicated how it could cure the defects"); *see also* Mot. at 19-20.

## CONCLUSION

Ultimately, despite Plaintiffs' hyperbole and distortions, Apple is simply a publisher of third-party App content that Plaintiffs characterize as illegal gambling. In that role, Apple has Section 230 immunity, which incentivizes Apple's App Store innovations. Plaintiffs can never plausibly allege that Apple participates in such a transaction in a different role by virtue of separate, lawful conduct. Therefore, the complaint should be dismissed with prejudice.

Dated: May 13, 2022        Respectfully submitted,
**DLA PIPER LLP (US)**

By: */s/ John S. Gibson*
   John Samuel Gibson
   *Attorney for Defendant Apple Inc.*