1   Rafey S. Balabanian (SBN 315962)
    rbalabanian@edelson.com
2   Todd Logan (SBN 305912)
    tlogan@edelson.com
3   EDELSON PC
    150 California Street, 18th Floor
4   San Francisco, California 94111
    Tel: 415.212.9300 / Fax: 415.373.9435
5

6   *Interim Lead Counsel for Plaintiffs*
    *Law and Briefing Counsel for Plaintiffs*
7

8   **[Additional Counsel listed on signature page]**

9
                    **UNITED STATES DISTRICT COURT**
10                 **NORTHERN DISTRICT OF CALIFORNIA**
                        **SAN JOSE DIVISION**
11

12  | IN RE: APPLE INC. APP STORE SIMULATED CASINO-STYLE GAMES LITIGATION | Case No. 5:21-md-02985-EJD<br><br>Judge:  Hon. Edward J. Davila<br><br>**JOINT STATUS REPORT** |
13  | --- | --- |
14
15

16  | IN RE: GOOGLE PLAY STORE SIMULATED CASINO-STYLE GAMES LITIGATION | Case No. 5:21-md-03001-EJD<br><br>Judge:  Hon. Edward J. Davila<br><br>**JOINT STATUS REPORT** |
17  | --- | --- |
18
19

20  | IN RE: FACEBOOK SIMULATED CASINO-STYLE GAMES LITIGATION | Case No. 5:21-cv-02777-EJD<br><br>Judge:  Hon. Edward J. Davila<br><br>**JOINT STATUS REPORT** |
21  | --- | --- |
22
23

24
25
26
27
28

Pursuant to the Court's June 13, 2024 notice directing the parties to file a Joint Status Report, Dkt. 116, modified at Dkt. 120, the Parties provide the following Joint Status Report.

**I.      Plaintiffs' Statement**

      A.      Plaintiff's Affirmative Statement

           1.      *Context for and Summary of Plaintiff's Positions*[1]

These MDLs are now more than three years old. During those three years, Defendants Facebook, Apple, and Google have illegally brokered some $20 billion in illegal "social casino" slot machine gambling transactions. That's roughly as much, over the same period, as the total combined revenues of all casino gaming floors on the Las Vegas strip.[2]

Unlike the highly regulated Las Vegas strip, the social casino slot machines offered by Facebook, Apple, and Google have for years operated in a regulatory blind spot. The results of evading licensure in an industry that for centuries has demanded the highest levels of oversight (if it is not banned outright) are both predictable and tragic: the vast majority of the money Facebook, Apple, and Google make from social casino slot machines comes from gambling addicts who cannot help themselves when offered slot machines that they can play from their phone, 24 hours a day, 365 days a year.

Less than one month ago, a court in the Western District of Washington granted summary judgment in favor of a certified class, determining that social casinos violate both Washington's gambling laws and Washington's consumer protection act. *Larsen v. PTT, LLC*, No. 3:18-CV-05275-TMC, 2024 WL 2943892, at *13 (W.D. Wash. June 11, 2024). That order makes abundantly clear that the claims alleged by the Washington Class—together with classes composed of residents of several other states that have materially identical statutes—will be moving forward in this case.

---

[1]      Plaintiffs note that their statement contains more advocacy than they would ordinarily include in a status report. However, given that Plaintiffs have had no opportunity to address the Court during the lengthy stay, Plaintiffs respectfully submit that advocating their positions is appropriate here.

[2]      David G. Schwartz, "Nevada Casinos: Departmental Revenues, 1984-2023" (Ctr. for Gaming Rsch., Univ. of Nev. Las Vegas, 2024), https://gaming.library.unlv.edu/reports/NV_departments_historic.pdf.

CONSOL. JOINT STATUS REPORT
Case Nos. 21-md-02985-EJD; 21-md-03001-EJD;
21-cv-02777-EJD

1

**EDELSON PC**
150 California Street, 18th Floor
San Francisco, CA 94111
Tel: 415.212.9300 • Fax: 415.373.9435

Moreover, discovery in these MDLs will demonstrate that Facebook, Apple and Google's system of brokering of gambling transactions is a subterfuge designed to allow them to reap enormous profits while pretending that they are involved in legitimate commerce. A sample of some of the documents featured in recent briefing in *Larsen* illustrates how the social casino slot machines exploit gambling addicts:

- **HIGH5_01477847** (attached hereto as **Exhibit 1**) (Social Casino company internal communication): "***Please provide us with a list of whale monetizers*** . . . . In terms of who we define as whales, that should come from you, of who we want to ***target for coin drainage***." (emphasis added).

- **HIGH5_03388674** (attached hereto as **Exhibit 2**) (Player Communication): "I clearly ***cannot control my gambling*** and am depending on the self-exclusion contract to protect me from my own problem. Some error in your system has allowed me to continue to deposit and play which has to stop[.]" (emphasis added).

- **HIGH5_02665713** (attached hereto as **Exhibit 3**) (Social Casino company internal communication): Email suggesting sending boxes of wine to "***good ol [redacted player name]– the whale with crazy monetization habits***," so that she can play High 5's games while intoxicated. (emphasis added).

- **HIGH5_03245025** (attached hereto as **Exhibit 4**) (Player Communication): "I am ***having a problem*** and I need to stop playing so much as it's a bit of an addiction and buying credits are totally out of control for me . . . I am having some ***financial difficulties***[.]" (emphasis added).

- **HIGH5_03388486** (attached hereto as **Exhibit 5**) (Player Communication): "[I] really am an addict and [I']m not supposed to be on any gambling sites please [I']d really need to get this money back ***[I']m literally on the verge of losing everything*** [I] understand [I] shouldn[']t have even open[ed] an account [I] was not in the right mind set . . . ***[I']m not go[ing] [to] recover from this los[s] [I] put my family in please please.***" (emphasis added).

- **HIGH5_02668183** (attached hereto as **Exhibit 6**) (Social Casino company internal communication): Showing attempts to reach out to three specific "whales" who had not spent money in a long time, including one who "had trouble with their credit card processing," with instructions to "***get more aggressive***." (emphasis added).

These sorts of interactions, where sophisticated tech industry professionals strategize over how to exploit individual gambling addicts who are begging to be cut off, are not aberrations in social

CONSOL. JOINT STATUS REPORT
Case Nos. 21-md-02985-EJD; 21-md-03001-EJD;
21-cv-02777-EJD

2

**EDELSON PC**
150 California Street, 18th Floor
San Francisco, CA 94111
Tel: 415.212.9300 • Fax: 415.373.9435

casino slot machine operations. They are the norm. And Facebook, Apple and Google, whose customer-facing employees routinely receive the same kinds of communications from gambling addicts, nevertheless actively broker in these exploitative transactions for the same reason that bookmakers in illegal backroom brick-and-mortar casinos do the same: it's extraordinarily lucrative to exploit gambling addicts (here, digitally, and to the tune of tens of billions).

So that justice may be done before Facebook, Apple, and Google can illegally, immorally and unfairly extract another $20 billion from gambling addicts, ruining countless lives in the process, the Court should put these MDLs on a fast track toward trial. Discovery should begin without limitation; pleadings motions should be briefed quickly and in one fell swoop; and the Court should enter a scheduling order with trial dates beginning in early 2026. These positions are detailed further below.

2.     *Discovery should begin without limitation*

In light of the Court's Section 230 Order remaining the undisturbed law of the case, there is no serious question that at least some classwide claims—*e.g.*, claims under Washington law, which explicitly bar *anyone*, including Apple, Google, and Facebook from brokering illegal gambling transactions—will move forward in these MDLs. Nor is there any serious question that the balance of equities, at this juncture, tips in favor of permitting plaintiffs to begin pursuing discovery and developing their claims. The Court should consequently permit discovery to begin without limitation.

While the Court weighs whether to place any limitations on discovery in the near term (which, for the avoidance of doubt, Plaintiffs oppose), Plaintiffs respectfully request that the Court grant Plaintiffs leave to serve upon each Defendant a narrowly-tailored set of three (3) Requests for Production and one (1) Interrogatory. Plaintiffs are contemplating early motions for

CONSOL. JOINT STATUS REPORT
Case Nos. 21-md-02985-EJD; 21-md-03001-EJD;
21-cv-02777-EJD

3

**EDELSON PC**
150 California Street, 18th Floor
San Francisco, CA 94111
Tel: 415.212.9300 • Fax: 415.373.9435

class certification and injunctive relief on behalf of certain classes for certain claims, and believe this exceedingly narrow set of discovery will likely be sufficient to support those contemplated motions. An exemplar set of this proposed first set of discovery, tailored to the *In re Apple* MDL, is attached hereto at **Exhibit 7.**[3]

Consequently, <u>Plaintiffs respectfully request that the Court</u>: (i) enter an oral order during the July 17 status conference permitting Plaintiffs to serve this set of discovery upon each defendant, and (ii) permit discovery to begin in full upon the Court's entry of a scheduling order.

3.    *Any pleadings motions should be filed promptly and in one fell swoop*

Defendants propose a bifurcated (really trifurcated, in light of the prior motions) briefing schedule under the guise of purported efficiencies. Yet Defendants have made clear that in their next proposed motion to dismiss—the second of three, under Defendants' proposal—they will ask the Court to individually review and dismiss on CDA grounds each and every claim asserted in these cases. Inevitably, Defendants will then seek to appeal at least some of the Court's rulings and seek stays pending those appeals. In other words, while claiming that their trifurcated approach will provide some efficiencies, Defendants have asked the Court to stage briefing in a manner likely to maximize delay.

The reality is that there is, at this juncture, no efficiency to be gained by trifurcating or otherwise staging the remaining pleadings briefings. The Parties and the Court already explored that path three years ago, and the result is that the lone argument that might have stopped these cases in their tracks—that Section 230 preempts them in full—is now gone. All that's left is a hodgepodge of arguments targeting specific state laws, and certainty that at least some classwide

---

[3]    For the avoidance of doubt, this set of discovery shall be without prejudice to further discovery requests for additional ESI and hard copy documents, and without prejudice to further identification of appropriate global and request-specific custodians.

CONSOL. JOINT STATUS REPORT
Case Nos. 21-md-02985-EJD; 21-md-03001-EJD;
21-cv-02777-EJD

4

**EDELSON PC**
150 California Street, 18th Floor
San Francisco, CA 94111
Tel: 415.212.9300  •  Fax: 415.373.9435

claims (*e.g.*, those alleged under Washington's gambling laws) will proceed. Unless the goal is to further delay justice, there is no reason to phase or stagger whatever pleadings arguments Defendants have left. Defendants already stand to get one more bite at the apple than Rule 12(b) provides—*i.e.*, a single motion—and the Court should decline Defendants' request to get a third bite at that apple.

Consequently, Plaintiffs respectfully request that the Court set a deadline of August 16, 2024, for each Defendant to file its (sole remaining) Rule 12(b) motion, with motions not to exceed 35 pages, and Plaintiffs to file an omnibus opposition not to exceed the combined page count of the Defendant's three briefs. The Court should order the parties to confer promptly after filing of those motions in an effort to agree upon a briefing schedule, and to file either an agreed schedule or competing schedules by August 30, 2024.

### 4. *The Scheduling Order Should Target Trial Dates In 2026*

By July 17, 2026, two years from the upcoming status conference, these cases will be more than five years old. The Court should not permit these MDLs to stretch any further that. Consequently, Plaintiffs respectfully request that the Court enter the following Scheduling Order:

| Event | Date |
|---|---|
| Deadline to File Proposed Protective Orders and ESI Protocols | August 2, 2024 |
| Deadline to File Rule 12(b) Motions (35 page limit) | August 16, 2024 |
| Deadline for Parties to Propose Rule 12(b) Briefing Schedule | August 30, 2024 |
| Deadline for Joining Additional Parties Without Leave of Court | November 8, 2024 |
| Deadline for Amending Pleadings | December 6, 2024 |
| Deadline for Class Certification | January 25, 2025 |
| Disclosure of Expert Witness Reports | April 19, 2025 |
| Disclosure of Rebuttal Expert Witness Reports | May 16, 2025 |
| Trial-Setting Conference | June 12, 2025 |
| Discovery Completed | July 11, 2025 |
| Deadline for Dispositive Motions | August 15, 2025 |
| Deadline for Motions *in Limine*, Joint Witness List, Joint Exhibit List, Joint Final Pretrial Conference Statement (Trial #1) | January 8, 2025 |
| Deadline for Jury Materials (Trial #1) | January 15, 2025 |

CONSOL. JOINT STATUS REPORT
Case Nos. 21-md-02985-EJD; 21-md-03001-EJD; 21-cv-02777-EJD
5
EDELSON PC
150 California Street, 18th Floor
San Francisco, CA 94111
Tel: 415.212.9300 • Fax: 415.373.9435

| Final Pretrial Conference (Trial #1) | January 29, 2026 |
| Trial #1 | February 3, 2026 |
| Trial #2 | May 5, 2026 |
| Trial #3 | July 17, 2026 |

B.    Plaintiff's Response to Defendants' Statement

Plaintiffs provide the following brief responses to Defendants' statement:

- **The first round of discovery Plaintiffs propose—three (3) Requests for Production and one Interrogatory—is extraordinarily narrow and would impart almost no burden on defendants.** Defendants gripe that Plaintiffs' proposed first set of discovery seeks computerized purchase information about a large number of virtual chip purchases, but conveniently fail to omit that each defendant has repeatedly furnished exactly this information in connection with claims administration in more than a half-dozen class action settlements totaling some $650 million social casino cases in the Western District of Washington. In other words, each Defendant has already repeatedly furnished this information, and can do so with a few button-clicks here.

- **The previously-stipulated-to discovery stay expired upon resolution of the "initial" Rule 12 Motions.** Defendants misleadingly point to a pre-pleadings-motions stipulated discovery stay in support of a request that the Court continue to stay this case. But the plain language and obvious intent of that stipulation was that Defendants would get one shot at ending this litigation with a so-described "surgical strike," and that discovery would by agreement remain stayed while the Court evaluated that "surgical strike." Three years later, the outcome is that the surgical strike quite plainly missed its target, and the Parties' prior stipulation—which terminated upon the Court's denial of Defendant's "initial" Rule 12 motions—is irrelevant here.

- **The Scheduling Order should not include a deadline for amended master complaints.** Because none of Plaintiffs' claims have been dismissed and they presently have no additional claims to assert, they have no need to file an amended complaint at this time. Plaintiffs' operative complaints allege sufficient facts to state each asserted claim. And Plaintiffs believe they can successfully oppose Defendants' anticipated pleadings motions arguments, on their current complaints, without relying on any legal theory that the Court previously rejected on Section 230 grounds. Consequently, to the extent that Defendants believe they have arguments that will lead to dismissal of any of Plaintiffs' claims at the pleadings stage, they should make those arguments now, in Rule 12(b) motions challenging the operative pleadings. Setting a deadline to amend complaints before allowing discovery or even finishing briefing on the pleadings would not

CONSOL. JOINT STATUS REPORT
Case Nos. 21-md-02985-EJD; 21-md-03001-EJD;
21-cv-02777-EJD

6

EDELSON PC
150 California Street, 18th Floor
San Francisco, CA 94111
Tel: 415.212.9300 • Fax: 415.373.9435

be appropriate.[4]

- **The Court should not (further) phase or stage the remaining pleadings motions.** Defendants' proposal for phased briefing will only further multiply the already inequitable delay in these proceedings, and would gain no efficiencies in light of Defendants' insistence that the Court individually review each and every claim in connection with their forthcoming dismissal motions. The Court should set a routine briefing schedule that, while acknowledging that the briefing and appendices may be voluminous, steers these cases towards having Defendants' answers filed this fall and trial dates in 2026.

- **There has been no intervening change in Section 230 law.** Defendants' best hope of having these MDLs dismissed on the pleadings was to convince the Court that Section 230 of the Communications Decent Act preempted all of Plaintiffs' claims for relief. That hope has now been dashed, and contrary to Defendants' statement, there has been no change in Section 230 law since the Court's Section 230 Order. *HomeAway* remains as binding authority that controls this case. And while the Supreme Court vacated *Gonzalez v. Google* on grounds unrelated to the CDA, the case nevertheless remains persuasive authority as to Section 230. So this Court's order, which rests on *HomeAway* and *Gonzalez* and many other sources of additional binding authority, remains good law.

- **Defendants' remaining pleadings arguments are weak and narrow.** Section 230 aside, Defendants are left with a hodgepodge of arguments that, at most, apply to a subset of state laws at issue in this case and are unlikely to result in many claims (if any) being dismissed. For example:

    o This Court's statutory standing and "thing of value" analyses in *Mai v. Supercell* are inapposite because these MDLs are about actual illegal slot machines as defined by California's Penal Code—not "loot boxes" that award gameplayers spells or characters. And in any event, class members nationwide have here asserted claims under their home state laws, rendering *Mai* categorically irrelevant to those claims.

    o Defendants have no non-frivolous arguments that social casino slot machines are legal in Washington. *See Larsen*, 2024 WL 2943892, at *13.

    o Defendants have only exceedingly weak arguments that social casino slot machines are legal in the many states whose gambling laws are similar to Washington's.

---

[4]    *See ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1006 (9th Cir. 2014) ("Parties should not be discouraged from limiting their initial pleadings to claims and defenses that have evidentiary support. Nor should they fear that doing so will foreclose them from amending their pleadings if new facts come to light after further investigation and discovery.").

CONSOL. JOINT STATUS REPORT
Case Nos. 21-md-02985-EJD; 21-md-03001-EJD;
21-cv-02777-EJD

7

**EDELSON PC**
150 California Street, 18th Floor
San Francisco, CA 94111
Tel: 415.212.9300 • Fax: 415.373.9435

- **The Court should reject Defendants' overture to move this case forward an inch at a time, and instead should set these cases for jury trials in 2026.** Defendants' proposed approach is an exercise in deliberately protracted litigation: Defendants request second and third sets of pleadings motions, with the second set not to be heard for five months and no dates at all set for the third, an implicit stay on discovery all the while, and inevitable requests for appeals following those motions. Defendants do not even address the procedural path toward trial. None of that is, at this juncture three years into the case, fair, equitable, or reasonable. Plaintiffs and class members have waited long enough for justice. The Court should set these cases for trials in 2026 and should enter a complete Scheduling Order to realistically deliver those trial dates.

## II.  Defendants' Statement

### A.  Defendants' Affirmative Statement

Plaintiffs' sprawling Master Complaint asserts a novel theory:  that Apple, Google, and Meta can be held liable for the actions of third-party app developers by hosting the apps and processing payments for virtual items used in those apps.  And the Master Complaint fails to identify all the specific apps at issue, some of which are subject to binding arbitration agreements.  In light of Plaintiffs' novel theories, the Court understandably certified for interlocutory appeal its September 2, 2022 Order Granting in Part and Denying in Part Defendants' Motion to Dismiss (Dismissal Ruling), Dkt. 106, 80, 119.[5]

The above-captioned actions are now back before the Court on remand from the Ninth Circuit, which dismissed the parties' cross-appeals of the Court's Dismissal Ruling.  Before the cross-appeals, Plaintiffs agreed that Defendants would submit motions to dismiss that briefed solely the issue of whether Section 230 of the Communications Decency Act (Section 230) barred Plaintiffs' claims.  The parties also agreed—and the Court ordered—that discovery would be stayed, and that the Defendants would reserve the right to raise other grounds for Rule 12(b)(6) dismissal if the case was not resolved entirely on Section 230 grounds. On remand,

---

[5] References to the docket in each of the cases are made in the same order as the case caption: (1) Case No. 5:21-md-02985-EJD (Apple); (2) Case No. 5:21-md-03001-EJD (Google); (3) Case No. 5:21-md-02777-EJD (Meta).

CONSOL. JOINT STATUS REPORT
Case Nos. 21-md-02985-EJD; 21-md-03001-EJD;
21-cv-02777-EJD

8

EDELSON PC
150 California Street, 18th Floor
San Francisco, CA 94111
Tel: 415.212.9300 • Fax: 415.373.9435

1  Defendants wish to pursue motions to dismiss on these other grounds, and discovery should

2  remain stayed throughout this briefing.

3        Now, however, Plaintiffs seek to avoid the consequences of their own choices in

4  asserting novel and wide-ranging theories.  They attack the Court's certification for interlocutory

5  appeal by insisting on immediate discovery and trial dates based on the "delay" of the

6  interlocutory appeals.  And they use this Joint Report to argue (improperly) a host of alleged

7  facts and law from Washington State litigation against app *developers* as if such facts and law

8  had been determined against and were applicable to Apple, Google, and Meta—which they most

9  certainly are *not*.  In fact, Plaintiffs' Master Complaint here has not even alleged such facts.

10       Defendants thus propose that the Court should continue on its path to consider Plaintiffs'

11  novel legal theories and uncertain factual allegations carefully and deliberately before opening

12  burdensome discovery based on them.  Specifically, Defendants propose an amendment to the

13  Master Complaint followed by Phase I and (if necessary) Phase II motions to dismiss while the

14  parties comply with the Court's order to stay discovery pending resolution of such motions.

15       **Amendment to Master Complaint.**  Defendants propose that before the parties submit

16  new motions to dismiss, Plaintiffs amend the Master Complaint to remove allegations foreclosed

17  by the Court's Dismissal Ruling, and to clarify the evolving theories that Plaintiffs advanced

18  during the motion to dismiss briefing and on appeal.  Moreover, the Master Complaint leaves

19  significant uncertainty as to which gaming apps are at issue in this litigation.  An amendment

20  specifying which apps Plaintiffs allege to have resulted in gambling violations will provide

21  clarity as to the scope and nature of Plaintiffs' claims.  While Defendants will need to review

22  Plaintiffs' Amended Master Complaint to determine their defenses and the most efficient

23  structure for briefing, Defendants anticipate requesting a phased approach to motions to dismiss

24  on remand, similar to the phased briefing contemplated in the March 15, 2022 Order Setting

25  Briefing Schedule, Dkt. 91, 68, 98:

26       **Motions to Dismiss.**

27

28  CONSOL. JOINT STATUS REPORT
    Case Nos. 21-md-02985-EJD; 21-md-03001-EJD;
    21-cv-02777-EJD

9

**EDELSON PC**
150 California Street, 18th Floor
San Francisco, CA 94111
Tel: 415.212.9300 • Fax: 415.373.9435

- **Phase I:**  Defendants, in separate briefs, will move to dismiss the Master Complaint in its entirety.  Because Defendants participate only in the transaction of processing payments for the in-app purchases of virtual items, arguments raised in this phase may include, among others:  (1) Plaintiffs lack statutory standing—causing all claims to fail—under the California Unfair Competition Law and other laws because they suffered no economic injury through Defendants' conduct; (2) California's *in pari delicto* doctrine and well-established public policy barring claims to recover gambling losses preclude Plaintiffs' claims arising under California law; (3) Plaintiffs' failure to satisfy threshold requirements for civil RICO claims, including proximate causation and injury to business or property; and (4) renewed Section 230 grounds for dismissal based on amendments to the Master Complaint and changes in the law since the Dismissal Ruling.

  o Regarding lack of standing, the Ninth Circuit's recent decision in *Mai v. Supercell Oy*, No. 23-15144-EJD, 2024 WL 2077500, at *1-*2 (9th Cir. May 9, 2024), is one example of persuasive authority holding that plaintiffs failed to allege economic injury because they "received exactly what they expected" under the "benefit-of-the-bargain theory of economic injury" in online transactions for "virtual items."  This Court will conduct further proceedings there, as the Ninth Circuit agreed with the dismissal reasoning by this Court but vacated and remanded to accomplish dismissal without prejudice.  *Id.* at *2, *4.

  o Changes in the law since the Dismissal Ruling include that the Supreme Court has vacated *Gonzalez v. Google LLC*, 2 F.4th 871 (9th Cir. 2021)—upon which the Dismissal Ruling relied in upholding a "bookie" theory under Section 230 (Dkt. 106, 80, 119, at 29-35), *Gonzalez v. Google LLC*, 598 U.S. 617 (2023) (per curiam)—in light of its reversal of the Ninth

CONSOL. JOINT STATUS REPORT
Case Nos. 21-md-02985-EJD; 21-md-03001-EJD;
21-cv-02777-EJD

10

**Edelson PC**
150 California Street, 18th Floor
San Francisco, CA 94111
Tel: 415.212.9300 • Fax: 415.373.9435

Circuit in *Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023).  The Ninth
Circuit's *Gonzalez* decision is thus not binding precedent to support the
Dismissal Ruling on the "bookie" theory.  *Spears v. Stewart*, 283 F.3d
992, 1017 n.16 (9th Cir. 2001).

o In their Phase I motions, Defendants will request that the Court review
each claim for relief in the Amended Master Complaint to determine
whether it must be dismissed under Section 230, consistent with the Ninth
Circuit's guidance in dismissing the cross-appeals.  Dkt. 119, 98, 131, at 8.
And Defendants will reserve the right to address issues specific to state
statutes in Phase II.

- **Phase II:**  Defendants believe the above Phase I arguments should result in
dismissal of the entire complaint with prejudice without requiring briefing and
adjudication of state-specific issues, including whether virtual casinos constitute
gambling prohibited under each state's laws.  However, to the extent any causes
of action remain after Phase I, Defendants will reserve other arguments for a
second phase.  Defendants will move to dismiss some or all remaining claims, if
any, after the Court rules on the Phase I motions.  In the event that the Court were
to consider the Phase II issues in Phase I, the Court would be burdened with
analyzing substantially longer briefing—including a lengthy state-by-state
analysis of the 25 anti-gambling, unfair and deceptive trade practices, and "unjust
enrichment" claims.  In contrast, the Court may not be burdened by such analysis
if the Court considers and rules on the potentially dispositive Phase I issues first.
Allowing the proposed Phase II briefing, if needed, could thus reduce the burden
on the Court and promote judicial economy.

**Schedule.**  Defendants propose the following schedule for Phase I:

- Amended Master Complaint: August 16, 2024.

CONSOL. JOINT STATUS REPORT
Case Nos. 21-md-02985-EJD; 21-md-03001-EJD;
21-cv-02777-EJD

11

**EDELSON PC**
150 California Street, 18th Floor
San Francisco, CA 94111
Tel: 415.212.9300  •  Fax: 415.373.9435

- Phase I opening briefs: September 20, 2024.

- Phase I opposition briefs: October 25, 2024.

- Phase I reply briefs: November 13, 2024.

- Oral argument on Phase I motions: November or December 2024.

**Stay of Discovery.**  The parties previously agreed—and the Court ordered—that if the Section 230 motions did not end the cases, the discovery stay would remain in place until resolution of the subsequent motions to dismiss brought on grounds other than Section 230. Specifically, the Court ordered that all discovery "shall be stayed pending the Court's resolution of *all* initial Rule 12 Motions."  Dkt. 48 at 4 (emphasis added).  The Court further ordered that "discovery shall remain stayed pending the Court's resolution of any subsequently filed Rule 12 motions in response to any permitted, subsequently filed amended pleadings."  Dkt. 48 at 4. Defendants propose that this pleading-stage discovery stay remain in place—pursuant to the Court's order—pending resolution of Defendants' upcoming motions to dismiss.

### B.    Defendants' Response to Plaintiffs' Statement

Plaintiffs complain that this litigation is "now more than three years old," and on that basis seek to compress and expedite remand motion to dismiss briefing, and to proceed immediately to discovery.  But the pace of this litigation is the result of Plaintiffs' decision to pursue sprawling claims involving novel theories of liability against platforms.  Indeed, this litigation was before the Ninth Circuit for a year and a half after the Court appropriately certified its Dismissal Ruling for appeal to provide guidance on Plaintiffs' novel theories.  Plaintiffs should not be permitted to sidestep the consequences of their litigation strategy and proceed straight to discovery before Plaintiffs have amended the Master Complaint and the Court has ruled on motions to dismiss that are likely to result in dismissal of the whole case.

Plaintiffs have improperly introduced arguments, as well as documents *from a different case involving entirely different parties*, into what should be a non-argumentative status report. Defendants object to Plaintiffs' attempt to create the misleading impression that those documents

CONSOL. JOINT STATUS REPORT
Case Nos. 21-md-02985-EJD; 21-md-03001-EJD;
21-cv-02777-EJD

12

**EDELSON PC**
150 California Street, 18th Floor
San Francisco, CA 94111
Tel: 415.212.9300 • Fax: 415.373.9435

somehow are connected to Defendants.  Those communications do *not* involve any of the Defendants in this matter, and none of them relates to any of Plaintiffs' claims or the issues presently before this Court.  Defendants requested that Plaintiffs remove this improper argument and reference to documents from another matter, but Plaintiffs refused.  Defendants further disagree with Plaintiffs' attempts to move forward at breakneck speed, to ignore the legal ramifications of this Court's order that two of the operative complaint's overarching theories are invalid, to gloss over the Ninth Circuit's instruction for this Court to apply Section 230 on a claim-by-claim basis, and to skip straight to discovery before Defendants have an opportunity to air strong arguments for dismissal—contrary to the Court's discovery-stay order.  *See* Dkt. 48.[6]

- **Amended Master Complaints:**  In its Dismissal Ruling, the Court dismissed two of Plaintiffs' three theories of liability, holding that the "bookie" theory was the only theory not barred by Section 230.  Dismissal Ruling, Dkt. 106, 80, 119, at 33, 35. Plaintiffs purport to "believe they can successfully oppose Defendants' anticipated pleadings motions arguments, on their current complaints without relying on any legal theory that the Court previously rejected on Section 230 grounds."  *Supra*, at 6. If so, then Plaintiffs should do just that:  file an amended complaint that removes the hosting and promotion theories that violate Section 230 under portions of this Court's order that, as Plaintiffs concede, remain "undisturbed law of the case" following the Ninth Circuit's limited remand.  *Supra*, at 3.  Such amendment would hold Plaintiffs to their representations in this status report and elsewhere that Plaintiffs seek to hold the platforms liable not for hosting social casino apps but rather for the platforms' own "bookmaking conduct"—i.e., "booking illegal gambling transactions."  Dkt. 104 at 10.  Such amendment also would facilitate the Ninth Circuit's instruction for this

---

[6] Plaintiffs also acknowledge that "their statement contains more advocacy than they would ordinarily include in a status report," but the current procedural posture of this matter is no fault of the Court or Defendants, nor does it provide any justification for this improper use of material from another lawsuit.

CONSOL. JOINT STATUS REPORT
Case Nos. 21-md-02985-EJD; 21-md-03001-EJD;
21-cv-02777-EJD

13

**EDELSON PC**
150 California Street, 18th Floor
San Francisco, CA 94111
Tel: 415.212.9300 • Fax: 415.373.9435

case to "apply its [Section 230] ruling to each of the 125 causes of action." *In re Facebook Simulated Casino-Style Games Litig.*, 2024 WL 2287200, at *2 (9th Cir. 2024). And such amendment would streamline further pleadings challenges for the Court and the parties by clarifying the current basis for their claims. If Plaintiffs truly are no longer pursuing hosting and promotion theories, then there is no apparent legitimate reason for them to object to amending the complaint to reflect the only issues that remain live in the case—a simplifying step that will likely speed up the case in the long run. Based on Plaintiffs' representations, this amendment could be prepared rather quickly. Further, should the Court accept Plaintiffs' position that amendment is not necessary, Plaintiffs should not be permitted to raise arguments based on new allegations or theories not asserted in the operative Master Complaint. Already in this Joint Status Report, Plaintiffs rely on such inapposite facts alleged against developers in the Washington litigation—but not alleged against Defendants here.

- **Phased Briefing:** The same factors that led the parties and this Court to adopt phased briefing at the outset have not changed. In fact, the Ninth Circuit's instruction for this Court to apply Section 230 on a detailed claim-by-claim basis has *increased* the scope of the issues. Accepting Plaintiffs' proposal of a single Rule 12 motion will require the parties to prepare (and the Court to review) not only across-the-board pleadings challenges, but also lengthy state-law-specific appendices, Dkt. 93, which was the motivating factor for phased briefing in the first place. Plaintiffs also have no just cause to complain about the complexity of the Rule 12 issues. After all, they seek to represent nationwide classes and dozens of statewide classes, which has inevitably led to complex choice-of-law questions and has raised the prospect of painstaking state-by-state briefing. Plaintiffs' desire to represent sweeping, jumbled classes is no license for them to cut corners.

CONSOL. JOINT STATUS REPORT
Case Nos. 21-md-02985-EJD; 21-md-03001-EJD;
21-cv-02777-EJD

14

**EDELSON PC**
150 California Street, 18th Floor
San Francisco, CA 94111
Tel: 415.212.9300 • Fax: 415.373.9435

- **Discovery:** Plaintiffs argue that they should be allowed to start discovery immediately because of a summary judgment ruling Plaintiffs' counsel obtained in a different case in Washington against a single game *developer* that is not a party to this case. Unlike *Larsen*, however, Plaintiffs here chose to pursue novel claims against *platforms*. The Defendants in this case are far removed from the alleged gambling activity. Plaintiffs are wrong to assume that the *Larsen* decision involving developers would have any bearing on claims against platforms. In the interest of judicial economy, and to avoid unnecessary use of resources, discovery should remain stayed until gating issues are briefed and resolved since these are likely to dispense with the entire action. *See, e.g.*, *Arcell v. Google LLC*, No. 22-CV-02499-EJD, 2022 WL 16557600, at *1 (N.D. Cal. Oct. 31, 2022) (Davila, J.) (granting stay of discovery where motion to dismiss might dispose of entire case and could be decided without further discovery, and because a stay "will promote efficiency and avoid undue burden to Defendants").

    o *None* of the "sample" discovery documents that Plaintiffs cite are from any Defendant here; and *none* has any bearing on Plaintiffs' claims in these cases. The documents are from the *Washington* case against a game developer that is not a party *here*.

    o Plaintiffs' vague prophecy that "some" of its claims will not be dismissed based on a ruling in a different case against a different defendant in a different position, with different facts and different theories of liability, is hardly a basis to allow Plaintiffs to start exerting discovery leverage. In fact, the Ninth Circuit plainly instructed that this Court "has yet to determine which causes of action should be dismissed" and that "[d]isposition of the claims in this case will . . . require examining each individual claim." 2024 WL 2287200, at *2. That determination should

CONSOL. JOINT STATUS REPORT
Case Nos. 21-md-02985-EJD; 21-md-03001-EJD;
21-cv-02777-EJD

15

EDELSON PC
150 California Street, 18th Floor
San Francisco, CA 94111
Tel: 415.212.9300 • Fax: 415.373.9435

be made first, and the contours of the pleadings should be set before launching into discovery on jumbled classes and theories.

- o Nor should the Court allow the purportedly "narrowly-tailored" [sic] requests for production that Plaintiffs' seek while the Court determines whether discovery should remain stayed.  The document requests call for sweeping, resource-consuming discovery.  Plaintiffs' proposed Request for Production No. 1 for "Purchase Information," for example, on its face seeks documentation of *all* coin transactions made from 2017 to present.  Request for Production No. 2 calls for custodial email searches for communications containing broad search terms.  These requests are premature where Plaintiffs have not even specified which apps allegedly give rise to their claims. Such expansive discovery should not be permitted before Plaintiffs clarify what apps are at issue, and the upcoming motions to dismiss have been resolved.

- o At the very least, this Court should reject Plaintiffs' invitation to rush to judgment and deny Plaintiffs' request to lift the discovery stay.  If the Court has any inclination to permit discovery before the pleadings are set, then Defendants would like the opportunity to bring a motion to stay or limit discovery pending resolution of Defendants' dismissal motions.

Continuing the Court-ordered stay would cause no prejudice to Plaintiffs.

Defendants also reserve the right to propose a case schedule in response to Plaintiffs' proposal, should the Court wish to set a broader schedule for pretrial proceedings in this matter. But Defendants respectfully submit that the pleadings should be resolved first, and at the appropriate time, the parties should first confer on a schedule before submitting any proposals to the Court.

CONSOL. JOINT STATUS REPORT
Case Nos. 21-md-02985-EJD; 21-md-03001-EJD;
21-cv-02777-EJD                                                16

EDELSON PC
150 California Street, 18th Floor
San Francisco, CA 94111
Tel: 415.212.9300  •  Fax: 415.373.9435

| | |
|---|---|
| Dated: July 11, 2024 | **EDELSON PC** |
| | By: /s/ Todd Logan _____ |
| | Rafey S. Balabanian (SBN 315962)<br>rbalabanian@edelson.com<br>Todd Logan (SBN 305912)<br>tlogan@edelson.com<br>Brandt Silver-Korn (SBN 323530)<br>bsilverkorn@edelson.com<br>150 California Street, 18th Floor<br>San Francisco, CA 94111<br>Tel: 415.212.9300<br>Fax: 415.373.9435 |
| | *Plaintiffs' Interim Lead Counsel*<br>*Plaintiffs' Law and Briefing Counsel* |
| Dated: July 11, 2024 | **DLA PIPER LLP (US)** |
| | By: /s/ John Samuel Gibson _____ |
| | John Samuel Gibson (SBN 140647)<br>john.gibson@us.dlapiper.com<br>2000 Avenue of the Stars, Suite 400 North Tower<br>Los Angeles, CA 90067-4704<br>Tel: 310.595.3039<br>Fax: 310.595.3339 |
| | *Attorneys for Defendant Apple Inc.* |
| Dated: July 11, 2024 | **COOLEY LLP** |
| | By: /s/ Teresa H. Michaud _____ |
| | Teresa H. Michaud (SBN 296329)<br>tmichaud@cooley.com<br>355 South Grand Ave., Suite 900<br>Los Angeles, CA 90071<br>Tel: 213.561.3250<br>Fax: 213.561.3244 |
| | *Attorneys for Google LLC and Google Payment Corp.* |
| Dated: July 11, 2024 | **GIBSON, DUNN & CRUTCHER LLP** |
| | By: /s/ Christopher Chorba _____ |

CONSOL. JOINT STATUS REPORT
Case Nos. 21-md-02985-EJD; 21-md-03001-EJD;
21-cv-02777-EJD

17

**EDELSON PC**
150 California Street, 18th Floor
San Francisco, CA 94111
Tel: 415.212.9300 • Fax: 415.373.9435

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Christopher Chorba (SBN 216692)
cchorba@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071
Tel: 213.229.7000
Fax: 213.229.7520

*Attorneys for Defendant Meta Platform, Inc. (f/k/a Facebook, Inc.)*

CONSOL. JOINT STATUS REPORT
Case Nos. 21-md-02985-EJD; 21-md-03001-EJD;
21-cv-02777-EJD

18

EDELSON PC
150 California Street, 18th Floor
San Francisco, CA 94111
Tel: 415.212.9300  •  Fax: 415.373.9435

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## FILER'S ATTESTATION

Pursuant to Local Rule 5-1(h)(3) of the Northern District of California, I hereby certify that the content of this document is acceptable to John Gibson, Teresa H. Michaud, and Christopher Chorba, and that I have obtained their authorization to affix their electronic signatures to this document.

Dated: July 11, 2023                    By: /s/  Todd Logan
                                        Todd Logan
                                        Attorney for Plaintiffs

CONSOL. JOINT STATUS REPORT
Case Nos. 21-md-02985-EJD; 21-md-03001-EJD;
21-cv-02777-EJD

19

EDELSON PC
150 California Street, 18th Floor
San Francisco, CA 94111
Tel: 415.212.9300  •  Fax: 415.373.9435